#18920

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

No.: 2:06-0612

THE KAY COMPANY, LLC, DIANA KILE
GREEN, Individually and Attorney-In-Fact for
the Heirs of Luther E. Kile, THE H.A. ROBSON
TRUST, by EDWIN N. VINSON, Beneficiary &
Trustee of the H.A. Robson Trust, DAVID H.
DAUGHERTY, Trustee of the H.A. Robson
Trust, and MARY BLAIR V. CHAPUISAT,
Beneficiary of the H.A. Robson Trust, H.
DOTSON CATHER, Trustee of Diana Goff
Cather Trusts, CLYDE EMERSON MCCLUNG,
Individually, and JAMES E. HAMRIC, III,
Individually,

                            Plaintiffs,

vs.

EQUITABLE PRODUCTION COMPANY, a
qualified Pennsylvania corporation, as the
survivor to Equitable Production Company, a
qualified West Virginia corporation,

                            Defendant.

FILED

AUG - 7 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

NOTICE OF REMOVAL TO THE
UNITED STATES DISTRICT COURT

## DEFENDANT EQUITABLE PRODUCTION COMPANY'S
## NOTICE OF REMOVAL OF ACTION
## PURSUANT TO 28 U.S.C. §§ 1441 AND 1332

PLEASE TAKE NOTICE that Defendant Equitable Production Company ("Equitable"),

through its counsel, hereby removes the state court action described below to this Court, pursuant

to 28 U.S.C. §§ 1441 and 1332, as amended in relevant part by the Class Action Fairness Act of

2005 ("CAFA"). This Court has original jurisdiction over this action under the CAFA.

Furthermore, this is a diversity action over which this Court has original jurisdiction under 28

U.S.C. § 1332, in that compete diversity of citizenship exists among the properly joined parties.

## I.      BACKGROUND FACTS

1.      On June 13, 2006, Plaintiffs Kay Company, LLC; Diana Kile Green; The H.A.

Robson Trust (by Edwin N. Vinson, David H. Daugherty, and Mary Mary Blair V. Chapuisat); H. Dotson Cather, Trustee of Diana Goff Cather Trusts; Clyde Emerson McClung; and James E. Hamric III, on behalf of themselves and purportedly on behalf of others similarly situated, filed a complaint (the "Complaint") in the Circuit Court of Roane County, West Virginia (the "State Court Action"). The State Court Action was assigned Civil Action No. 06-C-36E.

2.      Attached as Exhibit 1 is a true and correct copy of the Complaint. Defendant Equitable has filed a Notice of Appearance in the State Court Action, no other pleadings have been filed in that case. Attached as Exhibit 2 is a certified copy of the docket from the State Court Action.

3.      The Complaint alleges claims for breach of contract, breach of fiduciary duty, fraud, and violation of West Virginia Code §§ 46A-6-101 et seq., relating to deductions taken by Equitable under oil and gas leases. *See* Complaint at ¶¶ 23-43.

4.      The CAFA defines the term "class action" as any case that a plaintiff files as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure or any case "that is removed to a district court of the United States that was originally filed under a State statute or rule" similar to Rule 23. *See* 28 U.S.C. § 1711(2). Plaintiffs filed this case as a purported class action under West Virginia's Rule of Civil Procedure 23. *See* Complaint at ¶ 4.

## II.      TIMELINESS OF NOTICE OF REMOVAL

5.      Upon information and belief, a copy of the Complaint was served on the Secretary of State of West Virginia on July 31, 2006 as Equitable's attorney-in-fact. As such, this Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(d), within thirty (30) days of service

upon Equitable of the summons and Complaint.

## III.   VENUE

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) in that this Judicial division and district embrace Roane County, where the State Court Action was filed.

## IV.   CAFA JURISDICTION

7.     Under the CAFA, this Court has jurisdiction over any class action where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and where "any member of [the] class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

### A.   The Amount in Controversy Exceeds $5,000,000.

8.     The amount in controversy must be determined by aggregating the alleged damages of named Plaintiffs with those of all purported class members.  28 U.S.C. § 1332(d)(6).

9.     In this case, Plaintiffs seek to certify a class "of all West Virginia residents *and others* who have entered into or who are parties or beneficiaries of oil and gas leases with Equitable or with others who have assigned the duties and responsibilities of the leases to Equitable and/or which have been assumed by Equitable..." Complaint at ¶ 4 (emphasis added). Plaintiffs claim that the purported class includes "hundreds" of members.  Complaint at ¶ 36. Plaintiffs also seek statutory damages, attorneys' fees, and punitive damages in this action. Complaint at ¶ 2.

10.     Upon information and belief, the proposed class, as alleged, would seek to include in excess of 4000 royalty owners and lessors who currently receive, or have received, rents and/or royalties from Equitable for leases of oil and gas rights in West Virginia, even though it is believed that less than fifty percent (50%) of those owners and lessors reside in West Virginia. Although Equitable does not believe that Plaintiffs are entitled to recover the deductions purportedly made and/or administered by Equitable sought in this action, based upon information from its records, Equitable believes that it has made and/or administrated gross deductions in excess of $5,000,000 over the period sought by Plaintiffs.

11.     In addition to compensatory damages for past deductions, the cost of Equitable's compliance with permanent injunctive relief would be substantial, open-ended and ever-increasing.  Moreover, among Plaintiffs' asserted claims for damages is one for violations under the West Virginia Consumer Credit and Protection Act, which provides for civil penalties between $100-$1000 (as adjusted for inflation since 1994) for each violation.  In addition, Plaintiffs are seeking punitive damages and attorneys' fees.

12.     As such, Plaintiffs' claims for compensatory damages, statutory damages, attorneys' fees, and punitive damages, *for the entire proposed class*, clearly indicate that the amount in controversy is in excess of $5,000,000.[1]

**B.     Minimal Diversity Under CAFA Exists.**

13.     Minimal diversity under CAFA – *i.e.*, diversity between at least one putative class

---

[1]     Although Plaintiffs make allegations aimed at evading CAFA jurisdiction, they do not state that the amount in controversy is less than $5,000,000.  Complaint at ¶4.

member and the only defendant – is satisfied here:

a.      Equitable is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. Therefore, Equitable is deemed a citizen of Pennsylvania. *See* 28 U.S.C. § 1332(c)(1).

b.      As Plaintiffs have admitted, and in contrast to Equitable, Plaintiffs Kay Company, Green, Vinson, and Daugherty are residents of West Virginia. *See* Complaint at ¶ 3.

c.      All that is needed for minimal diversity under CAFA is that *one* Plaintiff does not share citizenship with the Defendant. Here, all of the named Plaintiffs, other than Mary Blair V. Chapuisat2, are residents of West Virginia (and, thus, are diverse from Equitable); and the Complaint makes clear that the putative class is comprised of parties to oil and gas leases with Equitable, unrestricted by state of residence. *See* Complaint at ¶ 4. In fact, upon information and belief, less than one-half of the putative class members reside in West Virginia.

d.      There is therefore ample evidence to satisfy the CAFA's requirement of minimal diversity of citizenship.

---

2       Although not necessary to remove under the CAFA, Equitable asserts that there is actually complete diversity between Equitable and each of the rightfully named plaintiffs in this case. Ms. Chapuisat, a beneficiary to the H.A. Robson Trust, is not a proper party to this action under West Virginia law, and her citizenship should be disregarded for purposes of determining diversity jurisdiction. *See Kidd v. Gilfilen*, 170 F. Supp. 2d 649 (S.D.W.Va. 2001); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461-66 (concluding that real parties to lawsuit were trustees not beneficiaries, and, as such, beneficiaries' citizenship should be ignored in making a diversity determination).

**C.    This Court's Exercise of CAFA Jurisdiction is Mandatory Here.**

14.    Federal jurisdiction here is mandatory, not discretionary, under the CAFA.   The CAFA permits a district court to "decline to exercise jurisdiction ... over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate *and* the primary defendants are citizens of the State in which the action was originally filed," as long as certain discretionary factors are satisfied.   28 U.S.C. § 1332(d)(3) (emphasis added).

15.    The second of the two circumstances – *both* of which are required before a federal court may even consider whether it will decline to exercise jurisdiction under the CAFA – is not present here.  There is only one Defendant – Equitable – and that Defendant is not a citizen of West Virginia.

**V.    JURISDICTION THROUGH ACTUAL DIVERSITY**

16.    In this case, there is jurisdiction not only through the CAFA, but also through Section 1332(a), because there is complete diversity here.

**A.    The Amount in Controversy Exceeds $75,000.**

17.    Considering the claims for actual damages, statutory damages, punitive damages and attorneys fees, the amount-in-controversy will likely exceed $75,000  for at least one, if not more, of the named Plaintiffs. In addition to the compensatory, statutory, and punitive damages for past acts, and attorneys' fees, the cost of Equitable's compliance with permanent injunctive relief would be substantial, open-ended and ever-increasing.  *See Gov't Emp. Ins. Co. v. Lally,*

327 F.2d 568, 569 (4th Cir. 1964) (adopting the "either viewpoint" rule, in which the amount in controversy in a claim for equitable relief is determined by either the cost to the defendant or the benefit to the plaintiff); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 492-94 (S.D. W.Va. 2001) (applying the "either viewpoint" rule to deny a motion to remand because the cost to the defendant of complying with the equitable relief sought on behalf of the putative class would exceed $75,000).

**B.    No Properly Joined Plaintiff Shares Citizenship with Equitable.**

18.    In determining whether actual diversity exists in a purported class action, only the citizenship of named Plaintiffs is considered. *See Snyder v. Harris*, 394 U.S. 332, 340 (1969); Moore's Fed. Prac. § 17.13.

19.    As established above, Defendant Equitable is a citizen of Pennsylvania, and almost all Plaintiffs named in the Complaint are citizens of West Virginia. *See supra,* ¶ 14.

