IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of Luther
E. Kile, THE H. A. ROBINSON TRUST, by EDWIN N.
VINSON, Beneficiary & Trustee of the H. A. Robinson
Trust, DAVID H. DAUGHERTY, Trustee of the H. A.
Robinson Trust, and MARY BLAIR V. CHAPUISAT,
Beneficiary of the H. A. Robinson Trust, H. DOTSON
CATHER, Trustee of Diana Goff Cather Trusts, CLYDE
EMERSON MCCLUNG, Individually, and JAMES E.
HAMRIC, III, Individually,

     Plaintiffs

                Civil Action No. 2:06-0612
    v.              Honorable Joseph R. Goodwin

EQUITABLE PRODUCTION COMPANY, a qualified
Pennsylvania corporation; and EQUITABLE
RESOURCES, INC., a Pennsylvania corporation,

     Defendants

EQUITABLE RESOURCES, INC., a Pennsylvania
corporation, and EQUITABLE PRODUCTION
COMPANY, a qualified Pennsylvania corporation,

     Third-Party Plaintiffs,

v.

STATOIL NORTH AMERICA, INC., a Delaware
corporation; STATOIL ENERGY, INC., a Virginia
corporation; and STATOIL ENERGY HOLDINGS,
INC., a Delaware corporation.

     Third-Party Defendants.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CONDITIONAL
CERTIFICATION OF TEMPORARY SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.  INTRODUCTION**

   Plaintiffs and Defendants Equitable Production Company ("EPC") and Equitable

Resources, Inc. ("EQT") (collectively the "Equitable Defendants"), submit this memorandum in

support of their Joint Motion for Conditional Certification of Temporary Settlement Class and

Preliminary Approval of Class Action Settlement, and seek an Order (1) conditionally certifying a temporary class action for settlement purposes only, including the One-Eighth Subclass "A", the One-Eighth Subclass "B" and the Flat-Rate Subclass[1], in accordance with Rule 23(b) of the Federal Rules of Civil Procedure; (2) preliminarily approving the proposed Settlement Agreement; (3) appointing Plaintiffs' counsel as Settlement Class Counsel; (4) preliminarily approving the Fee Award proposed by Settlement Class Counsel; (5) establishing certain deadlines; and (6) scheduling a Formal Fairness Hearing.

## II.     STATEMENT OF THE CASE

Plaintiffs commenced this civil action by filing their Complaint in the Circuit Court of Roane County, West Virginia, Civil Action No. 06-C-366, on or about June 13, 2006. Defendant EPC timely removed this action to federal court on August 2, 2006, on several bases, including, but not limited to, diversity jurisdiction and the Class Action Fairness Act, 28 U.S.C. § 1332(d). Thereafter, on or about April 3, 2007, an Amended Complaint was filed, which added EQT as a Defendant. The action was filed as a putative class action involving the payment of royalties on oil and gas leases. The Amended Complaint contains claims alleging breach of contract, breach of fiduciary duty, fraud, violations of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, *et seq.*), and violations of the flat rate royalty statute (W. Va. Code §22-6-8). The Amended Complaint also states a claim for compensatory and punitive damages as well as attorneys' fees and interest. In essence, Plaintiffs claim that the Equitable Defendants breached their lease agreements by improperly paying flat rate royalties, or deducting Post-Production Expenses from their Royalty Payments.

---

[1] Capitalized terms in this memorandum shall have the meaning given to them in the Settlement Agreement, which is attached as Exhibit 1 to the "Joint Motion for Conditional Certification of Temporary Settlement Class and Preliminary Approval of Class Action Settlement."

III.     **SUMMARY OF CLASS ACTION SETTLEMENT**

The parties have been engaged in settlement negotiations, including numerous formal mediation sessions with mediator Robert B. Allen, since January 2008. In discovery and as a part of these settlement negotiations, the Equitable Defendants have produced over thousands of pages of documents, numerous pages of spreadsheet data relating to leases and royalties, and a complete copy of its voluminous database containing all royalty payment information. Additionally, Plaintiffs' counsel have taken several depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs and the Equitable Defendants have also retained experts to assist them in reviewing information, analyzing data and making damages calculations.

After extensive settlement negotiations, the parties have entered into a Settlement Agreement (the "Agreement") to settle the Royalty Claims of Plaintiffs and the proposed Class Members. Those claims include those claims asserted in this Action, specifically claims for improper royalty payments, improper deductions, improper measurement, improper accounting for natural gas liquids, improper sales prices, and damages for breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, *et seq.*), violation of the West Virginia Flat Rate Royalty Statute (W. Va. Code § 22-6-8) and punitive damages, all related to the alleged failure to pay proper royalty. The Agreement establishes the calculation of Settlement Payments based upon the type of Lease the Class Members have with the Equitable Defendants. Class Members with One-Eighth Leases are entitled to additional consideration if they enter into a Lease Modification.