20.    There is only one named Plaintiff who claims to be a Pennsylvania resident: Mary Blair V. Chapuisat. *See* Complaint at ¶ 3.

21.    Mary Blair V. Chapuisat is not, however, a proper party to this action. As the Complaint states on its face, she is a beneficiary, not a trustee, of the H.A. Robson Trust (the "Trust"). *See* Complaint, Caption.

22.    The Trust, not Ms. Chapuisat, is the party to the lease at issue in this case. *See* November 21, 1982 Oil and Gas Lease and Agreement of record in the Clerk's office of the Kanawha County Commission, Trust Book 217, Page 1, between several lessors, including the

trustees of the H.A. Robson Trust, and Equitable's predecessor in interest, Ashland Exploration, Inc. (Attached hereto as Exhibit 3 is the lease, the signature pages for the trustees of the H.A. Robson Trust and the verification of the trustee's signature).

23.    The citizenship of the Trust is determined by the trustees, not the beneficiary.  "A trust is a citizen of the state of which the trustee is a citizen."  Moore's Fed. Prac. § 102.57.  *See also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464-65 (1980); *Johnson v. Columbia Properties Anchorage LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing *Navarro* in holding that trust is citizen of state where trustee is citizen for purpose of assessing diversity); *May Dep't Stores Co. v. Federal Ins. Co*, 305 F.3d 597, 599 (7th Cir. 2002) (same).  The Trust, acting through its trustees, – the real party to the lease, and therefore the real party to this action for breach of lease – is a citizen of West Virginia.

24.    Although the Complaint states that the Trust is bringing the Complaint "by" Ms. Chapuisat, a beneficiary is not entitled to maintain an action on behalf of the Trust.  *See Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558 (1990) ("a trust beneficiary can sue to enforce a contract entered into on his behalf by the trustee only if the trustee improperly refuses or neglects to bring an action against the third person"); *In re New England Mutual Life Insurance Co. Litig*, 841 F. Supp. 345, 348 (W.D. Wash. 1994) ("It is a fundamental tenet of trust law that it is the trustee of a trust, and not its beneficiaries, who have a cause of action against third parties for wrongdoing concerning trust property"); Restatement (Second) of Trusts § 281, cmt. c ("If a contract right is held in trust, the beneficiary cannot maintain an action at law against the promisor").

25.    Ms. Chapuisat is a nominal party whose citizenship may be disregarded in

-8-

determining diversity of citizenship, *see Kidd v. Gilfilen,* 170 F. Supp. 2d 649 (S.D.W.Va. 2001). In *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458 (1980), the Supreme Court of West Virginia found that a trustee could invoke diversity jurisdiction based on its own citizenship, despite the fact that the beneficiaries of the trust shared citizenship with the opposing party. The Court rejected plaintiff's argument "that the real parties to the lawsuit are [the trust's] beneficial shareholders," 446 U.S. at 461-62, finding that the real parties to the lawsuit were the trustees, not the beneficiaries, and ignoring the beneficiaries' citizenship in determining that diversity jurisdiction existed. 446 U.S. at 465-66. Similarly here, Ms. Chapuisat's citizenship should be ignored in determining whether actual diversity exists.

26.    Furthermore, because she is a beneficiary, and as such may not bring an action at law on behalf of the Trust, Ms. Chapuisat has no cause of action against Equitable. Where no cause of action exists, a party has been fraudulently joined, and the district court should disregard the citizenship of that party in determining whether it has diversity jurisdiction over the case. *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999); *AIDS Counseling and Testing Centers v. Group W Television, Inc.,* 903 F.2d 1000, 1003 (4th Cir. 1990). There need be no actual fraud in order to establish fraudulent joinder; the removing party need show only that there is no cause of action to justify the party's presence in the lawsuit. *See id.*[3]

27.    Ms. Chapuisat, as a beneficiary, is not entitled to bring this action against Equitable. She is therefore a nominal party, or she has been fraudulently joined in order to defeat diversity. In either case, her citizenship should not be considered in this Court's

---

3    Although a fraudulently joined party is typically a defendant, a plaintiff may also be fraudulently joined to defeat diversity. *See Grennell v. Western Southern Life Insurance Co.,* 298 F. Supp. 2d 390, 396-97 (S.D.W.Va. 2004).

determination of whether diversity jurisdiction exists.

28.     Equitable reserves the right to supplement this Notice of Removal or to present additional arguments in support of its entitlement to remove and in further support of this Court's jurisdiction.

29.     No admission of law or fact is intended by the filing of this Notice of Removal.

WHEREFORE, this action is hereby removed to, and should proceed in, the United States District Court for the Southern District of West Virginia.

Respectfully Submitted,

**EQUITABLE PRODUCTION COMPANY**
By Counsel

Richard L. Gottlieb (W. Va. Bar No. 1447)
LEWIS, GLASSER, CASEY & ROLLINS, PLLC
P.O. Box 1746
Charleston, WV 25326-1746
(304) 345-2000
(304) 343-7999

-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WES VIRGINIA
AT CHARLESTON

THE KAY COMPANY, LLC,
DIANA KILE GREEN,
Individually and Attorney-In-Fact
for the Heirs of Luther E. Kile,
THE H. A. ROBSON TRUST, by
EDWIN N. VINSON,
Beneficiary & Trustee of the
H. A. Robson Trust,
DAVID H. DAUGHERTY,
Trustee of the H. A. Robinson Trust, and
MARY BLAIR V. CHAPUISAT,
Beneficiary of the H. A. Robson Trust,
H. DOTSON CATHER,
Trustee of Diana Goff Cather Trusts,
CLYDE EMERSON MCCLUNG,
Individually, and
JAMES E. HAMRIC, III,
Individually,

                Plaintiffs,

v.                                          Case No._____

EQUITABLE PRODUCTION COMPANY,

                Defendant.

**CERTIFICATE OF SERVICE**

I, Richard L. Gottlieb, counsel for Equitable Production Company, do hereby certify that

on August 7, 2006, I served the foregoing **"DEFENDANT EQUITABLE PRODUCTION**

**COMPANY'S NOTICE OF REMOVAL OF ACTION"** on counsel of record via U. S. Mail

at the following addresses:

Marvin W. Masters, Esq.
The Masters Law Firm, LC
181 Summers Street
Charleston, WV 25301

Richard L. Gottlieb

Thomas W. Pettit, LC
Thomas W. Pettit, L.C.
P.O. Box 189
Barboursville, WV 25504

Michael W. Carey, Esq.
George M. Scott, Esq.
Robert E. Douglas, Esq.
Carey, Scott & Douglas, PLLC
707 Virginia Street, East
Suite 901
Charleston, WV 25301

2

## SUMMONS

### IN THE CIRCUIT COURT OF ROANE COUNTY, WEST VIRGINIA.

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of
Luther E. Kile, THE H. A. ROBSON TRUST, by
EDWIN N. VINSON, Beneficiary & Trustee of the
H. A. Robson Trust, DAVID H. DAUGHERTY,
Trustee of the H. A. Robson Trust, and MARY
BLAIR V. CHAPUISAT, Beneficiary of the
H. A. Robson Trust, H. DOTSON CATHER,
Trustee of Diana Goff Cather Trusts,
CLYDE EMERSON MCCLUNG, Individually,
and JAMES E. HAMRIC, III, Individually,

Plaintiffs,

Civil Action No. 06-C-34E

BEQUITABLE PRODUCTION COMPANY, a ................
qualified Pennsylvania corporation, as the survivor
to Equitable Production Company, a qualified
West Virginia corporation,

Defendant.

Equitable Production Company
Agent: CT Corporation System
Post Office Box 951
Charleston, WV 25323

To the above-named Defendant: EQUITABLE PRODUCTION COMPANY:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and required
to serve upon plaintiffs' attorneys, Marvin W. Masters, whose address is The Masters Law Firm lc, 181
Summers Street, Charleston, West Virginia, 25301; and upon Michael W. Carey, George M. Scott and
Robert E. Douglas, whose address is Carey, Scott & Douglas, PLLC, 707 Virginia Street, East, Suite 901,
Charleston, West Virginia, 25301; and upon Thomas W. Pettit, whose address is Thomas W. Pettit, L.C.,
Post Office Box 189, Barboursville, West Virginia, 25504, an Answer including any related Counterclaim
you may have to the Complaint filed against you in the above styled civil action, a true copy of which is
herewith delivered to you.  You are required to serve your Answer within 30 days after service of this
Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be
taken against you for the relief demanded in the Complaint and you will be thereafter barred from
asserting in another action any claim you may have which must be asserted by Counterclaim in the
above styled civil action.

Dated: June 13, 2006

_____
Clerk of Court

O: JOLaughlin
H Rauch
L 2Hton
G. Clemmons
C. Heck
R Cokes
P OiBonea

ROBINSON
&McELWEE
PLLC

P.O. BOX 1791
CHARLESTON, WV 25326

TELEPHONE: 304.344.5800
FACSIMILE: 304.344.9566

## FACSIMILE COVER SHEET

**Date:** June 26, 2006

**To:** Sandy Fraley, Esquire

**Fax Number:** (412) 395-2642

**Client/Matter Number:** BQPRO/51294

**From:** Charlotte I. Mathews, Legal Assistant

**Number of Pages
(Including Cover Sheet):** 17

The information contained in this FAX message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication, and, as such, is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us via U.S. mail. THANKS 10.0.

**COMMENTS:**

*Please contact Debbie Hill at 304.344.5800, ext. 8412, if any problems occur with this fax.
Please deliver immediately upon receipt.*

(R0123134.1)

MEMORANDUM TO CLERK
FOR INSTITUTING CIVIL ACTION

To the Clerk of the Circuit
Court of Roane County, West Virginia

CIVIL ACTION NO. 06-C-36E
Case Assigned to: Thomas C. Evans III

FILED
CIRCUIT COURT
ROANE COUNTY, W. VA.