In particular, Flat Rate Subclass Members are eligible to receive a Settlement Payment based upon their share of an amount equal to 50% of the difference between a royalty based

upon one-eighth of the Monthly Index Price for monthly volumes and the actual monthly royalty payment from February 1, 2000 through December 12, 2008 ("the Compensation Period"), plus 9% simple annual interest, and less Court-approved Fee Awards. The settlement payment due each flat rate subclass member is calculated first by determining the aggregate monthly difference for each flat rate well on their lease and then determining the net owner's total.

One-Eighth Subclass "A" Members who currently own a Type "A" One-Eighth Lease and who agree to a Lease Modification, are eligible to receive a Settlement Payment based upon their share of an amount equal to 155% of the difference between a royalty based upon one-eighth of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. One-Eighth Subclass "A" Members who no longer own an interest in a Type "A" One-Eighth Lease and those who currently own a Type "A" One-Eighth Lease but who do not elect the Lease Modification are eligible to receive a Settlement Payment based upon their share of an amount equal to 120% of the difference between a royalty based upon one-eighth of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. The Settlement Payment due One-Eighth Subclass "A" Members is calculated first by determining the Aggregate Monthly Difference for a well and then determining the Net Owner's Total.

One-Eighth Subclass "B" Members who currently own a Type "B" One-Eighth Lease and who agree to a Lease Modification, are eligible to receive a Settlement Payment based upon their share of an amount equal to 50% of the difference between a royalty based upon one-eighth of 90% of the Monthly Index Price and the rate on which royalties were paid for monthly

volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. One-Eighth Subclass "B" Members who no longer own an interest in a Type "B" One-Eighth Lease and those who currently own a Type "B" One-Eighth Lease but who do not elect the Lease Modification are eligible to receive a Settlement Payment based upon their share of an amount equal to 25% of the difference between a royalty based upon one-eighth of 90% of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less that well's proportionate share of the Fee Award . The Settlement Payment due One-Eighth Subclass "B" Members is calculated first by determining the Aggregate Monthly Difference for a well and then determining the Net Owner's Total.

In accordance with the terms of the Settlement Agreement, a bank account will be established by the Claims Administrator for the Settlement Fund at a federally chartered financial institution. The Equitable Defendants will contribute to the settlement fund a sum equal to the gross owners' totals for participating one-eighth subclass members and participating flat rate subclass members, as defined in the Settlement Agreement. The principal in the settlement fund shall be used to make settlement payments and to pay any fee awards. The remainder of the settlement fund shall be returned to the Equitable Defendants after the claims administrator has made a final report approved by the Court. All interest accruing in the settlement fund shall be paid to the Equitable Defendants with the remainder of the settlement fund unless necessary for making settlement payments. The Equitable Defendants shall make an initial contribution of $5.0 million to the settlement fund within thirty (30) days of the entry of this Order, or following Court approval of the claims administrator and establishment of the settlement fund, whichever date is later, and the remaining contribution to the settlement fund

within seven (7) days prior to the claims administrator's distribution of the settlement payments.

With regard to the claims process, a Benefit Notice will be sent to each Participating Subclass Member within sixty (60) days of the entry of the Final Order and Judgment.  A Claim Form will also be mailed to each Subclass Member at the same time as the Benefit Notice which will require the Subclass Member to confirm or dispute information regarding the period during which the Subclass Member was the owner of a Covered Lease and other information relating to the proper amount of settlement monies to be paid. The Claim Form also provides a release of claims against the Equitable Defendants. The Claim Form further provides in the event of new legislation or a final, non-appealable order of the West Virginia Supreme Court of Appeals or the United States Supreme Court requiring payment of one-eighth royalties for Flat Rate Leases or voiding such Flat Rate Leases, the Flat Rate Subclass Members will not seek forfeiture of any Flat Rate Leases converted by EPC to One-Eighth Leases prospectively from the date of such final decision. Class Members will have forty-five (45) days after the Claim Form is mailed to return a completed Claim Form to the Claims Administrator or to dispute the content of the Claim Form. The parties plan to request that the Court set a Bar Date in the Final Order and Judgment. That date will be the final date by which a Class Member must have mailed a completed Claim Form to be eligible to receive Settlement Payments.

The costs of notice and administration expenses up to $2.0 million will be paid by the Equitable Defendants in accordance with the terms of the Agreement. The Equitable Defendants shall be responsible for additional costs incurred by the claims administrator for recording lease modifications which shall not be included as administration expenses included toward the $2.0 million threshold. If the costs of notice and administration expenses exceed $2.0 million, then the excess costs and expenses shall be assessed as costs of litigation.