06 JUN 13 AM 11: 30

BEVERLY GREATHOUSE
CIRCUIT CLERK

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of
Luther E. Kile, THE H. A. ROBSON TRUST, by
EDWIN N. VINSON, Beneficiary & Trustee of the
H. A. Robson Trust, DAVID H. DAUGHERTY,
Trustee of the H. A. Robson Trust, and MARY
BLAIR V. CHAPUISAT, Beneficiary of the
H. A. Robson Trust, H. DOTSON CATHER,
Trustee of Diana Goff Cather Trusts,
CLYDE EMERSON MCCLUNG, Individually,
and JAMES E. HAMRIC, III, Individually,

Plaintiffs,

v.

EQUITABLE PRODUCTION COMPANY
Agent: CT Corporation System
Post Office Box 951
Charleston, WV 25323

Defendant.

Days to Answer        Type of Service

30            Sec. of State

Please issue Summons in the above styled action as indicated.
Original and two (2) copies of Complaint furnished herewith.

Counsel for Plaintiffs:

Marvin W. Masters (WV Bar #2359)
THE MASTERS LAW FIRM LC
181 Summers Street
Charleston, West Virginia 25301
(304) 342-3106

Thomas W. Pettit (WV Bar #2886)
THOMAS W. PETTIT, L.C.
Post Office Box 189
Barboursville, West Virginia 25504
(304) 736-8700

Michael W. Carey (WV Bar #635)
George M. Scott (WV Bar #4678)
Robert E. Douglas (WV Bar #1052)
CAREY, SCOTT & DOUGLAS, PLLC
707 Virginia Street, East
Suite 901
Charleston, West Virginia 25301
(304) 345-1234

DATE: 6/13/06

PLAINTIFF: THE KAY COMPANY, LLC, et al.     CASE NUMBER: 06-C-____
DEFENDANT: EQUITABLE PRODUCTION COMPANY

II.     TYPE OF CASE:

| TORTS | OTHER CIVIL | |
|---|---|---|
| ( ) Asbestos | ( ) Adoption | ( ) Appeal from Magistrate Court |
| ( ) Professional Malpractice | ( ) Contract | ( ) Petition for Modification of Magistrate Sentence |
| ( ) Personal Injury | ( ) Real Property | ( ) Miscellaneous Civil |
| ( ) Product Liability | ( ) Mental Health | ( ) Other |
| (X) Other Tort | ( ) Appeal of Admin. Agency | |

III.    JURY DEMAND: (X) Yes  ( ) No
        DATE CASE READY FOR TRIAL: 12 / 1 / 06

IV.     DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE
        SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?
        ( ) YES        (X) NO

        IF YES, PLEASE SPECIFY:

        O    Wheelchair accessible hearing room and other facilities
        O    Interpreter or other auxiliary aid for the hearing impaired
        O    Reader or other auxiliary aid for the visually impaired
        O    Spokesperson or other auxiliary aid for the speech impaired
        O    Other._____

Attorneys Representing Plaintiffs
        Marvin W. Masters (WV Bar #2359)        Michael W. Carey (WV Bar #635)
        Thomas W. Pettit (WV Bar #2886)         George M. Scott (WV Bar #4678)
                                                Robert E. Douglas (WV Bar #1052)
Firms:
        THE MASTERS LAW FIRM LC                 CAREY SCOTT & DOUGLAS, PLLC
        181 Summers Street                      707 Virginia Street, East, Suite 901
        Charleston, West Virginia 25301         Charleston, West Virginia 25301
        (304) 342-3106                          (304) 345-1294

        THOMAS W. PETTIT, L.C.
        Post Office Box 189
        Barboursville, West Virginia 25504
        (304) 736-8700

                                                DATED: 6 - 13 - 06
                                                _____
                                                       Signature

2

IN THE CIRCUIT COURT OF ROANE COUNTY, WEST VIRGINIA

FILED
R.C. CIRCUIT COURT
ROANE CO., W. VA.
06 JUN 13  AM 11: 30
BEVERLY &  CATHOUSE
CIRCUIT CLERK

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of
Luther E. Kile, THE H. A. ROBSON TRUST, by
EDWIN N. VINSON, Beneficiary & Trustee of the
H. A. Robson Trust, DAVID H. DAUGHERTY,
Trustee of the H. A. Robson Trust, and MARY
BLAIR V. CHAPUISAT, Beneficiary of the
H. A. Robson Trust, H. DOTSON CATHER,
Trustee of Diana Goff Cather Trusts,
CLYDE EMERSON MCCLUNG, Individually,
and JAMES E. HAMRIC, III, Individually,

                              Plaintiffs,

v.                                                      Civil Action No. 06-C- 36 E
                                                        Judge Thomas C Evans III

EQUITABLE PRODUCTION COMPANY, a
qualified Pennsylvania corporation, as the survivor
to Equitable Production Company, a qualified
West Virginia corporation,

                              Defendant.

COMPLAINT

1.   This Court has venue and jurisdiction over this action.

2.   This Court has subject matter jurisdiction over the claims set forth in this

Complaint as the claims do not arise out of federal law.  The Plaintiffs and the class they

seek to represent (hereinafter referred to collectively as "Plaintiffs") seek no relief under

any federal laws or regulations, assert no federal claims, and withdraw any asserted state

claim that is preempted by federal law.  The claims herein are brought solely under state

common law and state statutory law. Any and all claims or possible claims under any federal law, code, regulation, rule, and/or otherwise are expressly not brought herein and disclaimed. At all relevant times herein, the defendant, Equitable Production Company as the survivor corporation to Equitable Production Company, a qualified West Virginia corporation (hereinafter "Equitable"), was and is in the business of leasing and drilling wells for oil and gas and selling said gas to others in the State of West Virginia and the United States, including leasing of lands and the operation of wells in Roane County, West Virginia, and its principal place of business in West Virginia was and is 1710 Pennsylvania Avenue, Charleston, Kanawha County, West Virginia.

3.      Plaintiff, The Kay Company, LLC, is located in Kanawha County, West Virginia, and at all times relevant herein was owner and lessor of that certain oil and gas lease of record in Lease Book 140 at Page 465, Lease Book 25 at Page 425, and Lease Book 17 at Page 131, in the Offices of the Clerks of the County Commissions of Kanawha, Raleigh and Boone Counties, West Virginia, and believed to be identified as Lease No. 10306 by defendant herein; plaintiff Diana Kile Green is a resident of Kanawha County, West Virginia, and at all times relevant herein was owner and lessor, individually and as attorney-in-fact for the heirs of Luther E. Kile, of that certain oil and gas lease of record in Lease Book 30 at Page 329, in the Office of the Clerk of the County Commission of Doddridge County, West Virginia, and believed to be identified as Lease No. 6512 by defendant herein; plaintiff H. A. Robson Trust, Edwin N. Vinson and David H. Daugherty, are residents of Cabell County, West Virginia, and plaintiff, Mary Blair V. Chapuisat, is a resident of Dallas, Pennsylvania, and at all times relevant herein were owners and

lessors of that certain oil and gas lease of record in Lease Book 216 at Page 796, and Lease Book 212 at Page 533, in the Offices of the Clerks of the County Commissions of Kanawha and Fayette Counties, West Virginia, and believed to be identified as Lease No. 15843 by defendant herein; plaintiff, H. Dotson Cather, Trustee of Diana Goff Cather Trusts is a resident of Harrison County, West Virginia, and at all times relevant herein was owner and lessor of those certain oil and gas leases of record in Lease Book 131 at Page 470, and Lease Book 235 at Page 409A, in the Office of the Clerk of the County Commission of Gilmer County, West Virginia, and believed to be identified as Lease No. 15367 by defendant herein; plaintiff, Clyde Emerson McClung, is a resident of Roane County, West Virginia, and at all times relevant herein was owner and lessor of that certain oil and gas lease of record in Lease Book 146 at Page 588, in the Office of the Clerk of the County Commission of Roane County, West Virginia, and believed to be identified as Lease No. 9096 by defendant herein; and plaintiff, James E. Hannic, III, is a resident of Wood County, West Virginia, and at all times relevant herein was owner and lessor of that certain oil and gas lease of record in Lease Book 154 at Page 50, in the Office of the Clerk of the County Commission of Wirt County, West Virginia, and believed to be identified as Lease No. 9391 by defendant herein. All aforesaid oil and gas leases of plaintiffs identified hereinabove have been assumed by Equitable Production Company, which has the duty to perform thereunder.

4.     This action is brought for individual claims and pursuant to Rule 23 of the West Virginia Rules of Civil Procedure as a class action on behalf of the named plaintiffs and on behalf of all West Virginia residents and others who have entered into or who are

parties or beneficiaries of oil and gas leases with Equitable or with others who have assigned the duties and responsibilities of the leases to Equitable and/or which have been assumed by Equitable. Plaintiffs further assert that greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State of West Virginia and/or that the number of citizens of the State of West Virginia in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other state and the citizenship of the other members of the proposed class is dispersed among a substantial number of states; that Equitable is the sole defendant from whom significant relief is sought by members of the plaintiff class; that Equitable's alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; that the principal injuries resulting from the alleged conduct or any related conduct of Equitable were incurred in the State of West Virginia; that during relevant time periods herein, defendant Equitable was doing business in West Virginia as Equitable Production Company, a qualified West Virginia corporation and citizen; that during the three years preceding the filing of plaintiffs' class action herein, no other class action has been filed asserting the same or similar factual allegations against Equitable on behalf of plaintiffs; that the claims asserted herein do not involve matters of national or interstate interest; that the claims asserted herein will be governed by the laws of the State of West Virginia, which has a distinct nexus with the class members wherein the majority of all proposed plaintiff classes reside and wherein the alleged harm and alleged wrongful conduct of defendant Equitable occurred.

4

5.     At all times complained of herein, Equitable was acting by and through its agents, servants, employees, co-conspirators and/or joint venturers.