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Rule 23 of the Federal Rules of Civil Procedure requires that the Court approve any settlement of a certified class. Specifically, Rule 23 requires that the Court evaluate whether the proposed settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). Approval is typically a two-step process. *See* HERR, MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2007); *see, e.g., In re Serzone Prods. Liab. Litig.,* 231 F.R.D. 221, 223 (S.D.W. Va. 2005) (explaining events leading to final approval of settlement). The first step is a preliminary fairness review of the proposed settlement. *See* HERR, *supra.*

In this case, the Court must also make a determination on conditional class certification for purposes of the settlement, as no class has yet been certified. If the Court makes a preliminary finding that the proposed settlement is fair, then notice must be given to the Settlement Class Members of the certification, proposed settlement and the schedule for a Formal Fairness Hearing on the approval of the settlement. *See id.* Notably, the Court must only find that the proposed settlement is within the range of reasonableness. *See* BARBARA J. ROTHSTEIN & THOMAS E. WILLGING, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES § HI.B. (Federal Judicial Center) (2005). Once that step has been completed, the second step is for the Court to hold a hearing to determine whether to grant final approval of the settlement. *See* HERR, *supra.* At that point, the Court will make a Final Order and Judgment as to whether the settlement is fair, reasonable and adequate. *See* ROTHSTEIN & WILLGING, *supra.*

## V.    CONDITIONAL CERTIFICATION OF THE CLASS

In order to settle the claims of all potential Class Members, the Court must first conditionally certify the class action in accordance with the standards of class certification set forth in Rule 23. The parties jointly seek conditional certification of a temporary class action solely for the purpose

of a global settlement of claims, and request that the Plaintiffs in this case be appointed as Class

Representatives.[2]  The proposed Class consists of three Subclasses, the Flat Rate Subclass, the

One-Eighth Subclass "A" and the One-Eighth Subclass "B", defined as follows:

> **Flat Rate Subclass:** All persons who have entered into Flat Rate Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.  The Flat Rate Subclass also includes all persons who have or had oil, gas or other hydrocarbon production from Flat Rate Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period.  The Flat Rate Subclass also includes all Lessors who have received royalty payments under Flat Rate Leases by virtue of pooling or unitization of their leased acreage.

> **One-Eighth Subclass "A":** All persons who have entered into Type "A" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.  Type "A" One-Eighth Leases are those One-Eighth leases that do not expressly address the deduction of Post-Production Expenses.  One-Eighth Subclass "A" also includes all persons who have or had oil, gas or other hydrocarbon production from Type "A" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period.  One-Eighth Subclass "A" also includes all Lessors who have received royalty payments under Type "A" One-Eighth Leases by virtue of pooling or unitization of their leased acreage.

> **One-Eighth Subclass "B":** All persons who have entered into Type "B" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.  Type "B" One-Eighth Leases are

---

[2] The Equitable Defendants agree to the conditional certification of the temporary class action for the sole purpose of effectuating the Agreement. In the event that the Agreement is not approved or otherwise is not effectuated, the Equitable Defendants reserve the right to oppose class certification.

those One-Eighth Leases which contain language expressly permitting the deduction of Post-Production Expenses. One-Eighth Subclass "B" also includes all persons who have or had oil, gas or other hydrocarbon production from Type "B" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period. One-Eighth Subclass "B" also includes all Lessors who have received royalty payments under Type "B" One-Eighth Leases by virtue of pooling or unitization of their leased acreage.

Rule 23(a) requires that four prerequisites be met for class certification: (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. *See Gunnells* v. *Healthplan Servs., Inc.,* 348 F.3d 417,423 (4th Cir. 2003). Additionally, the proposed class must fit within one of the three types of class actions set forth in Rule 23(b). *See id.* This Action falls within Rule 23(b)(3), which requires that there are questions of law or fact common to class members which predominate over questions affecting only individuals and that a class action is the superior method for fairly and effectively adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Importantly, federal courts are required to give a liberal construction to the Rule 23 class action requirements. *See Gunnells,* 348F.3dat417.

The proposed Settlement Class in this case is appropriate for conditional certification because the requirements of Rule 23 are met.

A.    **Numerosity**

Rule 23(a)(1) requires that the potential Settlement class is sufficiently numerous such that the joinder of all members is impractical. To determine whether the numerosity requirement is met, the factors to be considered by the Court "'include the estimated size of the class, the geographic diversity of the class, the difficulty of identifying class members, and the negative impact on judicial economy individual suits were required."' *Black v. Rhone-Poulenc, Inc.,*

173F.R.D. 156,160(S.D.W. Va.1996) *{quoting United Bhd. of Carpenters & Joiners of Am., Local 899* v. *Phoenix Assocs., Inc.,* 152 F.R.D. 518, 522 (S.D.W. Va. 1994)).