6.     Plaintiffs are owners of oil and gas rights in West Virginia, who, or whose predecessors, leased oil and gas rights to Equitable or its predecessors.

7.     Equitable agreed, or assumed the responsibility, to pay to plaintiffs a royalty on the gas produced from the wells on the aforesaid leases at fair value.

8.     Equitable has not paid to plaintiffs the royalties as required pursuant to said leases, and continues to not pay plaintiffs the royalty to which they are entitled.

9.     Equitable has intentionally failed and refused to pay royalties to plaintiffs at a rate calculated on the fair value of the natural gas produced and marketed from said leases.

10.     Equitable entered into a scheme and design to intentionally mislead plaintiffs into believing they were being paid all the royalty due them by mailing to plaintiffs documents describing the transactions between plaintiffs and Equitable, which omitted advising plaintiffs of the significant fact that defendant was not paying plaintiffs for the royalty for which it was contracted.

11.     The documents sent to plaintiffs by Equitable were incorrect and deceptive in that they omitted true and correct information, which would explain to a reasonable, prudent person that the amounts being paid were incorrect.

12.     Equitable had an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of West Virginia Code § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts, and by virtue of the fiduciary duty and responsibility of the lessee in any oil and

5

gas lease who assumes the duty of handling the sales and accounting functions of the parties.

13.    As part of the legal responsibilities of Equitable, it agreed to and/or had the duty to account for all of the sales of gas from said wells and to accurately account for said wells and to act as a fiduciary for plaintiffs' moneys due to plaintiffs as a result of royalties due to plaintiffs.

14.    Equitable intentionally violated said fiduciary responsibility.

15.    Equitable intentionally violated its contractual duty to plaintiffs.

16.    Equitable concealed, suppressed and omitted material facts with intent that plaintiffs would rely upon same in connection with the sale of goods and services and in the transportation and other service charges associated with the sale of said gas.

17.    Plaintiffs relied upon defendant to truly, accurately and properly carry out its contractual and fiduciary duties and responsibilities and to account to plaintiffs for payments due to plaintiffs and for any material deductions or reductions in royalty.

18.    As a result of the aforesaid conduct of Equitable for many years prior hereto, plaintiffs were damaged in that they were deprived of and are owed royalty payments from Equitable and are owed interest from said deficiencies in said royalty payments.

19.    The acts and conduct of Equitable were willful and wanton and in utter disregard of plaintiffs' rights.

20.    At all times complained of herein, Equitable was acting for and on its own behalf and as agent, ostensible agent, servant and/or employee of others in the course and scope of its employment, agency and/or ostensible agency.

6

21.    At all times complained of herein, Equitable was acting as a conspirator with unnamed persons, firms and corporations in common goals, schemes and designs for the goals and purposes as herein alleged and complained of.

22.    At all times complained of herein, Equitable entered into a joint venture with others and with unnamed persons, firms and corporations for the goals and purposes as herein alleged and complained.

COUNT I

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and plaintiffs further allege as follows:

23.    Equitable violated and breached its contractual duties and responsibilities to plaintiffs, and plaintiffs were damaged thereby.

24.    Plaintiffs are entitled to recover all the rents and royalties which they have been deprived of by Equitable's breach of contract.

COUNT II

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and plaintiffs further allege as follows:

25.    Equitable violated its fiduciary duties and responsibilities to plaintiffs as aforesaid, and plaintiffs were damaged thereby.

26.    Plaintiffs are entitled to be paid their rents and royalties as described above.

COUNT III

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and plaintiffs further allege as follows:

7

27.    Equitable's intentional and knowing concealment deprived plaintiffs of the rents and royalties to which they are entitled.

28.    Plaintiffs were damaged by Equitable's fraudulent misconduct in that they were denied rents and royalties under the terms of their leases or as required by law.

## COUNT IV

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and plaintiffs further allege as follows:

29.    The acts and conduct of Equitable violated West Virginia Code § 46A-6-101 et seq. by charging them bills for services and/or things which they were not required to pay.

30.    As a proximate result of the unlawful conduct of Equitable, plaintiffs were damaged in that they were deprived of rents and royalties owed them and/or are entitled to statutory damages as set forth in West Virginia Code § 46A-6-101 et seq., attorneys fees, costs, interest at the lawful rate, and other disbursements of this action.

## COUNT V

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and plaintiffs further allege as follows:

31.    The actions of Equitable named in this "Complaint" as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs and others, including the entire class, entitling the plaintiffs and the class to punitive damages for all causes of action alleged herein.

8

COUNT VI

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged, and Plaintiffs further allege as follows:

32.     This civil action is an appropriate case to be brought and prosecuted as a class action by plaintiffs against Equitable pursuant to Rule 23 of the West Virginia Rules of Civil Procedure.

33.     There exists a class of individuals like plaintiffs who own oil and/or gas rights in West Virginia and who have entered into leases of those rights and which Equitable is the lessee or has been otherwise assigned the rights and responsibilities under and pursuant to said leases.

34.     The claims of plaintiffs are typical of the claims of the class, and the plaintiffs will fairly and adequately protect the interests of the class with respect to the appropriate common issues of fact and law and have hired counsel competent to prosecute said action for and on behalf of the plaintiffs and the class.

35.     The prosecution of this civil action by all plaintiffs in separate actions would create a risk of varying adjudications with respect to individual members of the class, could be dispositive of interests of other members of the class not parties and/or they may impair or impede their ability to protect their interests and/or the defendant has acted or refused to act on grounds generally applicable to the class making declaratory or injunctive relief appropriate for the whole class.

36.     The class includes hundreds of oil and gas lessors in West Virginia who have leased their oil and/or gas rights to Equitable, and the class is, therefore, so numerous that

9

joinder of all members is impracticable.

37.    There are questions of law and fact common to the class, including, but not limited to, the following:

a.    What are the appropriate deductions that Equitable may make, if any, from the rents and royalties under the aforesaid leases?

b.    Did Equitable intentionally conceal deductions from rent and royalties?

c.    Did Equitable violate West Virginia Code § 46A-6-101 et seq. by unfairly charging plaintiffs and the class for goods and services in the production, transportation and sale of the oil and gas?

d.    Did Equitable fraudulently conceal from plaintiffs and the class the deduction from rents and royalties owed to them?

e.    Are plaintiffs entitled to punitive damages from Equitable for fraudulent concealment?

f.    Are improper deductions from rents and royalties a breach of contract of the lease?

g.    Such other factual and legal issues as are apparent from the allegations and causes of action alleged above.

38.    The interest of members of the class as to common questions of law and fact in individually controlling the prosecution of separate actions does not outweigh the benefits of a class action as to those issues.

10

39.    The difficulties in management of this case as a class action are outweighed by the benefits it has with respect to disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action due to the number of cases filed, pending, and to be filed.

40.    The questions of law and facts common to the members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this civil action.

41.    There are many individuals in the proposed class whose claims may be so small that the individual prosecution theory would not be economically feasible.

42.    Jurisdiction and venue are proper in Roane County, West Virginia, pursuant to West Virginia law and the West Virginia Rules of Civil Procedure as Equitable does business in Roane County, West Virginia.

43.    The individually named plaintiffs are members of the class they seek to represent. The members of the class are so numerous that joinder is impracticable and would involve thousands of litigants, and the class in all other ways are similarly situated as required under Rule 23 of the West Virginia Rules of Civil Procedure and complies with the requirements thereof.

## PRAYER

WHEREFORE, your plaintiffs and the class they seek to represent demand that they be awarded damages and equitable and affirmative relief as follows:

11

1. Compensatory damages and punitive damages in an amount to be determined by the Court and jury; and

2. Damages as provided for under and pursuant to West Virginia Code § 46A-6-101 et seq., including compensatory and punitive damages and equitable and injunctive relief; and

3. The costs and disbursements of this action, including attorney fees; and

4. Pre-judgment and post-judgment interest; and

5. Equitable and injunctive relief for providing an accounting and notice to plaintiffs and the class; and

6. That the Court finds that this is an appropriate action to be prosecuted as a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, and that the Court finds that plaintiffs and their counsel are appropriate representatives and appropriate counsel for the class, and that this action shall proceed as a class action on the common issues of law and fact, all as this Court deems just and proper; and

7. For such other further and general relief, compensatory, punitive, equitable or injunctive, as the Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.

12

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of
Luther E. Kile, THE H. A. ROBSON TRUST, by
EDWIN N. VINSON, Beneficiary & Trustee of the
H. A. Robson Trust, DAVID H. DAUGHERTY,
Trustee of the H. A. Robson Trust, and MARY
BLAIR V. CHAPUISAT, Beneficiary of the
H. A. Robson Trust, H. DOTSON CATHER,
Trustee of Diana Goff Cather Trusts,
CLYDE EMERSON MCCLUNG, Individually,
and JAMES E. HAMRIC, III, Individually

By Counsel

Marvin W. Masters (WVSB #2359)
The Masters Law Firm, lc
181 Summers Street
Charleston, West Virginia  25301
(304) 342-3106

Michael W. Carey (WVSB #635)
George M. Scott (WVSB #4678)
Robert E. Douglas (WVSB #1052)
Carey, Scott & Douglas, PLLC
707 Virginia Street East
Suite 901
Charleston, West Virginia  25301

Thomas W. Pettit (WVSB #2886)
Thomas W. Pettit, L.C.
Post Office Box 189
Barboursville, West Virginia  25504

*Counsel for Plaintiffs*
f:\5\726\p001.doc

13

CASE 06-C-36            ROANE

THE KAY COMPANY        vs.  EQUITABLE PRODUCTION COMPANY

LINE   DATE     ACTION

1  06/13/06   CASE FILED/MEMO/COMPLAINT/SUMMONS
2  06/29/06   ORDER SCHEDULING FOR HEARING ON 7/13/06 AT 9:30
3  08/04/06   NOTICE OF APPEARANCE OF COUNSEL