Although no specified number is required to maintain a class action, the Fourth Circuit has found that as few as eighteen class members can meet the numerosity requirement. *Black,* 173 F.R.D. at 160. There can be no question that the numerosity requirement is met in this Action. The parties estimate that there are approximately 10,000 Class Members who were Lessors during the Compensation Period. This Court has previously found that numerosity was satisfied where there were between 2,000 and 5,000 persons within the proposed class. *See Black,* 173 F.R.D. at 160; *see also, In re Serzone Prods. Liab. Litig.,* No. MDL No. 1477, 2004 WL 2849197, at *1 (S.D.W. Va. Nov. 18, 2004) (finding that the numerosity requirement was satisfied where the settlement class consisted of thousands of persons located throughout the United States).

### B.       Commonality

The second prerequisite for class certification established in Rule 23(a)(2) is that there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to the members of the class. Commonality is a liberal standard, and the fact that there are some factual variances in individual grievances among class members does not defeat commonality." *Morris* v. *Wachovia Sec., Inc.,* 223 F.R.D. 284,292 (E.D. Va. 2004) (citations omitted).

This criterion is met in this Action because the putative Settlement Class Members have been divided into three Subclasses with common questions relating to their claims for damages. Specifically, the Settlement Class Members are all making the same claims that the Equitable Defendants made improper royalty payments by deducting Post-Production Expenses from their Royalty Payments or paying flat rate royalties. The amount of damages that Plaintiffs claim is

based upon the language in the Leases, and thus, the Class Members are sub-classified by the type of Lease they have, either Flat Rate, One-Eighth Type "A" or One-Eighth Type "B".

### C.    Typicality

Similarly, in accordance with Rule 23(a)(3), the claims of the proposed Plaintiff Class Representatives are typical of the other Settlement Class Members' claims. As explained by the Fourth Circuit:

> The typicality requirement goes to the heart of a representative parties' [sic] ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members. For that essential reason, plaintiffs claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiffs proof of his own individual claim.

*Deiter* v. *Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006) (internal citations omitted). Importantly, the Rule does not require that the claims be identical, just that they arise out of the same legal or remedial theory. *See United Bhd. of Carpenters & Joiners of Am., Local 899* v. *Phoenix Assoc, Inc.,* 152 F.R.D. 518, 522 (S.D.W. Va. 1994). As such, factual variations are typically not sufficient to preclude class action treatment. *See id.*

The proposed Plaintiff Class Representatives' claims are typical of the claims of the putative Settlement Class Members, as they are based upon the propriety of royalty payments including the deduction of Post-Production Expenses from the royalties of all Lessors in the Settlement Class or the payment of flat rate royalties. Again, the sub-classification also ensures that the claims are typical of one another since they are grouped by the type of Lease which controlled the amount of royalty paid to the putative Settlement Class Members.

### D.    Adequacy

The final requirement of Rule 23(a) is that the representative parties must fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). "'[T]he two factors that are now predominantly recognized as the basic guidelines for the Rule 23(a)(4) prerequisite [as to representative plaintiffs] are (1) absence of conflict; and (2) assurance of vigorous prosecution.'" *Black v. Rhone-Poulenc, Inc.,* 173 F.R.D. 156, 162 (S.D.W. Va. 1996) *{quoting* 1 HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.22 (3d ed. 1992)). According to the Supreme Court, the adequacy of representation requirement "tends to merge" with the commonality and typicality requirements. *See Amchem Prods, v. Windsor,* 521 U.S. 591, 626 n.20 (1997).

Just as the commonality and typicality prerequisites have been satisfied, so has the adequacy of representation requirement. First, there is no conflict between the Plaintiff Class Representatives and the putative Settlement Class Members. The Plaintiff Class Representatives and the putative Settlement Class Members are seeking the same thing -- to recover for improperly paid royalties due to the deductions of Post-Production Expenses or use of flat rate royalties. Where there is no conflict between the proposed class representatives and the putative Settlement class members, courts primarily focus on the class counsel, not the class representatives, to determine if there will be vigorous prosecution. *See* 1 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3.24 (4th ed. 2002). Specifically, courts consider the competence and experience of class counsel which are typically presumed unless there is evidence to the contrary. *See id.*

Proposed Settlement Class Counsel in this Action have many years of experience in prosecuting complex cases, including class action litigation. See "Declaration of Lead Class Counsel," attached to the "Joint Motion" as Exhibit 2.  Settlement Class Counsel have already demonstrated their willingness to vigorously prosecute the claims in this Action by performing necessary discovery and engaging in complicated negotiations with the Equitable Defendants to

secure a favorable settlement for the Settlement Class. Therefore, no conflict exists to preclude certification of the Class, and Class Counsel are qualified to adequately represent the interests of the Settlement Class.  See Id.