35/378

TRUE COPY TESTE:

_Bessie Cross Meese_
CLERK of CIRCUIT COURT of
ROANE COUNTY, WEST VIRGINIA

BY _Barbara Deeley_
                        DEPUTY

EXHIBIT

Blumberg No. 5119

BOOK 217 PAGE 1

## OIL AND GAS LEASE AND AGREEMENT

This lease, made and entered into this 2nd day of November, 1982, by and between Kanawha Valley Bank, N.A., of Charleston, West Virginia, a National Banking Association, and John Lukens, as Co-Trustees under the Will of Thomas B. Jackson, deceased; Kanawha Valley Bank, N.A., as Trustee under the Will of Dorothy S. Jackson, deceased; Kanawha Valley Bank, N.A., as Special Receiver of the Estate of Thomas L. Broun, deceased; Robert W. Lawson, III and Kanawha Valley Bank, N.A., as Trustees U/T dated April 16, 1982 with E. Fontaine Broun, now deceased, Virginia Broun Lawson and Robert W. Lawson, Jr., her husband, Jean J. Powers Sheild, as Executrix U/W of Thomas Broun Powers, Jr., deceased, Jean J. Powers Sheild and John Sheild, her husband, Philip Whittemore Powers and Lois Jenks Powers, his wife, Anne Record Ervin and Clyde Ervin, her husband, Thomas Broun Powers III and Mary Corbin Welch, his wife, Stephen Jordan Powers and Jane Megan Powers, his wife, Donald L. Otto, single, (all the parties hereinbefore named collectively hereinafter called "Broun"); L.M. LaFollette, III, De Armond LaFollette, and Kanawha Valley Bank, N.A., of Charleston, West Virginia, a National Banking Association, as Trustees under the Will of Robert B. LaFollette, deceased; L.M. LaFollette, III and Kanawha Valley Bank, N.A., as Executors and Trustees U/W of L.M. LaFollette, deceased; Jane LaFollette Wright and J. Craig R. Wright, and Kanawha Valley Bank, N.A., of Charleston, West Virginia, a National Banking Association, as Trustees under the Will of Robert B. LaFollette, deceased; Latelle McKee LaFollette, III and Alice Kuhn LaFollette, his wife; Jane LaFollette Wright and J. Craig R. Wright, her husband; L.M. LaFollette, III as Trustee for L.M. LaFollette, IV, and James Calvert LaFollette under Deeds dated December 28, 1976 and March 1, 1977; DeArmond LaFollette, single; Marjorie Jane Wright, single; Alice Ann Wright, single; L.M. LaFollette, III, as Trustee for L.M. LaFollette, IV, James Calvert LaFollette and others under Deed dated December 31, 1970; Riverside Park, Inc., a West Virginia corporation; O. Jennings Rife, Howard F. Meek and Edwin N. Vinson, as Trustees of the H.A. Robson Trust; the Board of Trustees of Prichard School, a West Virginia corporation created under the statutes mentioned in a Deed from Rolla D. Campbell to Fred C. Prichard, et al., Trustees, dated December 28, 1923, of record in the office of the Clerk of the County Commission of Cabell County, West Virginia,in Deed Book 212, at Page 221; Kanawha Banking and Trust Company, N.A., of Charleston, West Virginia, a National Banking Association, as Executor and Trustees of two Trusts under the Last Will and Testament of Frederick W. Prichard, deceased; Frederick W. Prichard, Jr., and Rhonda Smith Prichard, his wife; Elsie P. Carter and William H. Carter, her husband; Betty P. Russell and Kenneth B. Russell, her husband; A.M. Prichard, III and Judy Prichard, his wife; Sarah Ann Prichard, single; Lewis Prichard and Billy Jean Prichard, his wife; Rosemary K. Yingling and Myron Yingling, her husband; Beverly Bodkin and Robert L, Bodkin, her husband; Janet M. Maharg and James Edward Maharg, her husband; Francis J. Winters and Mary E. Winters, his wife; William S. Winters and Gladys Winters, his wife; Jane Ann Rice and Michael Rice, her husband; Walter J. Winters and Patricia L. Winters, his wife; Julia M. Baker and Joseph Baker, her husband; Debra Sue Myers, and James W. Myers, her husband; and Charlene M. Johnson and Richard N. Johnson, her husband; James E. McCarty, Widower, and Elizabeth Knight McClintic, single; parties of the first part, hereinafter referred to as "Lessors" or "Lessor", and Ashland Exploration, Inc., a Delaware corporation, party of the second part, hereinafter referred to as "Lessee"

## Witnesseth:

1. In consideration of Ten Thousand Thirty Dollars ($10,030.00), cash in hand paid, the receipt and sufficiency of which is acknowledged, and of the covenants and agreements contained herein, LESSOR hereby grants to LESSEE all the oil and gas, along with all hydrocarbons and nonhydrocarbon substances produced therewith, (including any interests therein which LESSOR may hereafter acquire by reversion, prescription or otherwise), together with the exclusive right to enter upon and use the land hereinafter described to explore for, develop and produce the granted substances, including, the use of the surface and subsurface for all purposes incident to the exploration, production, ownership, possession, storage, transportation, and marketing of the granted substances from said lands, including, by way of illustration and not limitation, primary, secondary, and tertiary recovery operations, and disposal of salt water in subsurface strata. LESSOR further grants LESSEE rights-of-way and easements for laying, constructing, using, maintaining, changing, replacing, and removing pipelines, electric trans- mission lines, tanks, power houses, roadways, pumps, plants, ponds, fixtures, and all other structures, facilities, equipment, and all other rights and privileges necessary, incident to, or convenient for LESSEE in the operation of the leased premises.

Mail: Ashland Exploration, Inc
P O Box 391
Ashland, Kentucky 41114


EXHIBIT 3

BOOK 217 PAGE 2

2.   The premises encompassed in this oil and gas grant consist of a tract of 1,003 acres of land, more or less, situate on the south side of Coal Fork of Cabin Creek in Cabin Creek District, Kanawha County, West Virginia, shown in green on the attached map, made by M.W. Venable and Son, Civil and Mining Engineers of Charleston, West Virginia, dated June 1917, and is the same tract described as the "First Tract" in a Deed from Williams Coal Company, et al., to H.A. Robson, et al., dated September 30, 1913, on record in Kanawha County, West Virginia, in Deed Book 141, Page 575 and map recorded in Kanawha County Map Book I, Page 84 and 161.

3.   This lease shall be for a primary term of three (3) years from the date of the lease and as long thereafter as oil or gas, or either of them, or other granted substances are produced from the leased premises, or LESSEE is otherwise maintaining the lease in force in accordance with its terms and conditions.

4.   The Lessee shall pay to the Lessor as rental herefore the sum of One Dollar ($1.00) per acre per year, in advance, commencing one year from date hereof and annually thereafter on each anniversary date, subject, however, that if royalties in any annual period (excluding shut-in royalty) equal or exceed the said rental the Lessee shall be relieved of paying such annual rental.

5.   Lessee shall pay or deliver to Lessor as royalty the following:

(a)   Lessee shall deliver to the credit of Lessor as royalty, free of cost, in the pipeline to which Lessee may connect its wells the equal one-eighth (1/8) part of all oil produced and saved from the leased premises, or at the option of Lessee, may pay to Lessor for such one-eighth (1/8) royalty the market price for oil of like grade and gravity prevailing in the field on the day such oil is run into the pipeline, storage tanks or tank cars of purchaser.

(b)   Natural Gas:  Lessee agrees to pay to Lessor a royalty for natural gas of one-eighth (1/8th) of the value thereof, which value shall be determined as follows:

1.   If the gas is sold by Lessee to a third party at the well or at a point on or off the lands of Lessor at which gathering is completed, the value shall be the price received by Lessee at the point of sale.

2.   If the gas is sold by Lessee other than in an Arm's Length sale at the current market value thereof at the time of production, based on contracts entered into for Arm's Length sales at a recent date in an area nearest the same general area of this lease.

(c)   Gasoline or Other Liquid or Gaseous Products:  Lessee agrees to pay to Lessor a royalty of one-eighth (1/8th) of the value for all gasoline or other liquid or gaseous products produced on and recovered on and marketed from such lands, subject in other respects to all provisions hereof relating to the determination of the value of gas insofar as they may be applicable.  All rights herein granted relating to oil and gas shall apply to gasoline and other liquid or gaseous products.

All gases produced from the demised premises, before being used commercially upon or sold off of the demised premises, shall be measured by a meter or meters located at convenient points, as may be hereafter determined by the Lessee.  Said meters shall be of the most modern and approved standard type, properly adapted for the volume to be handled, and shall be furnished, connected with the wells, maintained and operated by the Lessee, at its own expense.  The Lessee shall have sole charge of said meters and shall repair the same when it deems necessary. The Lessor shall have access at all reasonable times to said meters in company with representatives of Lessee.  In case the Lessor challenges the accuracy of any meter in use, the Lessee shall, upon receipt of written notice, addressed to its Kentucky office at P.O. Box 391, Ashland, KY 41114 or subsequent substitute mailing address of Lessors furnished by it, its assignee, or successor in writing addressed to the Lessors' agents named herein or their successors, requesting it so to do, have the same removed, tested and sealed, and a report of the result given to the Lessor, and the Lessor shall have the right to have its own representative present at the making of such test.  Should such tests

-2-

BOOK 217 PAGE 3

disclose the meter to be accurate within 1% ±, the Lessors shall pay the cost of removing and testing said meter, otherwise the cost of removing, testing and replacing said meter shall be borne by the Lessee. Meter measurements found to be in error more than three per centum shall be corrected, and accounts adjusted accordingly, but the period of adjustment shall not exceed one-half the period elapsed since the last test. During such time as a meter or meters are out of repair, the gas may be delivered through a by-pass and the amount estimated by the use of the readings of the repaired meter when replaced.