**E.      Rule 23(b) Requirements**

In addition to satisfying the four requirements of Rule 23(a), the proposed class action must also satisfy the requirements of at least one of the subsections of Rule 23(b). This Action meets the requirements of Rule 23(b)(3). Class certification is appropriate under Rule 23(b)(3) where (1) there are questions of law or fact common to the class members that predominate over any questions affecting individual members and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Morris* v. *Wachovia Sec,* 223 F.R.D. 284, 299 (E.D. Va. 2004); *Black v. Rhone-Poulenc, Inc.,* 173 F.R.D. 156, 163 (S.D.W. Va. 1996). Rule 23(b)(3) sets forth the following considerations for satisfying the predominance and superiority requirements:

> (A)      the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

**1.      Predominance**

The Rule 23(b)(3) requirement is similar to the commonality requirement of Rule 23(a)(2). However, Rule 23(a)(2) only requires that common questions exist; Rule 23(b)(3) requires that the

common issues predominate. *See 2* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3.24 (4th ed. 2002). Predominance requires an analysis as to whether the class is cohesive enough to warrant adjudication by representation. *See Jeffreys v. Commc'n Workers of Am.,* 212 F.R.D. 320,323 (E.D. Va. 2003). "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class." *Morris* v. *Wachovia Sec, Inc.,* 223 F.R.D. 284,299 (E.D. Va. 2004) (citation omitted). The predominance test is easily met in this Action because all of the Settlement Class Members have a predominating issue - whether the Equitable Defendants improperly paid royalties by deducting Post-Production Expenses or using flat rate royalties. This question is common to all of the proposed Settlement Class Members and is subject to common types of proof as to whether such deductions were taken, flat rates paid, and for what time period.

The only issue that may have some variance among Settlement Class Members is the measure of damages. However, it is well-settled in the Fourth Circuit that differences in the amount of damages awarded to each class member do not preclude class certification. *See Gunnells* v. *Healthplan Servs., Inc.,* 348 F.3d 417 (4th Cir. 2003) (noting that "if 'common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied'"); *Morris* v. *Wachovia Sec,* 223 F.R.D. 284,299 (E.D. Va. 2004) (finding that "differences in damages among the potential class members do not generally defeat predominance if liability is common to the class"). Regardless, any variation in damages among Settlement Class Members is resolved by the sub-classification by lease types in this case, as damages are dependent upon whether Settlement Class Members had Flat Rate or One-Eighth Leases, and are then based upon a formula in the Agreement.

**2.      Superiority**

14

This Action also meets the superiority requirement because it is the best method to allow the Settlement Class Members to assert their claims while achieving judicial efficiency. In addressing the factors set forth in Rule 23(b)(3)(A)-(D), the predominant nature of the common legal issue relating to the propriety of the royalty payments is such that Settlement Class Members' interests are protected by the class litigation, and separate litigations are unnecessary. In fact, judicial efficiencies are best served by a single litigation, as opposed to thousands of individual claims. Further, this Court has held that "[c]lass litigation for settlement purposes promotes efficiency and uniformity of judgment because the many Settlement Class Members will not be forced to separately pursue claims or execute settlement in various courts ...." *In re Serzone Prods. Liab. Litig.,* No. MDL No. 1477, 2004 WL 2849197, at *2 (S.D.W. Va. Nov. 18, 2004).

Next, with regard to Rule 23(b)(3)(B), the parties are not aware of any other litigation involving potential Settlement Class Members relating to the issues present in this Action. As to the desirability of forum, this Court will apply the same substantive law to the claims of the Settlement Class Members as any court would apply, as West Virginia law is applicable to claims relating to the construction of these West Virginia leases. Finally, the parties are not aware of any issues affecting the management of a class action in this Action. The parties have already identified potential Settlement Class Members through preliminary database information maintained by the Equitable Defendants. Moreover, as recognized by this Court in the *Serzone Products Liability Litigation,* a proposed settlement as exists in this case moots any problems of manageability if it were to be litigated on a class action basis. *See Serzone* at * 1. Where, as here, "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter."

*Jeffreys v. Commc'n. Workers of Am.,* 212 F.R.D. 320, 323 (E.D. Va. 2003).

Because the standards for class certification set forth in Rule 23 have been met, conditional certification of the Class should be granted.

## VI.    PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE

Rule 23 requires that the Court evaluate whether the proposed settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). At this stage, however, the Court only has to make *preliminary* findings regarding the fairness of the settlement terms. The Court will later be able to make more extensive findings after notice is given to the Settlement Class, the Settlement Class Member are provided an opportunity to object and the Court holds a Formal Fairness Hearing. *See Henley* v. *FMC Corp.,* 207 F. Supp. 2d 489, 493 (S.D.W. Va. 2002). In determining whether to grant preliminary approval of the settlement, the Court should consider whether the settlement is fair and adequate. *See id.* at 492.