The specific gravity of such gas for the purpose of measurement shall be determined by the Lessee by accurate test acceptable to Lessor. For the purpose of this contract, a cubic foot of gas shall consist of a quantity or volume of gas which occupy one dimensional cubic foot when at a pressure of ten ounces per square inch above an atmospheric pressure of 14.7 pounds per square inch, or 15.325 pounds per square inch absolute pressure (commonly called pressure base), and at a temperature of 60° Fahrenheit (commonly called temperature base.)

For displacement meters the meter readings at varying pressures shall be converted to gas quantities at base pressure by applying pressure multipliers, such multipliers to be computed according to Boyle's Law Modified to take into consideration any deviations therefrom.

6. If gas from any well or wells on the leased premises capable of producing gas in paying quantities is not sold or used, and this lease is not otherwise maintained in force and effect, then Lessee shall become obligated to pay as shut-in royalty a sum equal to Four Dollars ($4.00) per surface acre under the terms of this lease, which such well is shut-in during the primary term or secondary term, payable ninety (90) days from the date the first gas well was completed and shut-in and annually thereafter on the anniversary date thereof until gas is sold or used or the lease is terminated. In consideration of the obligation to so pay, it shall be conclusively deemed within the meaning of all the terms of this lease, including the habendum clause, that gas is produced and marketed from the premises during the time such gas is not sold or used.

7. If a commercially productive well or wells shall be drilled on adjoining property, after the execution of this lease, at such distances as might permit drainage from the leased premises, and in any event if such a gas well is drilled within one thousand (1000') feet of the leased premises, Lessee shall drill an "offset" well for each of such well(s) and such additional wells as may reasonably be required to prevent drainage from the leased premises. Such offset well(s) shall be commenced within 180 days of completion and production of such well(s) on an adjoining tract, and diligently pursue the drilling of said offset well.

A "commercially productive" well is one which can be profitably operated by Lessee, taking into consideration the reasonable cost of drilling and equipping and operating the well. The burden shall be on Lessee to show that any producing well on adjoining property which it considers not to be commercially productive is, in fact, not commercially productive.

8. Subject to satisfactory title to the lease premises for drilling *Drilling Commencement by Clause* purposes, Lessee shall, within one hundred and twenty (120) days after receipt by Lessee of this executed lease, commence, or cause to be commenced, and diligently pursue after such commencement, the drilling of a well on the leased premises to a depth sufficient to test the Devonian Shale Formation, or to a depth of 5,700 feet, whichever is shallower. Within twelve (12) months after completion of drilling operations on the initial well as provided for above, Lessee shall commence or cause to be commenced drilling operations for a second well at a location selected by Lessee on the lease, to a depth sufficient to test the Weir Formation. Within twelve (12) months after completion of drilling operations on said second well, Lessee shall commence, or cause to be commenced, drilling operations for a third well at a location selected by Lessee on the lease, to a depth sufficient to test the Weir Formation. All such wells commenced shall be drilled and operated in a diligent and workmanlike manner.

Upon failure of Lessee to timely commence the second or third of the above mentioned wells in this Article 8, the Lessor shall have, at its option and as its sole recourse against Lessee for failure to drill, for ninety (90) days thereafter, the right to cancel and terminate this lease, except as to two hundred (200) acres in the form of a circle around each producing gas well and except as

-3-

BOOK 217 PAGE 4

to eighty (80) acres in the form of a circle around each producing oil well, with each well being as nearly as possible in the center of the circle, and such easements and rights as are necessary for Lessee to operate said wells.

9.   The coal underlying the leased premises, and the mining rights with respect thereto, is the dominant estate, and the oil and gas lease and estate on such premises shall be subservant thereto.  Lessee understands and agrees that all rights and privileges hereby granted are and shall be subject and subordinate to all existing leases, contracts or agreements for the mining and removal of coal and other minerals from the leased premises, or any part thereof as the same are now in force.  Lessors reserve for themselves, their lessees, vendees, assigns, or other persons, firms or corporation with whom they may contract or have already contracted, all rights and privileges necessary, usual or convenient for the economical development, by proper, safe and sound methods or practices, of the coal, including coal mined by strip and auger, and other minerals except oil and gas and all hydrocarbon substances, in, on and underlying the leased premises, which rights so reserved by Lessors shall be exercised, insofar as Lessors have the right so to do, with due regard for the rights of Lessee in its operations hereunder.  The Lessee further agrees that when requested by Lessors so to do, it will relocate any of its pipelines or meter facilities on the leased premises, at Lessee's expense, to meet reasonably necessary requirements for coal operations; providing however, the cost of any subsequent relocation of the same line, or same portion of line, or meter facilities shall be at the expense of Lessor.

The present coal Lessee is Cedar Coal Company, a corporation, whose mailing address is P. O. Box 700, Lancaster, Ohio 43130.

10.  Lessors reserve unto themselves all rights to grant to other persons, firms and corporations easements for pipelines, telegraph and telephone lines, electric transmission lines and any and all other easements, except insofar as same interferes with the easements, property and equipment of Lessee on said premises under the terms hereof.  Lessee agrees that it shall not locate any well upon any easement heretofore granted, including specifically Appalachian Power Company's 133 MKVA power line easement.

11.  Before drilling for oil or gas on lands hereby leased, the Lessee shall furnish to the Lessor's agents (5 copies), to Cedar Coal Company (2 copies), or any of Lessor's subsequent coal lessees, of which Lessee is made aware of by Lessor, a plat prepared by a competent engineer showing the proposed location of any well and distances of such location from two permanent points or landmarks on said lands, and the number to be given the well.

Fifteen days after receipt of above information, Lessor, its agents, or the coal lessee shall advise Lessee as to whether or not said location of well conflicts with a mine development or projected mine development, or is within fifty feet of any entry, haulway, or air course existing or projected in connection with any existing or projected coal mining operation on said premises or too close to any structure or powder house. In case the proposed location does interfere with a projected development or existing development, or with any entry, haulway or air course, existing or projected, Lessors or the coal lessee will advise Lessee of the nearest location at which the well may be placed to avoid interference.

In case Lessor, or its coal lessee, shall fail to notify Lessee as hereinabove provided within said period of fifteen (15) days, Lessee may then prosecute its proposed operations and it will be assumed that said well location does not conflict or interfere with any coal operations as provided above.

12.  Lessee shall not discriminate against any of the oil or gas wells on the leased premises or marketing of gas or oil therefrom in favor of any other oil or gas well operated by the Lessee off the leased premises.

13.  The Lessor shall have the right after three (3) days written notice and, during normal business hours of Lessee, to inspect and examine the records, meters and wells of the Lessee, and all affiliated corporations and partnerships owned or controlled, by the Lessee, as is necessary in determining Lessee's compliance with the provisions of this lease.

-4-

BOOK 217 PAGE 5

14.   The Lessee shall bear seven-eighths and the Lessor shall bear one-eighth of any taxes on oil, gas, or other hydrocarbons produced in association therewith from the leased premises or based on or measured by the amount or value of such products, and of any taxes or other charges imposed by any governmental body on the privilege or occupation of exploring for such products or severing, producing, storing, transporting, or marketing the same, and such apportionment shall be made regardless as to whether such tax or charge is assessed against or imposed upon the Lessor or the Lessee. The Lessor will reimburse the Lessee for the Lessor's proportionate part of any such charges paid by the Lessee and the Lessee is authorized to deduct such amounts from any sums owing the Lessor if not so paid.

15.   Lessee agrees at all times to keep careful logs of each and every well drilled by or for it hereunder, and shall furnish Lessor's agents, upon written request therefore, information as to the progress of all drilling operations, all well logs of wells drilled hereunder, the results of all core analysis of oil and gas sands and geophysical tests, and of any and all other tests, investigations, potentialities, capacities, of the oil and gas properties of the leased premises. If requested, Lessee shall also furnish promptly to the Lessor's agents monthly statements of all gas, oil and other products produced from the leased premises each month.

16.   Lessee, except as to its obligation to drill the initial well and the two additional wells as provided for in Article 8 above, may at any time deliver to Lessor, or file of record, a written release of this lease as to a full interest in all, but not less than all, of the area covered by this lease, except reserving an area in the form of a circle of 200 acres around each producing gas well and 80 acres around each producing oil well, together with rights of ingress and egress, and shall thereupon be relieved of all obligations thereafter arising with respect to the interest so released. Lessee's obligations to pay rentals and shut-in royalties shall be proportionately reduced with the net acreage interest retained hereunder, and for such purpose the number of lease acres described in paragraph 2 shall be deemed correct, whether more or less.

17.   This lease shall not be assigned or subleased in whole or in part, without the written consent of the Lessor, which consent shall not be arbitrarily withheld; and further provided:

(a)   That the assignee shall be a responsible party capable of performing the terms and conditions hereof.

(b)   That the Lessee herein shall not be relieved by reason of such assignment of its primary responsibility and liability for the performance of the terms and conditions of this lease, including, but not by way of limitation, the payment of all rents and royalties herein provided to be paid.

(c)   That such assignee assume, in writing, the performance of all the terms and conditions of this lease required to be performed by the Lessee.

18.   Lessee further covenants and agrees to indemnify and hold harmless the Lessors and each of them from any and every liability, loss, claim, demand, action, suit, payment and all costs and expenses arising out of Lessee's operations under this lease.