### A.    Fairness

In evaluating the fairness of the proposed settlement, courts consider whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [related] class action litigation." *Henley,* 207 F. Supp. 2d at 492. The Agreement in this Action meets the fairness test because it has been negotiated over a period of months at arm's length between counsel through the use of an experienced mediator. This Action has been pending for over two years. In that time, Plaintiff Class Representatives have actively pursued necessary discovery. In fact, the Equitable Defendants have produced thousands of pages of documents to the Plaintiff Class Representatives, in addition to numerous pages of database

information produced on CDs and a complete copy of the Equitable Defendants Royalty Payment database. Settlement Class Counsel have taken depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Class Representatives and the Equitable Defendants have retained expert witnesses in the field of gas royalty accounting. During the pendency of this Action, Settlement Class Counsel, with the aid of their experts, have been able to determine the nature and strength of the Class claims and to make reasonable damages calculations. See "Declaration of Lead Class Counsel."

**B.     Adequacy**

The settlement terms are also adequate based upon the nature of the claims in this Action. As noted in *Henley,* a court should consider the following factors in its assessment of whether the proposed settlement is adequate: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." 207 F. Supp. 2d at 492.

Although Plaintiff Class Representatives believe they have strong claims against the Equitable Defendants, there is obviously no certainty that they will prevail if the litigation does not settle. Moreover, the Equitable Defendants have denied liability and will continue to challenge Plaintiff Class Representatives' claims if the case should move forward. The issues in this Action involving gas lease language and the permissibility of deductions from royalties are complex and may be difficult for a jury to understand at trial.

Importantly, settlement allows the Class to reduce the great expense of continued litigation and to insure against the uncertainties of a jury trial. Complex litigation such as this would be very

costly to maintain, as the parties expect to take many additional lengthy depositions as well as continued production and review of documents. Further, maintenance of this Action would require extensive review by experts who will be costly to both sides.

There is no issue of the solvency of the Equitable Defendants, and the Agreement establishes a Settlement Fund to which the Equitable Defendants will contribute as outlined in the Agreement.

Finally, the parties are not aware of any opposition to the proposed settlement by putative Settlement Class Members. The Court, obviously, will be in a better position to evaluate objections after the appropriate notice has been served upon the Settlement Class Members.

For these reasons, the Court should grant preliminary approval of the proposed settlement.

## VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL PURSUANT TO RULE 23(g)

Plaintiffs' counsel in this action, Marvin W. Masters, The Masters Law Firm, LC, Charleston, West Virginia; Michael W. Carey, Carey, Scott & Douglas, PLLC, Charleston, West Virginia; Thomas W. Pettit, Thomas W. Pettit, L.C., Barboursville, West Virginia; Scott S. Segal, The Segal Law Firm, Charleston, West Virginia; and David J. Romano, Romano Law Office, Clarksburg, West Virginia, should be appointed as Settlement Class Counsel pursuant to the criteria set forth in Rule 23(g) of the Federal Rules of Civil Procedure.   In particular, that Rule requires that the Court consider the following when appointing class counsel:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;

> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii)   counsel's knowledge of the applicable law; and

> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsels' ability to fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B).

As outlined in the "Declaration of Lead Class Counsel," Plaintiffs' counsel meet this criteria because they have extensive experience handling complex litigation, including class action litigation. See "Declaration of Lead Class Counsel," attached to the "Joint Motion" as Exhibit 2.  They have also demonstrated their commitment to representing the Settlement Class through diligent efforts to obtain discovery about class-wide claims and their negotiation of a favorable settlement for all Settlement Class Members. See <u>Id</u>.   Plaintiffs' counsel have and will continue to dedicate necessary resources to ensure that all Settlement Class Members are adequately and fairly represented in this matter. See <u>Id</u>.

Accordingly, Marvin W. Masters, Michael W. Carey, Thomas W. Pettit, Scott S. Segal, and David J. Romano should be appointed as Settlement Class Counsel pursuant to Rule 23(g).

## VIII.   <u>APPROVAL OF CLASS COUNSEL FEES</u>

The parties further request that the Court preliminarily approve the proposed Fee Award to Settlement Class Counsel. Class Counsel plans to file an application for a Fee Award in an amount not to exceed 25% of the Gross Owners' Totals for Participating One-Eighth Subclass Members and Participating Flat Rate Subclass Members, plus Costs of Litigation. *See* Agreement, attached as Exhibit 1 to "Joint Motion for Conditional Certification of Temporary Settlement Class and Preliminary Approval of Class Action Settlement." Those fees and costs will be paid by the Claims Administrator from the Settlement Fund when approved by the Court. *See id.* This fee request is reasonable in light of the time and resources invested by Settlement Class Counsel, and this fee is consistent with fee awards in other class action litigation.