19.   In exploring for, developing and marketing oil, gas and other substances covered hereby on the leased premises,whether by primary, secondary, or other enhanced recovery, Lessee shall have the right of ingress and egress along with the right to conduct such operations on the leased premises as may be reasonably necessary for such purposes. Lessee may use in its operations on the leased premises, free of cost, any oil, gas, water and/or other substances produced on the leased premises, except water from Lessor's wells or ponds. The right of ingress and egress granted hereby shall apply to the entire leased premises notwithstanding any release or other termination affecting any portion therof. When requested by Lessor in writing, Lessee shall bury its pipelines below plow depth. No well shall be located less than two hundred (200) feet from any house or barn, without the prior written consent of Lessor, or their agents, or the owner of said building or facility, and Lessee shall pay for damage caused by its operations to buildings and other improvements now, or later placed, on the leased premises, and to timber and growing crops thereon. Lessee shall have the right

-5-

BOOK 217 PAGE b

at any time to remove its fixtures, equipment and materials, including well casing, from the leased premises during the term of this lease or within a reasonable time thereafter, but not to exceed six (6) months.

20.  Subject to the terms of Paragraph 9., if Lessee drills a well incapable of producing in paying quantities (hereinafter called "dry hole") on the leased premises or if production in paying quantities permanently ceases from any cause, then in the event this lease is not otherwise being maintained in force it shall nevertheless remain in force if Lessee commences operations for reworking an existing well or for drilling an additional well on the leased premises within ninety (90) days after completion of operations on such dry hole or within 90 days after such cessation of production, or should the lease be within the primary term, if Lessee pays rental on or before the next rental payment date (if any) next ensuing after the expiration of said 90-day period. If at the end of the primary term or at any time thereafter this lease is not otherwise being maintained in force, it shall nevertheless remain in force as long as Lessee, without an interruption of more than 90 consecutive days, engages in drilling, reworking or any other operations reasonably calculated to obtain or restore production on the leased premises and, if such operations result in the production of oil or gas or other substances covered hereby, as long thereafter as there is production in paying quantities.

21.  The Lessors hereby covenant with the Lessee that the Lessee on the payment of its obligations hereunder, at the time and in the manner required hereunder, and performing the covenants, (express or implied) on its part to be kept and performed, shall and may peaceably and quietly have, hold and enjoy the demised premises for the purposes aforesaid during the term aforesaid, PROVIDED ALWAYS,

(a)  that if the Lessee shall neglect or fail to perform or observe any non-monetary covenant herein contained (expressed or implied) on its part to be performed and observed for a period of 90 days after written notice to Lessee by Lessors of any such neglect or failure to perform or observe any such covenant and the time to perform is not extended by the provisions of sub-paragraph (d) hereof, or,

(b)  if it shall fail to pay any monetary obligation when the same becomes due and payable, or if it shall fail to commence to drill any well at the time and manner required of it under 8 hereof, and the Lessee shall fail to pay or commence drilling as aforesaid within ten (10) days after date of written notice, of such failure, to it by Lessors, or,

(c)  in the event Lessee shall be adjudged a bankrupt, or initiates proceedings under any of the provisions of the Bankruptcy laws, or a receiver for its business shall be appointed which in any of such events is not discharged or terminated within ninety (90) days, from such proceedings, judgment or appointment or if Lessee shall make an assignment of a substantial part of its assets to a trustee for the benefit of its creditors, or if a substantial part of the property of Lessee upon the demised premises shall be levied upon and made subject to sale under any judicial process, which is not set aside or lifted, respectively, as the case may be, within ninety (90) days from said assignment or levy;

(d)  provided further, however, if a declared breach or default is litigated and there is a final judicial determination that a breach or default has occurred, the Lessee nevertheless shall have sixty (60) days or such longer period of time as may be necessary, using due diligence, from the time of such judicial deter-mination to cure such default or breach and if fails to do so,

then in any such event as detailed in (a), (b), (c), and (d), Lessors may upon written notice to Lessee, terminate and forfeit this lease and Lessors may thereupon enter and retake possession of the leased premises and exclude Lessee therefrom, and henceforth peaceably hold and enjoy possession of said premises without prejudice and, in addition thereto, the Lessors reserve to themselves all rights of landlords which the Lessors have under the laws of West Virginia, for the recovery of rent or of possession against delinquent tenants.

22.  Lessor hereby agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgage, taxes or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof, and Lessor hereby agrees that any such payments made by the Lessee for the Lessor shall be deducted from any amounts of money which may become due the Lessor under the terms of this lease.

23.  The undersigned Lessors, for themselves and their heirs, successors and assigns, hereby surrender and release all rights of dower and homestead in the premises herein described insofar as said right of dower and homestead may in any way affect the interest of Lessee.

-6-

BOOK 217 PAGE

24. Robert W. Lawson, II and Kanawha Valley Bank, N.A., as Trustees, under that certain trust agreement bearing the date of April 16, 1982, with E. Fontaine Broun, now deceased; Virginia Broun Lawson and Robert W. Lawson, Jr., her husband; Jean J. Powers Sheild, as Executrix U/W of Thomas Broun Powers, Jr.; Jean J. Powers Sheild and John Sheild, her husband; Philip Whittemore Powers and Lois Jenks Powers, his wife; Anne Record Ervin and Clyde Ervin, her husband; Kanawha Valley Bank, N.A. and John Lukens as Trustee under the Last Will and Testament of Thomas B. Jackson; Kanawha Valley Bank, N.A., as Trustee under the Last Will and Testament of Dorothy S. Jackson; Thomas Broun Powers, III and Mary Corbin Welch, his wife; Stephen Jordan Powers and Jane Megan Powers, his wife; Donald L. Otto, single, (Principals) do hereby appoint Robert W. Lawson, III, their agent with the power to act on their behalf collectively or individually in all matters in connection with, arising out of, or pertaining to this lease in which they or any of them have an interest, involving said Principals or any of them (Principals, shall also mean "or any of them") with their Co-Lessors or with Lessee of this lease, including but not limited to: (a) waive any performance by Lessee of any provision of the lease on Lessee's part to perform, excepting those provisions which involve a monetary consideration; (b) compromise and settle account and disputes, if any, with the Lessee or any Co-Lessor; (c) employ others as he may deem advisable to protect generally the interests of the Principals in the lease, including the institution and maintenance of any legal, equitable or other action or proceeding (arbitration or otherwise) for such purposes; (d) pay property taxes on lands embraced in this lease and advance reasonable expenses to protect the interests of Principals in said lease; (e) to give and direct notices to the Lessee and to exercise any right, power, election or option the Principals may have the right to exercise under and by virtue of the provisions of this lease; (f) charge and be paid a reasonable compensation for his services and to be reimbursed for his actual expenses and advances in connection with any of his actions hereunder; (g) execute and deliver documents on behalf of the Principals necessary or requisite under the actions taken hereunder by the Agent or his employees pursuant to the provisions hereof, provided, however, such Agent is not empowered to sell, dispose or encumber the titles and estates of the Principals in and to any of the lands embraced herein.

Any one of said Principals may at any time revoke the Agency hereby created by an instrument in writing in form legally sufficient to be recorded in the offices of the Clerk of the County Commission of Kanawha County West Virginia; provided however, said revocation shall not be binding on Lessee until an executed copy thereof is furnished to the Lessee.

The Principals hereby appoint Kanawha Valley Bank, N.A., as their Fiscal Agent to receive and distribute all rentals, royalties or other sums due under the terms of this Lease. The agent shall render statements of his accounts, collections, and activities at least annually and shall invoice the respective Broun parties or their Fiscal Agent (now Kanawha Valley Bank, N.A.) from time to time as circumstances may require, and amounts due to the Agent on account of his activities hereunder, shall be promptly paid by said Fiscal Agent for the Broun parties which is hereby authorized and directed, upon request of the Agent for and during the term of this lease, and its renewals, to pay any such amount due to the Agent, or the persons entitled thereto as directed by said Fiscal Agent, from any monies paid to said Fiscal Agent.

The Agent or any successor Agent hereafter appointed hereunder by the Principals to act for and on their behalf, shall not be liable in damages, or otherwise, to the Principals, for any action such Agent make take, except for actual fraud.

25. F.W. Prichard, Jr., and Rhonda Smith Prichard, his wife; Elsie P. Carter and William H. Carter, her husband; Betty P. Russell and Kenneth B. Russell, her husband; A.M. Prichard, III, and Judy Prichard, his wife; Lewis Prichard and Billie Jean Prichard, his wife; Sarah Ann Prichard, single; Rosemary K. Yingling and Nyron Yingling, her husband; Beverly Dunlap, single; Janet M. Maharg and James Edward Maharg, her husband; Francis J. Winters, William S. Winters; Jane Ann Rice; Walter J. Winters; Julia M. Baker; Debra Sue Myers; Charlene M. Johnson; James E. McCarty and Mabel A. McCarty, his wife; and Elizabeth Knight McClintic, single; (Principals) do hereby appoint the Kanawha Banking and Trust Co., N.A. of Charleston, West Virginia, their Agent with the power to act on their behalf collectively or individually in any matter in connection with, arising out of or pertaining to the lease in which they or any of them have an interest involving said Principals or any of them (Principals shall mean also "or any of them") and the Lessee of this lease, including but not limited to: (a) waive the performance by Lessee of any provision of the lease on its part to perform, excepting those provisions which involve a monetary consideration; (b) compromise and settle accounts and disputes, if any, with the Lessee or any Co-Lessor; (c) employ others as he may deem advisable to protect generally the

-7-

BOOK 217 PAGE 8

interests of the Principals in the lease, including the institution and maintenance of any legal, equitable or other action or proceeding (arbitration or otherwise) for such purposes; (d) pay property taxes on the lands embraced in this lease and advance reasonable expenses to protect the interests of Principals in said lease; (e) to give and direct notices to Lessee and to exercise any right, power, election or option the Principals may have the right to exercise under the provisions of this lease; (f) charge and be paid a reasonable compensation for its services and to be reimbursed for its actual expenses and advances in connection with any of its actions hereunder; (g) to execute and deliver documents on behalf of Principals necessary or requisite under the actions of the Agent or its employees taken pursuant to the provisions of this Section and subsections, provided however, such Agent is not empowered to sell, dispose or encumber the titles and estates of the Principals in and to any of the lands embraced in said Lease.