IX.     **ESTABLISHMENT OF CERTAIN DEADLINES.**

The parties also request the Court to establish deadlines relating to the filing of exclusion requests, the exercise of the Equitable Defendants' option not to proceed with the Class Settlement, if applicable, objections and claims. Specifically, the parties request that any class member wishing to exclude himself or herself from the class must sign a written request to be excluded containing the information required by the class notice and this exclusion request must be filed on or before 45 days from the date of mailing of the Notice, and served by mail to the post office box to be designated in Charleston, West Virginia, as established by Settlement Class Counsel in the name of the Clerk of Court for the United States District Court for the Southern District of West Virginia.

In the event that the minimum required approval percentage as defined in the Settlement Agreement is not met, the parties request that the Equitable Defendants' deadline to file a notice with the Court exercising its option not to proceed with the settlement for either Subclass be set for 30 days after the last day for all opts to file their forms.

The parties also request that the Court order that any class member or other interested party wishing to submit comments to support or oppose any aspect of the Settlement Agreement may do so in writing, without the necessity of retaining counsel or making any formal appearance. The parties also seek an order directing that all written comments in support of or opposition to any aspect of the Settlement Agreement must be filed no later than 21 days prior to the Formal Fairness Hearing Date, and served by mail to the three addresses set forth in the class notice, and that any class member or other interested party wishing to appear at the formal fairness hearing in person or through his or her attorney must submit a written request, filed no later than 14 days prior to the Formal Fairness Hearing, and served by mail to the addresses set forth in the class notice.

This requirement ensures that the parties will have adequate notice of the issues and arguments to be addressed at the final hearing.

Further, the parties request that responses to any objections must be filed on or before 7 days prior to the Formal Fairness Hearing.

Settlement Class Members who do not request to be excluded from the class will receive notice and a claim form in the mail which will tell them how much they are eligible to receive from the settlement. Settlement checks will be mailed within a reasonable time period after there is final approval of the settlement.

## X.     NOTICE OF THE PROPOSED SETTLEMENT TO THE CLASS.

Rule 23(c)(2)(B) provides that the "best notice that is practicable under the circumstances" must be given to class members, and individual notice must be provided to all class members who can be reasonably identified. The notice must contain the following information:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The parties propose to provide notice pursuant to Rule 23 of the Federal Rules of Civil Procedure. The parties will submit a notice plan to the Court.

The proposed notice contains a comprehensive explanation of the legal action and each Settlement Class Member's rights to be included in the action or to opt-out. It provides a step-by-step explanation of the process, including (1) what the lawsuit is about; (2) who is part of the proposed settlement; (3) the settlement benefits with an explanation of the payment formulas and sample calculations; (4) the claims process with an explanation of what Settlement Class Members are giving up if they accept the settlement; (5) how to be excluded from the settlement; (6) the names and contact information of the Settlement Class Counsel, as well as an explanation of the proposed Fee Award; (7) how to object to the settlement; (8) information relating to the Court's fairness hearing; (9) what happens if a Settlement Class Member takes no action; and (10) how to get more information about the settlement.

The Parties are in the process of finalizing the notice forms and will file a separate motion seeking Court approval for the proposed notices and notice plan.

## XI.   SCHEDULING OF FORMAL FAIRNESS HEARING

The parties respectfully request that the Court establish certain deadlines and schedule a Formal Fairness Hearing to consider whether the settlement should be finally approved in accordance with Rule 23(e). During the Formal Fairness Hearing, the parties will present the terms of the settlement and Settlement Class Members will be given an opportunity to object to and/or challenge the class certification and/or the terms of the settlement.

## XII.   CONCLUSION

For all of the foregoing reasons, the parties jointly request that the Court (1) conditionally certify a temporary class action for settlement purposes, including the One-Eighth Subclass "A", the One-Eighth Subclass "B" and the Flat Rate Subclass, in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure; (2) preliminarily approve the proposed Settlement Agreement;

(3) appoint Plaintiffs' counsel as Settlement Class Counsel; (4) preliminarily approve the Fee

Award proposed by Settlement Class Counsel; (5) establish certain deadlines; and (6) schedule a

Formal Fairness Hearing.

**Respectfully Submitted,**

**Counsel for Plaintiffs:**

/s/Marvin W. Masters
West Virginia State Bar #2359
THE MASTERS LAW FIRM
181 Summers Street
Charleston, West Virginia 25301
(304) 342-3106 - phone
(304) 342-3189 - fax
mwm@mastersfirm.com

Michael W. Carey (West Virginia Bar #635)
CAREY, SCOTT & DOUGLAS PLLC
707 Virginia Street East, Suite 901
Charleston, West Virginia 25301
(304) 345-1234 – phone
(304) 342-1105 – fax
mwcarey@csdlawfirm.com

Thomas W. Pettit (West Virginia Bar #2886)
THOMAS W. PETTIT, L.C.
Post Office Box 189
Barboursville, West Virginia 25504
(304) 736-8700 – phone
(304) 736-8845 – fax
twpettit@comcast.net