Any one of said Principals may at any time revoke the Agency hereby created by an instrument in writing in form legally sufficient to be recorded in the offices of the Clerk of the County Commissions of Kanawha County, West Virginia; provided however, said revocation shall not be binding on Lessee until an executed copy thereof is furnished to the Lessee.

The Principals hereby appoint Kanawha Banking and Trust Company, N.A., as their Fiscal Agent to receive and distribute all rentals, royalties or other sums due under the terms of this Lease. The agent shall render statements of his accounts, collections, and activities at least annually and shall invoice the respective Prichard parties or their Fiscal Agent (now Kanawha Banking and Trust Company, N.A.) from time to time as circumstances may require, and amounts due to the Agent on account of his activities hereunder, shall be promptly paid by said Fiscal Agent for the Prichard parties which is hereby authorized and directed, upon request of the Agent for and during the term of this lease, and its renewals, to pay any such amount due to the Agent, or the persons entitled thereto as directed by said Agent, from any monies paid to said Fiscal Agent.

The Agency or any successor Agent hereafter appointed hereunder by the Principals to act for and on their behalf, shall not be liable in damages, or otherwise, to the Principals, or any of them, for any action he may take by virtue of the powers vested in him except for actual fraud.

The Agent is to render to the Principals statements of its accounts, collections and activities at least semi-annually; and to invoice the respective Principals from time to time as circumstances may require. Amounts due to the Agent, on account of its activities hereunder, shall be promptly repaid by the Principal from whom the same may be due, upon demand, or if not paid within thirty (30) days after demand therefor is made, the Lessee is hereby authorized and directed, for and during the term of this lease and any renewals thereof, to pay to the Agent, upon receipt of an itemized statement from the Agent, the amount stated to be due from any such delinquent Principal, provided that at the time of the receipt of such a statement there are rents, royalties or other sums owing by Lessee to said delinquent Principal under the leases in an amount at least equal to the amount owed by the delinquent Principal to the Agent. Such amounts so paid by Lessee may be deducted from any rents, royalties, or other sums then or thereafter owing from Lessee to said delinquent Principal, together with interest at six percent (6%) per annum from date of outlay by said Agent until recouped or recovered by the Agent. Lessee shall, in accounting to or with each Principal, be entitled to a full credit of all amounts so paid to the Agent or to the others under authority hereof and shall under no circumstances be liable to account or pay to any Principal a second time for any sums paid to or at the written direction or instruction of the Agent.

26. L.M. LaFollette, Trusts; R.B. LaFollette Trust for L.M. LaFollette, III and family and R.B. LaFollette, Trust for J.L. Wright and family; Jane L. Wright and J. Craig R. Wright, her husband; L.M. LaFollette, III and Alice Kuhn LaFollette, his wife hereby appoint Kanawha Valley Bank, N.A., Charleston, West Virginia and L.M. LaFollette, III of Charleston, West Virginia their agent with the power to act on their behalf collectively or individually in all matters in connection with, arising out of or pertaining to this lease in which they or any of them have an interest, involving said Principals or any of them (Principals, shall also mean "or any of them") with their Co-Lessors or with Lessee or with Lessee of this lease, including but not limited to: (a) waive any performance by Lessee of any provision of the

-8-

BOOK 217 PAGE 9

lease on Lessee's part to perform, excepting those provisions which involve a monetary consideration; (b) compromise and settle accounts and disputes, if any, with the Lessee of any Co-Lessor; (c) employ others as he may deem advisable to protect generally the interests of the Principals in the Gound Lease, including the institution and maintenance of any legal, equitable or other action or proceeding (arbitration or otherwise) for such purposes; (d) pay property taxes on lands embraced in the lease and advance reasonable expenses to protect the interests of Principals in said Lease; (e) to give and direct notices to the Lessee and to exercise any right, power, election or option the Principals may have the right to exercise under and by virtue of the provisions of this lease; (f) charge and be paid a reasonable compensation for their services and to be reimbursed for their actual expenses and advances in connection with anh of their actions hereunder; (g) execute and deliver documents on behalf of the Principals necessary or requisite under the actions taken hereunder by the Agent of his employees pursuant to the provisions of this Section or any subsection thereof, provided, however, such Agent is not empowered to sell, dispose or encumber the titles and estates of the Principals in and to any of the lands embraced in said lease.

Any one of said Principals may at any time revoke the Agency hereby created by an instrument in writing in form legally sufficient to be recorded in the offices of the Clerk of the County Commissions of Kanawha County, West Virginia; provided however, said revocation shall not be binding on Lessee until an executed copy thereof is furnished to the Lessee.

The Principals hereby appoint Kanawha Valley Bank, N.A., as their Fiscal Agent to receive and distribute all rentals, royalties or other sums due under the terms of this lease. The Agent shall render statements of his accounts, collections and activities at least annually and shall invoice the respective LaFollette parties, or their Fiscal Agent (now Kanawha Valley Bank, N.A.) from time to time as circumstances may require, and amounts due to the Agents on account of their activities hereunder, shall be promptly paid by said Fiscal Agent for the LaFollette parties which is hereby authorized and directed, upon request of the Agents for and during the term of this lease, and its renewals, to pay any such amount due to the Agents, or the persons entitled thereto as directed by said Agents, from any monies paid to said Fiscal Agent.

The Agents or any successor Agent hereafter appointed hereunder by the Principals to act for and on their behalf, shall not be liable in damages, or otherwise, to the Principals, for any action such Agent may take, except for actual fraud.

27.  Lessee shall not be required in any event to increase the rate or amount of said rental or royalty payments herein provided by reason of any royalty or interest in said oil or gas that may have been heretofore sold, reserved or conveyed by said otherwise; and if the Lessors do not have title to all the oil and gas in the leased premises, there shall be a deduction by Lessee, or refund to it of such part of all royalties and payments made by the Lessee under this lease as shall be proportionate to the outstanding title, and payments thereafter to be made to the persons entitled thereto for such purposes shall be reduced in the same proportion.

28.  This lease may be executed in any number of counterparts by any person having an interest in the leased premises, with the same effect as if all Lessors herein were named as Lessor in one document and had all signed the same document. All counterparts shall be construed together and shall constitute one lease. The failure of any person owning an interest in said land to execute a counterpart hereof, or the failure of any person named as Lessor in any counterpart to execute the same, shall not affect the binding force of this lease as to those who have executed or shall execute a counterpart thereof.

IN WITNESS WHEREOF, the corporations herein named have caused their respective corporate names to be hereunto subscribed by their respective proper and duly authorized representatives, and the remaining parties of the first part herein have hereunto subscribed their names.

KANAWHA VALLEY BANK, N.A., AND JOHN LUKENS, AS TRUSTEES U/W OF THOMAS B. JACKSON, DECEASED

BY: _____

ITS: Trust Officer _____

_____
JOHN LUKENS

-9-

BOOK 217 PAGE 23

J. CRAIG R. WRIGHT
_____

L. M. LAFOLLETTE, III AS TRUSTEE
FOR L. M. LAFOLLETTE, IV, AND
JAMES CALVERT LAFOLLETTE
_____

DEARMOND LAFOLLETTE
_____

MARJORIE JANE WRIGHT
_____

ALICE ANN WRIGHT
_____

L. M. LAFOLLETTE, III, TRUSTEE
FOR L. M. LAFOLLETTE, IV, JAMES
CALVERT LAFOLLETTE AND OTHERS
UNDER DEED DATED 12/31/70

RIVERSIDE PARK, INC.

BY: _____

ITS: _____

O. JENNINGS RIFE, TRUSTEE OF
H. A. ROBSON TRUST

HOWARD F. MEEK, TRUSTEE OF
H. A. ROBSON TRUST

EDWIN N. VINSON, TRUSTEE OF
H. A. ROBSON TRUST

THE BOARD OF TRUSTEES OF
PRICHARD SCHOOL

BY: _____

ITS: Secretary

KANAWHA BANKING & TRUST COMPANY,
N.A., EXECUTOR AND TRUSTEE OF
TWO (2) TRUSTS UNDER THE LAST
WILL AND TESTAMENT OF FREDERICK
W. PRICHARD, DECEASED

BY: _____

ITS: SENIOR VICE PRESIDENT

FREDERICK W. PRICHARD, JR.

RHONDA SMITH PRICHARD

-12-

BOOK 217 PAGE 48

STATE OF _W. Va._

COUNTY OF _Cabell_, TO-WIT:

I, _Kimberly D. Randall_, a Notary Public of said county, do certify that _R. Jennings, Jr., Assistant Vice of Edwin Duncan, Trustee of N.S. Patent Trust_ whose name is signed to the writing hereto annexed bearing date on the 2nd day of November, 1982, has this day acknowledged the same before me, in my said county and state.

Given under my hand and official seal this _14th_ day of _Jan._, 198_3_.

My commission expires _March 13, 1990_

_Kimberly D. Randall_

STATE OF _West Virginia_

COUNTY OF _Cabell_, TO-WIT:

I, _Evelyn M. Taylor_, a Notary Public of said county, do certify that _Paul W. McCreight, Secretary of The Board of Trustees of Richard John's a corporation_ whose name is signed to the writing hereto annexed bearing date on the 2nd day of November, 1982, has this day acknowledged the same before me, in my said county and state.

Given under my hand and official seal this _4th_ day of _March_, 198_3_.

My commission expires _June 6, 1987_

_Evelyn M. Taylor_

STATE OF _West Virginia_

COUNTY OF _Kanawha_, TO-WIT:

I, _Terri L. Shalmer_, a Notary Public of said county, do certify that _Charles Farrell, Senior Vice President of First Kanawha Banking Trust Company, NA_ whose name is signed to the writing hereto annexed bearing date on the 2nd day of November, 1982, has this day acknowledged the same before me, in my said county and state.

Given under my hand and official seal this _29th_ day of _November_, 198_2_.

My commission expires _April 15, 1992_

_Terri L. Shalmer_