Scott S. Segal (West Virginia Bar #4717)
THE SEGAL LAW FIRM
810 Kanawha Boulevard, East
Charleston, West Virginia 25301
(304) 344-9100 – phone
(304) 344-9105 – fax
scott.segal@segal-law.com

David J. Romano (West Virginia Bar #3166)
Romano Law Offices
128 S Second Street

**Counsel for Equitable Production Company
and Equitable Resources, Inc.:**

/s/Richard L. Gottlieb
West Virginia State Bar #1447
/s/ Joseph A Tarantelli
West Virginia State Bar #10115
LEWIS, GLASSER, CASEY & ROLLINS
Post Office Box 1746
Charleston, West Virginia 25326-1746
(304) 345-2000 - phone
(304) 343-7999 - fax
rgottlieb@lgcr.com
jtarantelli@lgcr.com

/s/W. Thomas McGough, Jr.
*Admitted Pro Hac Vice*
REED SMITH
435 6th Avenue
Pittsburgh, Pennsylvania 15219
(412) 288-3131 – phone
(412) 288-3063 – fax
TMcGough@reedsmith.com

Clarksburg, West Virginia 26301
(304) 624-5600 – phone
(304) 624-5627 – fax
Romanolaw@wvdsl.net

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of Luther
E. Kile, THE H. A. ROBINSON TRUST, by EDWIN N.
VINSON, Beneficiary & Trustee of the H. A. Robinson
Trust, DAVID H. DAUGHERTY, Trustee of the H. A.
Robinson Trust, and MARY BLAIR V. CHAPUISAT,
Beneficiary of the H. A. Robinson Trust, H. DOTSON
CATHER, Trustee of Diana Goff Cather Trusts, CLYDE
EMERSON MCCLUNG, Individually, and JAMES E.
HAMRIC, III, Individually,

Plaintiffs

v.                                              Civil Action No. 2:06-0612
                                                Honorable Joseph R. Goodwin

EQUITABLE PRODUCTION COMPANY, a qualified
Pennsylvania corporation; and EQUITABLE
RESOURCES, INC., a Pennsylvania corporation,

Defendants

EQUITABLE RESOURCES, INC., a Pennsylvania
corporation, and EQUITABLE PRODUCTION
COMPANY, a qualified Pennsylvania corporation,

Third-Party Plaintiffs,

v.

STATOIL NORTH AMERICA, INC., a Delaware
corporation; STATOIL ENERGY, INC., a Virginia
corporation; and STATOIL ENERGY HOLDINGS,
INC., a Delaware corporation.

Third-Party Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of December, 2008, I electronically filed the

foregoing "MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CONDITIONAL

CERTIFICATION OF TEMPORARY SETTLEMENT CLASS AND PRELIMINARY

APPROVAL OF CLASS ACTION SETTLEMENT" with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

Marvin W. Masters, Esq.
The Masters Law Firm, LC
181 Summers Street
Charleston, WV 25301;

Thomas W. Pettit, LC
Thomas W. Pettit, L.C.
P.O. Box 189
Barboursville, WV 25504;

Michael W. Carey, Esq.
Robert E. Douglas, Esq.
Carey, Scott & Douglas, PLLC
707 Virginia Street, East
Suite 901
Charleston, WV 25301;

Scott S. Segal, Esq.
Mark R. Staun, Esq.
THE SEGAL LAW FIRM
810 Kanawha Boulevard, East
Charleston, West Virginia 25301; and

David J. Romano, Esq.
363 Washington Ave.
Clarksburg, WV 26301
    *Counsel for Plaintiffs.*

David B. Hanna, Esq.
James A. Walls, Esq.
William M. Herlihy, Esq.
SPILMAN THOMAS & BATTLE, PLLC
 P.O. Box 273
Charleston, West Virginia 25321-0273

Matthew O. Gatewood, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, D.C. 20004-2415
    *Counsel for Statoil North America, Inc, Statoil Energy, Inc. and Statoil Energy
    Holdings, Inc.*

I hereby certify that I also caused the foregoing **"MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CONDITIONAL CERTIFICATION OF TEMPORARY SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT"** to be mailed via the United States Postal Service to the following non-CM/ECF participants.

George M. Scott, Esq.
P.O. Box 230
Spencer, WV 25276
     *Counsel for Plaintiffs.*

David P. Langlois, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenueofthe Americas
New York,NY 10036

Carter L. Williams, Esq.
Matthew O. Gatewood, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, D.C. 20004-2415

James A. Orr, Esq.
SUTHERLAND ASBILL & BRENNAN
999 Peachtree Street, NE
Atlanta, GA 30309-3996
     *Counsel for Statoil North America, Inc, Statoil Energy, Inc. and Statoil Energy*
     *Holdings, Inc.*

                 /s/ Joseph A. Tarantelli
                 Joseph A. Tarantelli (W. Va. Bar No. 10115)
                 jtarantelli@lgcr.com