IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE KAY COMPANY, LLC, DIANA KILE GREEN,
Individually and Attorney-In-Fact for the Heirs of Luther
E. Kile, THE H. A. ROBSON TRUST, by EDWIN N.
VINSON, Beneficiary & Trustee of the H. A. Robson
Trust, DAVID H. DAUGHERTY, Trustee of the H. A.
Robson Trust, and MARY BLAIR V. CHAPUISAT,
Beneficiary of the H. A. Robson Trust, H. DOTSON
CATHER, Trustee of Diana Goff Cather Trusts, CLYDE
EMERSON MCCLUNG, Individually, and JAMES E.
HAMRIC, III, Individually,

              Plaintiffs

                                                    Civil Action No. 2:06-0612
        v.                                          Honorable Joseph R. Goodwin

EQUITABLE PRODUCTION COMPANY, a qualified
Pennsylvania corporation; and EQUITABLE
RESOURCES, INC., a Pennsylvania corporation,

              Defendants

**SECOND AMENDED SETTLEMENT AGREEMENT**

KNOW ALL PERSONS BY THESE PRESENTS:

        This Amended Settlement Agreement is made as of the  23rd day of January,

2009, by and between THE KAY COMPANY, LLC, DIANA KILE GREEN, Individually and

Attorney-In-Fact for the Heirs of Luther E. Kile, THE H. A. ROBSON TRUST, by EDWIN N.

VINSON, Beneficiary & Trustee of the H. A. Robson Trust, DAVID H. DAUGHERTY, Trustee

of the H. A. Robson Trust, and MARY BLAIR V. CHAPUISAT, Beneficiary of the H. A.

Robson Trust, H. DOTSON CATHER, Trustee of Diana Goff Cather Trusts, CLYDE EMERSON

MCCLUNG, Individually, and JAMES E. HAMRIC, III, Individually, (hereinafter "Plaintiff

Class Representatives"), individually and as representatives, of the Class (hereinafter the "Class"

or "Subclasses"), and defendants EQUITABLE PRODUCTION COMPANY, a qualified

Pennsylvania corporation (hereinafter "EPC"); and EQUITABLE RESOURCES, INC., a Pennsylvania corporation (hereinafter "EQT"), acting by and through their respective undersigned counsel.

## RECITALS

WHEREAS, on June 13, 2006, Plaintiff Class Representatives filed their Complaint in Civil Action No. 06-C-36E in the Circuit Court of Roane County, West Virginia, against EPC seeking, among other things, damages for improper deductions of post-production expenses from their royalty payments and damages for breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.), violation of the flat rate royalty statute (W. Va. Code § 22-6-8), and punitive damages, all related to the improper payment of royalties;

WHEREAS, EPC removed this matter to the United States District Court for the Southern District of West Virginia on August 7, 2006, as Civil Action No. 2:06-CV-0612, and filed its answer denying liability;

WHEREAS, Plaintiff Class Representatives filed their Amended Complaint on April 3, 2007, adding various defendants including EQT;

WHEREAS, Plaintiff Class Representatives filed a Notices of Dismissal for the various other defendants on June 8 and 29, 2007, leaving only EPC and EQT as Defendants;

WHEREAS, the Plaintiff Class Representatives seek to represent the Class, including One-Eighth Subclass "A", One-Eighth Subclass "B", and the Flat Rate Subclass as defined below;

WHEREAS, the Parties have engaged in much negotiation and numerous mediation sessions and have now agreed to a settlement of all their claims arising out of this action;

WHEREAS, after analyzing the facts and law applicable to the claims herein, and taking into account the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the claims of the Class under this Amended Settlement Agreement, the undersigned Class Counsel and Plaintiff Class Representatives have concluded that this Amended Settlement Agreement is fair, reasonable, adequate and in the best interests of the Class;

WHEREAS, Defendants have similarly concluded that this Amended Settlement Agreement is desirable in order to reduce the time, risk, and expense of litigation, and to resolve finally and completely the claims of the Class;

WHEREAS, the parties agree that, as with many types of litigation, there may be various methods to calculate and distribute settlement proceeds (some of which may result in different settlement amounts to each party), the methods agreed to herein are believed to be fair and reasonable; and

WHEREAS, the Parties agree that all Class Members shall have the right to exclude themselves ("Opt Out") from the class under Rule 23(d) and 23(c)(2)(B)(v) of the Federal Rules of Civil Procedure, as provided in this Amended Settlement Agreement

NOW, THEREFORE, the Parties have agreed to settle all claims in this matter on the following terms and conditions set forth below, subject to the Court's approval that this Amended Settlement Agreement is a fair, reasonable and adequate settlement under Federal Rule of Civil Procedure 23(e),

**I. Definitions**

"**Action**" means <u>The Kay Co. et al. v. Equitable Production Company, et al.</u>, Civil Action No. 2:06-0612, in the United States District Court for the Southern District of West Virginia which is pending before the Court.

"**Administration Expenses**" means administrative expenses including the costs of the Notice Expert, costs of the Claims Administrator, and costs of the Claims Resolution Process, as well as the fees for any Special Master.

"**Aggregate Monthly Difference**" means the total of the Monthly Differences during the Compensation Period for a specified One-Eighth Well or Flat Rate Well.

"**Agreement**" means this Amended Settlement Agreement.

"**Bar Date**" means the date to be set by the Court after which date any further claims for compensation by Class Members will be lost and terminated.

"**Base Settlement Option**" means the settlement option for One-Eighth Subclass "A" Members who either are not Current Lessors or are Current Lessors but do not elect Lease Modification.  The Base Settlement Option provides for a Settlement Percentage of 120%.

"**Benefit Notice**" means the document to be prepared and mailed by the Claims Administrator within sixty (60) days of the entry of the Final Order and Judgment to all Class Members.

"**CABOT**" means the price of gas sold into and on the Cabot Cranberry Pipeline System.  This price is equal to 72% of TCO from February 1, 2000 through December 31, 2003, 84% TCO from January 1, 2004 through March 31, 2006, and 85% DTI from April 1, 2006 to the Effective Date.

**"Claim Form"** means the form or forms to be provided to each Class Member to affirm or dispute the Claims Administrator's records on (a) the portion of the Compensation Period during which the Class Member owned a Covered Lease(s); (b) the leases and wells for which the Class Member is entitled to Settlement Payments; and (c) the amount of Settlement Payments to which the Class Member is entitled. The Claim Form will provide for One-Eighth Subclass "A" members who are current lessors to elect between the Enhanced Settlement Option and the Base Settlement Option. The Claim Form also will provide that the Class Member (a) will release EPC from any and all claims that were or could have been asserted in this or any other action for improper payment of royalty claims for the time periods covered by this Amended Settlement Agreement; (b) will warrant that the class member is the owner of record of the covered lease(s) for the portion of the Compensation Period listed; and (c) will agree to indemnify EPC against adverse lessors' claims and to return any settlement payment that is determined to have been improperly made. There will be a **Flat Rate Subclass Claim Form**, a **One-Eighth Subclass "A" Claim Form**, and a **One-Eighth Subclass "B" Claim Form**.

**"Claim Resolution Decision"** means the Claims Administrator's determination of any issues arising under Section VI.A.3.

**"Claims Administrator"** means the contractor proposed by the Parties and approved by the Court to perform certain functions including but not limited to, preparing and mailing Settlement Benefit Notices, receiving and processing Exclusion Requests and Claims Forms, determining the Minimum Required Approval Percentages, conducting the Claims Resolution Process, determining Settlement Payment amounts, and disbursing Settlement Funds.

**"Claims Deadline"** means a date, approximately forty-five (45) days from the date of the Benefit Notice, by which all Class Members must submit a Claim Form to the Claims Administrator; the Claims Deadline will be specified in the Benefit Notice.

**"Claims Resolution Process"** means the process set forth in Section VI.A.3.

**"Class"** means the combined Subclasses as defined herein to include the One-Eighth Subclass "A", the One-Eighth Subclass "B", and the Flat Rate Subclass.

**"Class Compensation Disbursement Trigger Date"** means the date on which all appeals of the Final Order and Judgment have been successfully resolved or the time for appealing the Final Order and Judgment has expired and no appeal has been taken.

**"Class Counsel"** means Marvin W. Masters. The Masters Law Firm, L.C., Charleston, West Virginia; Michael W. Carey, Carey, Scott & Douglas, PLLC, Charleston, West Virginia; Thomas W. Pettit, Thomas W. Pettit, L.C., Barboursville, West Virginia; Scott S. Segal, The Segal Law Firm, Charleston, West Virginia; and David J. Romano, Romano Law Office, Clarksburg, West Virginia.

**"Class Members"** means all Persons in the One-Eighth Subclass "A", the One-Eighth Subclass "B", and the Flat Rate Subclass.

**"Combined One-Eighth Subclass Members"** means all persons who have a One-Eighth Lease, regardless of whether they are members of One-Eighth Subclass "A" or One-Eighth Subclass "B".

**"Compensation Months"** means the number of months during the Compensation Period when the Lessor owned an interest in the Covered Lease and received a Royalty Payment.  Where only a portion of the month is involved, then the month will be

rounded up and counted as one month if greater than fifteen (15) days and rounded down and not counted if fifteen (15) or fewer days are involved.

**"Compensation Period"** means from February 1, 2000, to the Effective Date for all subclasses.  If EPC did not own a well on February 1, 2000, the start date for the Compensation Period is the date when EPC acquired the well. If EPC drilled or acquired a well after February 1, 2000, the start date for the Compensation Period is the date when royalties were first paid to Lessors by EPC.  If EPC did not own or operate a well on the Effective Date, the end date for the Compensation Period is the date on which EPC transferred or discontinued operation of the well.

**"Complaint"** means the Complaint and/or Amended Complaint in the Action.

**"Costs of Litigation"** means the costs of litigation incurred by Class Counsel, including any Administration Expenses in excess of $2.0 million.

**"Court"** means the United States District Court for the Southern District of West Virginia, Charleston Division, and specifically includes all judges and/or magistrate judges who are now assigned to the Action or who may be so assigned in the future according to the Court's usual practices and procedures.

**"Covered Lease"** means any lease included in the One-Eighth Subclass "A", the One-Eighth Subclass "B", and the Flat Rate Subclass.

**"Current Lessor"** means the owner of a Lease on the Effective Date except where they transfer the lease after the Effective Date.

**"Days"** shall mean time calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

**"Disputed Claims"** means conflicting claims by Lessors to Settlement Payments or Ownership Periods.

**"Division of Royalty Interest"** means the percentage of the Royalty Interest in the Covered Lease owned by the Class Member.

**"Dth"** means dekatherm.

**"DTI"** means the First of the Month Index Price for the Dominion Transmission, Inc.'s Appalachian Index, as published in Inside FERC's Gas Market Report.  The Southpoint price is DTI Index for months during where both the Southpoint and Northpoint index prices appear for the Dominion Transmission, Inc., Appalachian Index.

**"Effective Date"** means the date by which this Agreement has been signed by all Parties hereto.

**"Enhanced Settlement Option"** means the settlement option for One-Eighth Subclass "A" Members who are Current Lessors and who elect to enter into a Lease Modification.  The Enhanced Settlement Option provides for a Settlement Percentage of 155%.

**"EPC"** means, collectively, Equitable Production Company, Inc., Equitable Production-Eastern States, and Eastern States Oil & Gas, Inc., and their predecessors, successors, parents, subsidiaries, affiliates, and assigns.

**"Exclusion Request"** means the Court approved procedure by which Class Members can elect to exclude themselves and opt out of this settlement.

**"Fee Award"** means an order or orders awarding attorneys' fees and Costs of Litigation to Class Counsel.

**"Final Order and Judgment"** means the order to be entered by the Court, approving this Agreement as fair, reasonable, and adequate under Rule 23(e) of the Federal

Rules of Civil Procedure and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement.

**"Fixed Rate Well(s)"** means a well for which EPC pays a royalty based upon a fixed dollar amount per unit of natural gas produced. These wells are excluded from the Class.

**"Flat Rate Lease"** means an oil or gas lease where EPC pays a royalty based upon the existence of a producing well on the lease, and thus royalty is not inherently related to the volume of the natural gas produced and marketed from the well.

**"Flat Rate Subclass"** means all persons who have entered into Flat Rate Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.  The Flat Rate Subclass also includes all persons who have or had oil, gas or other hydrocarbon production from Flat Rate Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period.   The Flat Rate Subclass also includes all Lessors who have received royalty payments under Flat Rate Leases by virtue of pooling or unitization of their leased acreage.

The Flat Rate Subclass excludes lessors due royalties for Type "A" & Type "B" One-Eighth Wells (See ***One-Eighth Subclass "A" & One-Eighth Subclass "B"***), Fixed Rate Wells, and Non-Affiliate Farmout Wells, and persons who receive Overriding Royalty Interests. Where EPC and its subsidiaries, affiliates, and related corporations are lessors they are excluded from this Subclass. The Flat Rate Subclass does not include lessors due royalties for wells drilled or acquired by EPC after the Effective Date.

**"Flat Rate Subclass Member"** means any Person who is a member of the Flat Rate Subclass.

**"Flat Rate Well"** means a well on a Flat Rate Lease, except for those wells on a Flat Rate Lease where EPC pays or has in the past paid one-eighth royalty. Wells drilled or acquired by EPC after the Effective Date are excluded from this definition.

**"Formal Fairness Hearing"** means the hearing required by Rule 23(e)(2) of the Federal Rules of Civil Procedure to determine whether this Agreement should be approved as fair, reasonable, and adequate.

**"Gross Owner's Total"** means the Lessor's gross settlement total derived by multiplying, the Aggregate Monthly Difference, the Lessor's Settlement Percentage, the Monthly Percentage and the Division of Royalty Interest.

**"Gross Owner's Volume"** means the Lessor's gross total volume for the Compensation Period derived by multiplying the Total Well Volume by the Division of Royalty Interest.

**"Interest Months"** means the number of months the Lessor owned or acquired the right to receive royalty under the lease at any time during the period February 1, 2000 through the end of the Compensation Period. Where only a portion of the month is involved, then the month will be rounded up and counted as one month if greater than fifteen (15) days and rounded down and not counted if fifteen (15) or fewer days are involved.

**"Lease"** means the document whereby EPC or its predecessors acquired the right to produce natural gas and associated minerals in exchange for a royalty payment.

**"Lease Modification"** means the formal modification of existing leases, including unitization or pooling agreements, to add the royalty provision in paragraph VI.A.4, below.

**"Lessor"** means any Person leasing mineral rights to EPC under a Covered Lease.

**"Magistrate Judge"** means United States Magistrate Judge Mary E. Stanley, or her successor.

**"MID"** means the EPC meter identification number.

**"Minimum Required Approval Percentage"** means the 84% approval percentage required before EPC is obligated to proceed with the settlement for any Subclass. This percentage is determined based upon the Participating Class Members' Gross Owner's Volumes divided by the Class Members' Gross Owner's Volumes. A separate percentage will be calculated for each Subclass. The Gross Owner's Volume for any Lessor who reached a settlement with EPC outside of this class settlement prior to the Effective Date shall be excluded for purposes of determining the Minimum Required Approval Percentage. Ten days after the Effective Date, EPC will provide Class Counsel with an identification of Lessors, Gross Owners' Volumes, and Gross Owners' Totals for any Lessor with whom EPC has reached a separate settlement.

**"Modification Election"** means the Claims Forms to be prepared and mailed with the Benefit Notice for Lessors to make the election of either the Enhanced Settlement Option or the Base Settlement Option.

**"Monthly Difference"** means the following for One-Eighth Wells: One-eighth of the total derived by multiplying the Monthly Volume by the difference between the Monthly

Index Price and the Monthly Royalty Rate, plus 9% simple annual interest from the month due through the end of the Compensation Period.  For Flat Rate Wells, "Monthly Difference" means the total derived by subtracting the Monthly Flat Rate Royalty Paid from the Monthly Flat Rate Index Amount, plus 9% simple annual interest from the month due through the end of the Compensation Period.

"**Monthly Flat Rate Index Amount**" means one-eighth of the product derived by multiplying the Monthly Index Price by the Monthly Volume.

"**Monthly Flat Rate Royalty Paid**" means the dollar amount of the flat rate royalty paid by EPC for a Flat Rate Well on a monthly basis, or computed to a monthly basis where paid flat rate is paid quarterly or annually.

"**Monthly Index Price**" means the weighted average of the following, which represents the mix of natural gas deliveries from wells on Covered Leases during the Compensation Period, 45% TCO, 48.3% DTI, 6.7% CABOT.

"**Monthly Ownership Percentage**" means the percentage of months during the Compensation Period in which the Lessor owned a Royalty Interest in a Covered Lease and received a Royalty Payment.  Monthly Ownership Percentage is calculated by dividing the Compensation Months by the total number of months in the Compensation Period.

"**Monthly Royalty Rate**" means the monthly sales price on which EPC paid royalty during the Compensation Period.

"**Monthly Volume**" means the monthly natural gas volume of Lessor's natural gas sold by EPC during the Compensation Period.

"**Net Fund Account**" means the remainder of the Settlement Fund after payment of the Settlement Payments and the Fee Awards.

12

**"Net Owners Total"** means the Gross Owner's Total less the Fee Award.

**"Non-Affiliate Farmout Wells"** means wells on EPC leases where EPC does not operate the well and pay the royalty.  These wells are excluded from the settlement.

**"Notice Expert"** means the contractor jointly retained by the Parties to assist with preparing the Settlement Notice, Benefit Notice, Claim Forms and other related duties.

**"Objection Deadline"** means the deadline for a Class Member to make an objection to this Agreement under Rule 23(e)(5) of the Federal Rules of Civil Procedure.

**"One-Eighth Lease"** means a lease where the royalty is based upon a percentage of the revenue or value from sales of the production from a natural gas well, which is typically, but not exclusively, one-eighth, or 12.5%.  For purposes of this Settlement, One-Eighth Leases have been categorized as either **Type "A" One-Eighth Leases –** which do not expressly address the deduction of Post-Production Expenses – or **Type "B" One-Eighth Leases –** which contain language expressly permitting the deduction of Post-Production Expenses.

**"One-Eighth Subclass "A""** means all persons who have entered into Type "A" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.  One-Eighth Subclass "A" also includes all persons who have or had oil, gas or other hydrocarbon production from Type "A" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period.   One-Eighth Subclass "A" also includes all Lessors who have received royalty payments under Type "A" One-Eighth Leases by virtue of pooling or unitization of their leased acreage.

One-Eighth Subclass "A" excludes lessors due royalties for Type "B" One-Eighth Leases & Wells (See ***One-Eighth Subclass "B"***), Flat Rate Wells (See ***Flat Rate Subclass***), Fixed Rate Wells, Non-Affiliate Farmout Wells, and persons who receive Overriding Royalty Interests.  Where EPC and its subsidiaries, affiliates, and related corporations are lessors they are excluded from this Subclass. One-Eighth Subclass "A" does not include lessors due royalties for wells drilled or acquired by EPC after the Effective Date.

**"One-Eighth Subclass "A" Member"** means a Person who is a member of One-Eighth Subclass "A".

**"One-Eighth Subclass "B""** means all persons who have entered into Type "B" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period.   One-Eighth Subclass "B" also includes all persons who have or had oil, gas or other hydrocarbon production from Type "B" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period.   One-Eighth Subclass "B" also includes all Lessors who have received royalty payments under Type "B" One-Eighth Leases by virtue of pooling or unitization of their leased acreage.

One-Eighth Subclass "B" excludes lessors due royalties for Type "A" One-Eighth Leases & Wells (See ***One-Eighth Subclass "A"***), Flat Rate Wells (See ***Flat Rate Subclass***), Fixed Rate Wells, Non-Affiliate Farmout Wells, and persons who receive Overriding Royalty Interests.  Where EPC and its subsidiaries, affiliates, and related corporations are lessors they are excluded from this Subclass. One-Eighth Subclass "B" does not include lessors due royalties for wells drilled or acquired by EPC after the Effective Date.

**"One-Eighth Subclass "B" Member"** means a Person who is a member of One-Eighth Subclass "B".

**"One-Eighth Well(s)"** means a well on a One-Eighth Lease or a well on a Flat Rate Lease where EPC pays one-eighth royalty for the well.  Wells drilled or acquired by EPC after June 13, 2006, are excluded from this definition.  For purposes of this Settlement, One-Eighth Wells have been categorized as either **Type "A" One-Eighth Wells –** which do not expressly address the deduction of Post-Production Expenses – or **Type "B" One-Eighth Wells –** which contain language expressly permitting the deduction of Post-Production Expenses.

**"Opt Out"** means the right of Class Members to exclude themselves from the settlement by submitting an Exclusion Request.

**"Opt-Out Class Members"** means all Class Members who mail an Exclusion Request by the Opt-Out Deadline.

**"Opt-Out Deadline"** means the deadline approved by the Court for a Class Member to request exclusion from compensatory payments under this Agreement.

**"Overriding Royalty Interests"** means the royalty interest carved out of a working interest and created by an oil and gas lessee or operator.  Overriding Royalty Interests ("ORRI") are excluded from this settlement.

**"Participating Class Members"** means the Class Members who do not opt out of the settlement.

**"Participating Combined One-Eighth Subclass Members"** means those Combined One-Eighth Subclass Members who do not opt out of the settlement.

**"Participating Flat Rate Subclass Members"** means those Flat Rate Subclass Members who do not opt out of the settlement.

15

**"Participating One-Eighth Subclass "A" Members"** means those One-Eighth Subclass "A" Members who do not opt out of the settlement.

**"Participating One-Eighth Subclass "B" Members"** means those One-Eighth Subclass "B" Members who do not opt out of the settlement.

**"Participating Subclass Members"** means the total combination of Participating Flat Rate Subclass Members, Participating One-Eighth Subclass "A" Members and Participating One-Eighth Subclass "B" Members.

**"Parties"** means collectively, the Plaintiff Class Representatives, EPC & EQT.

**"Persons"** means natural or legal persons, entities, governmental units and organizations of any kind.

**"Plaintiff Class Representatives"** means THE KAY COMPANY, LLC, DIANA KILE GREEN, Individually and Attorney-In-Fact for the Heirs of Luther E. Kile, THE H. A. ROBSON TRUST, by EDWIN N. VINSON, Beneficiary & Trustee of the H. A. Robson Trust, DAVID H. DAUGHERTY, Trustee of the H. A. Robson Trust, and MARY BLAIR V. CHAPUISAT, Beneficiary of the H. A. Robson Trust, H. DOTSON CATHER, Trustee of Diana Goff Cather Trusts, CLYDE EMERSON MCCLUNG, Individually, and JAMES E. HAMRIC, III, Individually.

**"Post-Production Expenses"** means costs, charges, or gas retainages for transportation, gathering, dehydration, compression, extraction, processing, fuel, shrink, line-loss, free gas or other related expenses. The use of the term "Post-Production Expenses" herein does not intend to define or change the definition of that term as it may be applied in the industry or any other circumstance except for this Agreement.

**"Preliminary Approval"** means the Court's preliminary approval of this Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure and entry of orders providing for Settlement Notice to Class Members.

**"Recorder's Office"** means the County Commission Clerk's Office in which deeds, leases, mortgages, liens, and other instruments regarding interests in land are recorded.

**"Release"** means the release agreement to be incorporated into the Claim Form provided to Class Members.

**"Released Parties"** means EPC, EQT, and their predecessors, successors, and past and present parents, subsidiaries, assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees, limited to the time period and claims for which these parties have paid consideration under this Amended Settlement Agreement for claims related to improper royalty payments.

**"Royalty Claims"** means those claims asserted by the Plaintiff Class Representatives in this Action, individually and as representatives of the Class, including claims for improper royalty payments, improper deductions, improper measurement, improper accounting for natural gas liquids, improper sales prices, breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.), violation of the flat rate royalty statute (W. Va. Code § 22-6-8) and punitive damages, all based upon the failure to pay proper royalty.

**"Royalty Interest"** means the royalty due under a Covered Lease.

**"Royalty Payments"** means those payments made to Class Members under Covered Leases as royalties.

**"Royalty Percentage"** is the fraction of proceeds, sales or value of the gas stated in the lease to be the consideration the Lessor is to receive for the gas produced from wells on the lease.  This is normally 1/8 but may be different in some leases.

**"Settlement Fund"** means the fund established by EPC to pay the Settlement Payments to Class Members and to pay Fee Awards.

**"Settlement Notice"** means the Settlement Notice required by Rule 23(e) of the Federal Rules of Civil Procedure informing Class Members of this Agreement and their rights to object to this Agreement or exclude themselves.

**"Settlement Payments"** mean those payments made to Class Members from the Settlement Fund.

**"Settlement Percentage"** means 155% for Participating One-Eighth Subclass "A" Members who elect the Enhanced Settlement Option, 120% for Participating One-Eighth Subclass "A" Members who elect the Base Settlement Option, 50% for Participating One-Eighth Subclass "B" Members who are Current Lessors, 25% for Participating One-Eighth Subclass "B" Members who are not Current Lessors, and 50% for Participating Flat Rate Subclass Members.

**"Subclasses"** means the total combination of Flat Rate Subclass, One-Eighth Subclass "A" and One-Eighth Subclass "B".

**"Subclass Members"** means members of the Flat Rate Subclass, One-Eighth Subclass "A" and One-Eighth Subclass "B".

**"TCO"** means the First of the Month Index Price for the Columbia Gas Transmission Corporation's Appalachian Index, as published in Inside FERC's Gas Market Report.

**"Wells"** means the natural gas wells on the Covered Leases.

**"Wells Subject to More Than One Classification"** means that in the event a well is subject to more than one classification during Compensation Period, the well shall be included as the corresponding type of well (Type "A" One-Eighth, Type "B" One-Eighth or Flat Rate) for the corresponding months of the Compensation Period during which it was so classified.

## II. Cooperation: Preliminary Approval

A.    The Parties will jointly support this Agreement in its entirety and as a unitary whole in the Court and in any appellate court.

B.    Promptly after the Effective Date, the Parties shall submit this Agreement to the Court for its Preliminary Approval and shall move the Court for one or more orders that by their terms shall:

      1.    Conditionally certify a temporary settlement Class, including both the One-Eighth Subclass "A" and the Flat Rate Subclass, pursuant to Federal Rule of Civil 23(b)(3);

      2.    Preliminarily approve this Agreement;

      3.    Appoint Plaintiff Class Representatives' counsel as Class Counsel;

      4.    Preliminarily approve the Fee Award proposed by Class Counsel;

      5.    Approve the forms of notice and direct that notice be disseminated to potential Class Members in accordance with the methods for dissemination recommended by the Notice Expert;

      6.    Establish the Opt-Out Deadline and Objection Deadline; and

      7.    Schedule a Formal Fairness Hearing.

C.    The Parties shall cooperate, assist, and undertake all reasonable actions to accomplish the above submission at a time to be set by the Court.

### III. Settlement Notice; Opt-Out and Approval of Settlement by Subclasses

      A.      <u>Settlement Notice</u>

      The Claims Administrator will mail the Settlement Notices to persons who were Lessors during the Compensation Period. EPC will provide the Claims Administrator with a database of addresses for Lessors through December 2008 of the Compensation Period.

      On a monthly basis thereafter, EPC will provide the Claims Administrator with an updated database reflecting changes to ownership and new addresses through the end of the Compensation Period; as such information on ownership changes is provided to EPC. The Claims Administrator shall mail Settlement Notices to Lessors identified by EPC.

      B.      <u>Opt-Out Rights</u>

      In accordance with Federal Rule of Civil Procedure 23(c)(2)(B)(v) and 23(e), Class Members shall be notified of their right to exclusion. Each Class Member has the right to elect to opt out of the class by mailing an Exclusion Request by the Opt-Out Deadline.

      C.      <u>Minimum Required Approval Percentage</u>

      EPC shall have the option not to proceed with any Subclass settlement if the Subclass settlement is not approved by the Minimum Required Approval Percentage.

### IV. Calculation of Settlement Payments

      A.      <u>Method for Calculation and Distribution of Settlement Fund</u>.

      The Amended Complaint asserts various claims and seeks damages for the alleged unlawful deduction of Post-Production Expenses as well as damages for other allegations involving alleged wrongful conduct of the Defendants relating to the improper payment of royalties. The Parties have agreed that due to the uncertainties of litigation and the substantial costs associated with such litigation, and the benefits and finality achieved by a resolution, it is

appropriate to settle this litigation by, first, calculating an amount for each well, and then making Settlement Payments to the Class based upon each Class Member's length of ownership of a mineral interest.

The Parties have agreed that a fair and equitable method for distribution of the Settlement Fund to One-Eighth Subclass "A" Members, One-Eighth Subclass "B" Members, and Flat Rate Subclass Members is to allocate such funds on a well by well basis based upon the total months a lessor owned such mineral interests in proportion to the total months from February 1, 2000, until the Effective Date. In reaching this Agreement, the Parties recognize that some individual Class Members may receive a Settlement Payment that may be different than a distribution that is determined by some other method such as computing and paying the deductions of Post-Production Expenses for each month of ownership. It is the belief of the Parties that this agreed upon methodology for distribution of the Settlement Fund fairly compensates each Class Member for their claims asserted in this action as is reasonably practicable considering the uncertainties and complexities associated with class litigation.

B.    Flat Rate Subclass

Flat Rate Subclass Members are eligible to receive a Settlement Payment based upon their share of an amount equal to 50% of the difference between a royalty based upon one-eighth of the Monthly Index Price for monthly volumes and the actual monthly royalty payment during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. The Settlement Payment due each Flat Rate Subclass Member is calculated first by determining the Aggregate Monthly Difference for each Flat Rate Well on their lease and then determining the Net Owner's Total, as outlined below:

Step 1:  Calculate Aggregate Monthly Difference for Flat Rate Well.

First, calculate the Monthly Difference for the Flat Rate Well for each month of the Compensation Period:

        i.       1/8 x (Monthly Index Price x Monthly Volume)

        ii.      Subtotal from i - Monthly Flat Rate Royalty Paid

        iii.     Subtotal from ii x 0.0075 x Interest Months

        iv.     Subtotal from ii+ Subtotal from iii

Second, calculate the Aggregate Monthly Difference for the Flat Rate Well by summing all of the individual Monthly Differences for the Flat Rate Well from the first month of the Compensation Period through the final month of Compensation Period.

<u>Step 2</u>: <u>Calculate Settlement Payment (Net Owner's Total) for Flat Rate Well</u>.

First, calculate the Gross Owner's Total for the Flat Rate Well by multiplying the Aggregate Monthly Difference for Well by the Settlement Percentage by the Monthly Ownership Percentage by the Division of Royalty Interest.

Second, calculate the Settlement Payment (Net Owner's Total) for the Flat Rate Well by subtracting the well's proportionate share of the Fee Award from the Gross Owner's Total.

      C.    <u>One-Eighth Subclass "A"</u>

One-Eighth Subclass "A" Members who currently own a Type "A" One-Eighth Lease and who agree to a Lease Modification, are eligible to receive a Settlement Payment based upon their share of an amount equal to 155% of the difference between a royalty based upon Royalty Percentage of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. One-Eighth Subclass "A" Members who no longer own an interest

in a Type "A" One-Eighth Lease and those who currently own a Type "A" One-Eighth Lease but who do not elect the Lease Modification are eligible to receive a Settlement Payment based upon their share of an amount equal to 120% of the difference between a royalty based upon Royalty Percentage of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. The Settlement Payment due One-Eighth Subclass "A" Members is calculated first by determining the Aggregate Monthly Difference for a well and then determining the Net Owner's Total, as outlined below:

Step 1:  Calculate Aggregate Monthly Difference for Type "A" One-Eighth Well.

First, calculate the Monthly Difference for the Type "A" One-Eighth Well for each month of the Compensation Period:

> i.      Royalty percentage x [(Monthly Index Price - Monthly Royalty Rate) x Monthly Volume]
>
> ii.     Subtotal from i x 0.0075 x Interest Months
>
> iii.    Subtotal from i + Subtotal from ii

Second, calculate the Aggregate Monthly Difference for the Type "A" One-Eighth Well by summing all of the individual Monthly Differences for the Type "A" One-Eighth Well from the first month of the Compensation Period through the final month of Compensation Period.

Step 2:  Calculate Settlement Payment (Net Owner's Total) for Type "A" One-Eighth Well

First, calculate the Gross Owner's Total for the Type "A" One-Eighth Well by multiplying the Aggregate Monthly Difference for Well by the Settlement Percentage by the Monthly Ownership Percentage by the Division of Royalty Interest

Second, calculate the Settlement Payment (Net Owner's Total) for the Type "A" One-Eighth Well by subtracting the well's proportionate share of the Fee Award from the Gross Owner's Total.

D.   One-Eighth Subclass "B"

One-Eighth Subclass "B" Members who currently own a Type "B" One-Eighth Lease and who agree to a Lease Modification, are eligible to receive a Settlement Payment based upon their share of an amount equal to 50% of the difference between a royalty based upon Royalty Percentage of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less Court-approved Fee Awards. Only One-Eighth Subclass "B" Members who no longer own an interest in a Type "B" One-Eighth Lease are eligible to receive a Settlement Payment based upon their share of an amount equal to 25% of the difference between a royalty based upon Royalty Percentage of the Monthly Index Price and the rate on which royalties were paid for monthly volumes during the Compensation Period, plus 9% simple annual interest, and less that well's proportionate share of the Fee Award  The Settlement Payment due One-Eighth Subclass "B" Members is calculated first by determining the Aggregate Monthly Difference for a well and then determining the Net Owner's Total, as outlined below:

Step 1:  Calculate Aggregate Monthly Difference for Type "B" One-Eighth Well.

First, calculate the Monthly Difference for the Type "B" One-Eighth Well for each month of the Compensation Period:

   i.    Royalty Percentage x [(Monthly Index Price - Monthly Royalty Rate) x Monthly Volume]

   ii.   Subtotal from i x 0.0075 x Interest Months

   iii.  Subtotal from i + Subtotal from ii

Second, calculate the Aggregate Monthly Difference for the Type "B" One-Eighth Well by summing all of the individual Monthly Differences for the Type "B" One-Eighth Well from the first month of the Compensation Period through the final month of Compensation Period.

Step 2:   Calculate Settlement Payment (Net Owner's Total) for Type "B" One-Eighth Well

First, calculate the Gross Owner's Total for the Type "B" One-Eighth Well by multiplying the Aggregate Monthly Difference for Well by the Settlement Percentage by the Monthly Percentage by the Division of Royalty Interest

Second, calculate the Settlement Payment (Net Owner's Total) for the Type "B" One-Eighth Well by subtracting the well's proportionate share of the Fee Award from the Gross Owner's Total.

## V.  Monetary Terms

A.   Settlement Fund

The Claims Administrator will establish a bank account for the Settlement Fund at a federally-chartered financial institution reasonably acceptable to EPC, Class Counsel, and the Court. The Settlement Fund will be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder. The principal in the Settlement Fund account will be used to make Settlement Payments to Participating Subclass Members and to pay Fee Awards. All interest accruing in the Settlement Fund account will be paid to EPC with the Net Fund Account unless necessary for payment of Settlement Payments. The Net Fund Account will be paid to EPC after all Settlement Payments and Fee Awards have been made and the Claims Administrator has made a final report to the Parties and the Court and when approved by the Court

B.      Contributions to Settlement Fund

       1.      Contributions for One-Eighth Subclass "A" and One-Eighth Subclass "B"

EPC will contribute to the Settlement Fund a sum equal to the Gross Owner's Totals for all Participating Combined One-Eighth Subclass Members.

The Parties acknowledge that there may be leases in One-Eighth Subclass "A" and One-Eighth Subclass "B" where the royalty percentage may be greater or less than one-eighth (12.5%). For purposes of this settlement, the Monthly Difference calculations will use the actual royalty percentage set forth in the Leases of Participating Combined One-Eighth Subclass Members.

       2.      Contributions for Flat Rate Subclass

EPC will contribute to the Settlement Fund a sum equal to the Gross Owner's Totals for Participating Flat Rate Subclass Members.

       3.      Timing of Contributions to Settlement Fund

EPC shall make its initial contribution of $5 million to the Settlement Fund within thirty (30) days of the entry of the Preliminary Approval Order, or following Court approval of the Claims Administrator and establishment of the Qualified Settlement Fund, whichever date is later, and the remaining balance within seven (7) days prior to the Claims Administrator's distribution of Settlement Payments.

       4.      No Obligation to Contribute to Settlement Fund for Opt-Out Class Members

EPC shall have no obligation to contribute to the Settlement Fund for Subclass Members who opt out and elect not to proceed with this Settlement.

C.      Notice and Administration Expenses.

In addition to the Settlement Fund, EPC will be responsible for payment of the first $2.0 million in Administration Expenses. If the Administration Expenses exceed $2.0 million, EPC shall be responsible for the recording costs incurred by the Claims Administrator to record the Lease Modifications to the extent such recording costs cause the total Administration Expenses to top the $2.0 million threshold. If the Administration Expenses other than recording costs exceed $2.0 million, then those excess Administration Expenses shall be assessed as Costs of Litigation. Class Members are responsible for any attorneys' fees and expenses incurred individually in connection with their claims submissions and resolution. Any Administration Expenses above $2.0 million must be approved by the Court prior to the expenses being incurred.

The Notice Expert and the Claims Administrator shall submit monthly bills to EPC for approval and payment up to the $2.0 million threshold. EPC shall submit copies of each bill to Class Counsel. All bills must be approved by the Court. If Class Counsel objects to a bill, Class Counsel will identify each objectionable item on the bill. EPC will pay the undisputed items and Class Counsel and counsel for EPC will attempt to resolve the disputed charges subject to review by the Magistrate Judge of disputed charges which counsel cannot resolve.

D.      Class Counsel Fees and Costs of Litigation.

Class Counsel will file an application for a Fee Award pursuant to Rule 23(h) in amount not to exceed 25% of the Gross Owner's Totals for Participating Subclass Members, plus Costs of Litigation. EPC will not object to Class Counsel's application for this Fee Award. The Fee Awards approved pursuant to this Section will be the only legal fees payable to Class Counsel in this Action.  Fee Awards approved pursuant to this paragraph will be paid by the Claims Administrator from

the Settlement Fund when approved by the Court. Counsel may apply for a phased payment of attorney's fees with an initial payment after the final fairness hearings.

       E.    <u>Class Member Compensation.</u>

       The Settlement Payments will be paid from the Settlement Fund to Participating Subclass Members who submit a completed Claim Form and, if applicable, Lease Modification and are determined by the Claims Administrator and the Claims Resolution Process to be entitled to payment, in accordance with the formulas set forth in paragraphs IV.B and IV.C, above. Settlement Payments shall be made after completion of the Claims Resolution Process for each Covered Lease or thirty days after the Class Compensation Disbursement Trigger Date, whichever is later.

## VI.    Distribution of Compensation

       A.    <u>Benefit Notice and Claim Form</u>

         1.    <u>Benefit Notice</u>

       A Benefit Notice will be sent to each Participating Subclass Member within sixty (60) days of the entry of the Final Order and Judgment.

       <u>Special Notice to One-Eighth Subclass "B" Members</u>  It is understood that lessors of Type "B" One-Eighth Leases will receive a Notice advising them that their lease provides for certain deductions and that is the reason for the way they are treated differently.  Further, the notice will provide that if they disagree with the settlement they have a right to opt out and proceed with litigation, and that the statute of limitations will have been tolled pending the Final Order in this case.

2.    Claim Forms

A Claim Form will be mailed to each Subclass Member at the same time as the Benefit Notice. The Claim Forms for Combined One-Eighth Subclass Members will detail the Claims Administrator's records concerning (i) the portion of the Compensation Period during which the Subclass Member was the owner of a Covered Lease and received Royalty Payments; (ii) the Covered Lease(s) and Well(s) for which the Subclass Member is entitled to Settlement Payments; or (iii) the amount of Settlement Payments to which the Subclass Member is entitled. Combined One-Eighth Subclass Members will be required to either sign and confirm the Claims Administrator's records or provide a signed, written statement disputing them. In addition, the Claim Forms for One-Eighth Subclass "A" Members will provide for One-Eighth Subclass "A" Members who are Current Lessors of Covered Leases to elect either the Enhanced Settlement Option or the Base Settlement Option.

The Flat Rate Claim Form will detail the Claims Administrator's records concerning (i) the portion of the Compensation Period during which the Subclass Member was the owner of a Covered Lease and received Royalty payments (ii) the Covered Lease(s) and wells for which the Subclass Member is entitled to Settlement Payments; or (iii) the amount of Settlement Payments to which the Subclass Member is entitled.  Flat Rate Subclass Members will be required to either sign and confirm the Claims Administrator's records or provide a signed written statement disputing them.

The Claim Forms will provide that the Subclass Member (i) releases the Released Parties from any and all Royalty Claims through the Effective Date; (ii) warrants the Subclass Member's Ownership Period in the Covered Lease during the Compensation Period; and (iii) indemnifies EPC in the event other claims are asserted by some other person or entity claiming all or any portion of

the Settlement Payments made to such Class Member. The Claim Form will include the following provision concerning the Release:

> The undersigned Class Member hereby RELEASES Equitable Production Company, Inc., and Equitable Resources, Inc., (hereinafter collectively referred to as "Equitable") and their predecessors, successors, and past and present subsidiaries, parents, assigns, affiliates, officers, directors, agents, attorneys, insurers and employees from any and all claims, causes of action, damages, or demands of whatsoever kind and character, whether known or unknown, for improper royalty payments, improper deductions, improper measurement, improper accounting for natural gas liquids, improper sales prices, breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-10T, et seq.), violation of the flat rate statute (W. Va. Code § 22-6-8), and punitive damages all related to the failure to pay proper royalty.  It is understood that the Release shall only be applicable to the claims and for the time period which the Released Parties have paid the full and just consideration provided for under this Agreement

> As consideration for this settlement, the undersigned Class Member REPRESENTS and WARRANTS that he or she is the owner of the interest in the lease reflected in this Claim Form and is entitled to the Settlement Payment set form herein. The undersigned Class Member further represents that he or she has full authority to execute this document, and that he or she has the right to the full amount of the Settlement Payment paid to him or her. Furthermore, the undersigned Class Member hereby grants Equitable a contractual right of indemnification, which it may invoke in the event that another Class Member claims a right to the Settlement Payment paid to the undersigned Class Member for any reason.  This contractual right of indemnification shall entitle Equitable to offset against future payments or to file a civil action against the undersigned Class Member for any amount of Settlement Payment determined to be owed to another Class Member.

> As consideration for the Flat Rate Lease settlement and if the undersigned is a member of the Flat Rate Subclass, the undersigned ACKNOWLEDGES Equitable's intention to continue to pay flat rate royalties after the Effective Date of this Class Settlement. The undersigned also ACKNOWLEDGES that this settlement does not convert any Flat Rate Lease to a One-Eighth Lease and that Flat Rate Subclass Members who join the Class Settlement cannot seek forfeiture of their Flat Rate Leases after entry of Final Order and Judgment in this civil action.  However, Flat Rate Subclass Members who join the Class Settlement retain their rights to bring an action for conversion of their lease in the future.

> In the event of new legislation or a final, non-appealable order from the West Virginia Supreme Court of Appeals or the United States Supreme Court requiring conversion of Flat Rate Leases to One-Eighth Leases or voiding

Flat Rate Leases, EPC AGREES to convert such Flat Rate Leases to One-Eighth Leases. However, the undersigned AGREES not to seek forfeiture of any Flat Rate Leases converted by EPC to One-Eighth Leases after the date of such final decision or legislation.

Class Members will have forty-five (45) days after the Claim Form is mailed to return a completed Claim Form to the Claims Administrator or to dispute the content of the Claim Form.

3.      Mechanism to Dispute the Claim Form; Claims Resolution Process

Final resolution of Disputed Claims regarding calculations of damages under the Amended Settlement Agreement shall rest with the Claims Administrator. Such Disputed Claims shall be determined by the Claims Administrator based upon a review of EPC's records and the Claim Form submitted by the Subclass Member. The Claims Administrator shall submit a Claim Resolution Decision to the Subclass Members involved in the Disputed Claims. Subclass Members shall have thirty (30) days from receipt of the Claim Resolution Decision to submit a completed Claim Form to the Claims Administrator.

An initial determination regarding entitlement to damages under this Amended Settlement Agreement shall be made by the Claims Administrator based on a review of EPC's records of royalty payments and lease ownership. If the Claims Administrator is notified of a Disputed Claim regarding who is entitled to receive payment under a certain lease,, the Claims Administrator shall leave the Settlement Payments at issue in the Qualified Settlement Fund pending the presentation to the Claims Administrator of a final judgment regarding the Disputed Claim by a court of competent jurisdiction. The burden and all expenses shall be on the Subclass Member(s) to initiate a civil proceeding and to obtain a final judgment for the presentment to the Claims Administrator.

In the event all parties to a Disputed Claim reach agreement prior to a final judgment, the Claims Administrator shall distribute the Settlement Payments upon receipt of a signed

agreement executed by all parties and upon receipt of fully-executed Claim Forms from each party.

   For purposes of determining the amount to deposit for Disputed Claims for One-Eighth Subclass "A" Members, EPC shall contribute an amount sufficient to fund qualifying claims under the Enhanced Settlement Option.

   4.   Lease Modification.

   Current Lessors of Covered Leases in One-Eighth Subclass "A" who elect Lease Modification and all Current Lessors of Covered Leases in One-Eighth Subclass "B" who do not opt-out of this settlement, will sign a Lease Modification to add the following royalty clause to their Covered Leases and pooling or unitization agreements:

   Lessee shall pay as royalty to Lessor an amount equal to one-eighth of 90% of the "Monthly Index Price" per dekatherm ("Dth") sold. The "Monthly Index Price" shall be set for the first year after this LEASE MODIFICATION at the following ratio 48.3% DTI, 45% TCO, 6.7% NYMEX, where DTI is the Dominion Transmission, Inc., First of the Month Index Price , TCO is the Columbia Gas Transmission Corporation First of the Month Index and NYMEX is the New York Mercantile Exchange First of the Month Index Price, all values as published in Inside FERC's Gas Market Report or, if Inside FERC's Gas Market Report becomes unavailable, a comparable successor publication most applicable to West Virginia natural gas production. Equitable shall have the right on each anniversary date of this Lease Modification to adjust the Monthly Index Price ratio to reflect the then current price distribution of its actual deliveries of natural gas.

   The natural gas sold from each well is measured in Dth at the "Primary Measurement Facility" which is the designated meter (known by the meter identification number or "MID") on an interstate or third-party pipeline. Where natural gas from more than one well is measured at the same Primary Measurement Facility, Lessee may determine the Dth sold through reasonable allocation methods. Where the royalty is calculated prior to the extraction of natural gas liquids or other byproducts from the gas stream, no additional royalty is due for the value, if any, of natural gas liquids or other byproducts contained in the gas stream.

   Current Lessors electing or subject to a Lease Modification shall be required to sign a Lease Modification in addition to the Claim Form prior to receipt of their Settlement

Payments from the Settlement Fund. If Current Lessors of Type "A" One-Eighth Leases do not sign the Lease Modification but return an executed Claim Form selecting the Enhanced Settlement Option, they shall nonetheless be treated as having elected to modify their Lease as described above.  The Claims Administrator shall make every effort to determine the intentions of Current Lessors who select the Enhanced Settlement Option on the Claim Form but fail to return the Lease Amendment.

      B.    <u>Bar Date</u>.

      The Court will be asked to set a Bar Date in the Final Order and Judgment. In the event a Class Member fails to return a complete Claim Form by the Bar Date, the Class Member shall be deemed to have elected and shall be paid based upon the Base Settlement Option.

      C.    <u>Claims Administrator</u>.

      1.    <u>Duties</u>.

      The Claims Administrator shall:

      a.    Maintain and update the list of Class Members.

      b.    Maintain an "800" number telephone line for Class Member questions that is staffed by trained operators during normal business hours.

      c.    Maintain a website for providing Class Members and the public with information about this Agreement.

      d.    With the assistance of counsel for the Parties, determine the period of time during the Compensation Period when each Subclass Member owned a Covered Lease.

e.      With the assistance of counsel for the Parties, calculate the amount of Settlement Payment to which each Subclass Member is entitled.

f.      Mail the Settlement Notice and publish a summary notice if specified in a notice plan approved by the Court.

g.      Verify addresses in the database against the National Change of Address database and, as noted, through a third-party look up service.

h.      Receive Exclusion Requests and prepare a list of Opt-Out Class Members, including a report on whether the Minimum Required Approval Percentage has been met.

i.      Receive objections to this Agreement from Subclass Members aid transmit copies to the Parties, the Magistrate Judge, and the Court.

j.      In consultation with the Parties and their separate Notice Expert, prepare the individual Benefit Notices and Claim Forms to be sent to the Class Members as required by this Agreement, Mail fee Benefit Notices and Claim Forms to Subclass Members after the Final Order and Judgment is entered. Prepare any additional Benefit Notices and Claim Forms that become necessary as a result of the Claims Resolution Process.

k.      In consultation with the Parties, review Claim Forms and Subclass Member submissions and determine Subclass Member qualification for Settlement Programs.

l.      Inform Subclass Members of the Claims Administrator's determination of Subclass Member status and entitlement to Settlement Payments.

m.      Inform Subclass Members of final Claim Resolution Decisions.

n.      Disburse Settlement Payments to Subclass Members and Fee Awards from the Settlement Fund. Establish a bank account at a federally-chartered financial institution reasonably acceptable to EPC Class Counsel and the Court for the Qualified Settlement Fund.

o.      At EPC's option and with the assistance of counsel for EPC, record the Lease Modifications in the Recorder's Offices where the Covered Leases are located.

p.      Maintain all appropriate records relating to Subclass Members, to Covered Leases and title thereto, and to the payment of Settlement Payments and Fee Awards. The Parties shall be entitled to inspect the Claims Administrator's records upon reasonable notice and to request copies of any records of the Claims Administrator.

q.      Issue weekly reports of Claims Forms received, the status of claims and the Settlement Payments made.

r.      Issue Form 1099s to Class Members and other necessary tax documents following payment of Settlement Payments.

s.      Provide Type II service auditor's report, including service auditor's opinion on the Claims Administrator's controls.

t.    At the close of the claim administration, provide EPC with the final list of Subclass Members, the original signed Claim Forms and Lease Modifications, and copies of all documents filed with any Recorder's Offices.

u.    Make every effort to determine inconsistencies in the responses of Combined One-Eighth Subclass Members to the Claims Forms, particularly in circumstances where a Current Lessor purports to elect the Enhanced Settlement Option but does not return an executed Lease Modification.

2.    <u>Selection of Contractors to Perform Claims Administrator Functions.</u>

One or more contractors will be jointly selected by the Parties and approved by the Court to perform the Claims Administrator functions. Contractors will be jointly selected and jointly supervised by Class Counsel and EPC's counsel subject to approval by the Court. Any disputes regarding the selection of contractors will be resolved by the Court.

**VII.  Court's Settlement Approval Order; Related Order**

A    <u>Approval Order</u>

This Agreement is subject to and conditional upon the issuance by the Court, following the Formal Fairness Hearing, of the Final Order and Judgment granting final approval of this Agreement in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, and providing the below-specified relief which relief shall be subject to the terms and conditions of this Agreement and the Parties' performance of their continuing rights and obligations hereunder. Such Final Order and Judgment shall:

       1.     Conditionally certify the Class and Subclasses as defined in this Agreement after purposes of this settlement only;

       2.     Declare that this Agreement is fair, reasonable, adequate, in the best interests of the Class, and non-collusive;

       3.     Dismiss the Action with prejudice and with costs to be awarded solely as provided in this Agreement, except that (a) the claims of the Opt-Out Class Member shall be dismissed without prejudice; and (b) the Court shall retain jurisdiction to the extent necessary to administer and enforce this Agreement;

       4.     Bar and enjoin all Subclass Members from asserting Royalty Claims against any Released Party, with the exception that Opt-Out Class Members' claims shall not be barred and enjoined;

       5.     Order that the Subclass Members' claims are released through the Effective Date, with the exception that Opt-Out Class Members' claims shall not be released;

       6.     Declare, adjudge, and decree that this Agreement provides the exclusive remedy for Subclass Members (and any successors-in-interest) with respect to any and all Royalty Claims against EPC that were or could have been brought in this Action;

       7.     Declare, adjudge, and decree that any Opt-Out Class Member may bring a separate suit;

       8.     Expressly determine under Fed. R. Civ. P. 54(b) that there is no just reason for delay and therefore expressly direct the entry of a final judgment as to the claims of Subclass Members, except with respect to the claims of Opt-Out Class members; and

9.      Reserve the Court's continuing and exclusive jurisdiction over the Parties and Class Members to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties and Subclass Members.

B.      <u>Related Orders.</u>

1.      The Parties further understand that Class Counsel may request that the Court, at the time of entry of the Final Order and Judgment, enter an Order approving the Fee Award in accordance with Paragraph V. D. above.

2.      The Parties agree that there will be no objection to incentive payments up to $25,000.00 per Plaintiff Class Representative subject to approval by the Court and to be taxed as Costs of Litigation.

**VIII.   Exclusive Remedy; Dismissal of Action; Jurisdiction of Court**

A.      <u>Exclusive Declaratory, Injunctive and Punitive Damages Remedy for All Parties</u>

This Agreement shall be the exclusive remedy for all Subclass Members for claims for declaratory and injunctive relief and for punitive damages arising out of the Royalty Claims.

B.      <u>Exclusive Compensatory Damages Relief for Class Members Who Are Not Opt-Out Class Members</u>

This Agreement shall be the exclusive remedy for any and all Royalty Claims of Subclass Members who are not Opt-Out Class Members against EPC and any and all other Released Parties. No Released Party shall be subject to liability or expense of any kind to any Subclass Member with respect to any claim that was or could have been brought in this Action, except as provided herein.  Upon entry of the Final Order and Judgment by the Court approving this Agreement, each and every Subclass Member who is not an Opt-Out Class Member shall be barred from initiating, asserting, or prosecuting any suit for liability for released Royalty Claims against any Released Party.

      C.     <u>Claims for Opt-Out Members</u>

Opt-Out Members may bring separate suits against the Released Parties.  It is agreed that all applicable statutes of limitations are tolled from the time this action was filed until 30 days after the entry of the Final Order.

      D.     <u>Continuing Jurisdiction of Court</u>

The Court shall retain exclusive and continuing jurisdiction over the Action and over this Agreement with respect to the performance of the terms and conditions of this Agreement, to assure that all disbursements are properly made, and to interpret and enforce this Agreement's terms, conditions, and obligations.  The Court shall have the power to approve the Parties' designation, appointment, and removal of contractors, and the execution of contracts as necessary and appropriate to assure the administration of this Agreement.

## IX.    Representations and Warranties

A.      Class Counsel represent and warrant that they have the authority to enter into this Agreement on behalf of the Plaintiff Class Representatives and the Class, subject to Court approval.

B.      EPC represents and warrants that it has all requisite corporate power and authority to execute, deliver, and perform this Agreement.  The execution, delivery and performance by EPC of this Agreement and the consummation of the actions contemplated herein have been duly authorized by all necessary corporate action.  This Agreement has been duly and validly executed and delivered by EPC, and constitutes its legal, valid, and binding obligations.

C.      The Plaintiff Class Representatives, individually and as representatives of the Flat Rate Subclass, acknowledge EPC's intention to continue to pay flat rate royalties prospectively

from the Effective Date.   The Plaintiff Class Representatives also acknowledge that this settlement does not convert any Flat Rate Lease to a One-Eighth Lease and that Flat Rate Subclass Members who join the Class Settlement cannot terminate their Flat Rate Leases after entry of Final Order and Judgment in this case.   In the event of new legislation or a final, non-appealable order of the West Virginia Supreme Court of Appeals or the United States Supreme Court requiring conversion of Flat Rate Leases to One-Eighth Leases or voiding Flat Rate Leases altogether, EPC AGREES to convert such Flat Rate Leases to One-Eighth Leases prospectively and the undersigned AGREES not to seek forfeiture of any Flat Rate Leases converted by EPC to One-Eighth Leases prospectively from the date of such final decision or the effective date of an act of the Legislature.   If EPC fails to convert any Flat Rate Subclass Members' lease to a One-Eighth Lease as described above, then those Flat Rate Subclass Members retain the right to file a separate action to seek conversion of their Flat Rate Lease to a One-Eighth Lease.

**X.     Miscellaneous Provisions;**

A.      Neither this Agreement, approved or not approved, nor any exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement is intended to be or shall be construed as or deemed to be evidence of an admission or concession by EPC of any liability or wrongdoing, or of the truth of any allegations in the Complaint, or of the appropriateness of class certification in this or any other action or context; and no such document, statement, determination, or other matter shall be admissible in evidence for any such purpose in this or any other proceeding.

B.      This Agreement constitutes the entire agreement by and among the Parties with regard to the subject of this Agreement and shall supersede any previous agreements and

understanding between the Parties with respect to the subject matter of this Agreement.  This

Agreement may not be modified or amended except in writing signed by all Parties hereto, and

approved by the Court.

       C.     This Agreement may be executed in one or more counterparts, each of which shall

be deemed an original but all of which together shall constitute one and the same document.

       D.     Any settlement notice, request, instruction, or other document to be given by any

party to this Agreement to any other party to this Agreement (other than Class notification) shall

be in writing and delivered personally, or sent by overnight delivery service, or by the United

States Postal Service Priority Mail, Signature Confirmation Requested, as follows:

For Plaintiff Class Representatives:

Marvin W. Masters, Esq.
The Masters Law Firm, LC
181 Summers Street
Charleston, WV  25301

For Equitable:

Richard L. Gottlieb, Esq.
Lewis, Glasser, Casey and Rollins, PLLC
300 Summers St., BB&T Square, Suite 700
Charleston, WV  25301

       E.     All applications for Court approval or Court orders required under this Agreement

shall be made on notice to all signatories hereto or their counsel of record.

       F.     This Agreement shall be construed in accordance with West Virginia law.

       G.     EPC agrees solely for the purposes of this settlement and its implementation that

Civil Action No. 2:06-0612 shall proceed as a class action under Federal Rule of Civil Procedure

23(b)(3), but if such settlement fails to be approved or otherwise, fails of consummation then

EPC retains all rights to object to the maintenance of the action as a class action.

**XI.  Termination of This Agreement**

This Agreement shall be automatically terminated, without notice, if the Court declines to enter its Final Order and Judgment or if the Class Compensation Disbursement Trigger Date does not occur.  Except as otherwise specifically provided in this Agreement, in the event of termination, all Parties shall be restored to their respective positions immediately prior to execution of this Agreement.

[Signature Pages to Follow]

THE KAY COMPANY, LLC

By: _____

Its: _____


_____

DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____

EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____

DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____

MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____

H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____

CLYDE EMERSON MCCLUNG


_____

JAMES E. HAMRIC, III

THE KAY COMPANY, LLC

By: _____

Its: _____


_DIANA KILE GREEN_ (signature)

DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____

EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____

DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____

MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____

H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____

CLYDE EMERSON MCCLUNG


_____

JAMES E. HAMRIC, III

THE KAY COMPANY, LLC

By: _____

Its: _____


_____
DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,

_____
EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____
DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____
MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____
H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____
CLYDE EMERSON MCCLUNG


_____
JAMES E. HAMRIC, III

THE KAY COMPANY, LLC

By: _____

Its: _____


_____
DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____
EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____
DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____
MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____
H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____
CLYDE EMERSON MCCLUNG


_____
JAMES E. HAMRIC, III

THE KAY COMPANY, LLC

By: _____

Its: _____


_____
DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____
EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____
DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


Mary Blair V. Chapuisat
_____
MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____
H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____
CLYDE EMERSON MCCLUNG


_____
JAMES E. HAMRIC, III

11/13/2003  13:40    3047368845                    THOMAS W PETTIT LC                     PAGE  02

THE KAY COMPANY, LLC

By: _____

Its: _____


_____
DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____
EDWIN N. VINSON, Beneficiary and Trustee
of THE H. A. ROBSON TRUST


_____
DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____
MARY BLAIR V. CHAPUISAT, Beneficiary
Of THE H. A. ROBSON TRUST


_____
H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____
CLYDE EMERSON MCCLUNG


_____
JAMES E. HAMRIC, III

THE KAY COMPANY, LLC

By: _____

Its: _____


_____
DIANA KILE GREEN, Individually and
Attorney-In-Fact for the Heirs of Luther E. Kile,


_____
EDWIN N. VINSON, Trustee of
THE H. A. ROBSON TRUST


_____
DAVID H. DAUGHERTY, Trustee of
THE H. A. ROBSON TRUST


_____
MARY BLAIR V. CHAPUISAT, beneficiary of
THE H. A. ROBSON TRUST


_____
H. DOTSON CATHER, Trustee of the
DIANA GOFF CATHER TRUSTS


_____
CLYDE EMERSON MCCLUNG

_____
JAMES E. HAMRIC, III

*Counsel for Plaintiffs' Class Representatives and*
*Proposed Settlement Class*:

Marvin W. Masters
THE MASTERS LAW FIRM

Thomas W. Pettit
THOMAS W. PETTIT L.C.

Michael W. Carey
CAREY, SCOTT & DOUGLAS PLLC

George M. Scott
CAREY, SCOTT & DOUGLAS PLLC

Robert E. Douglas
CAREY, SCOTT & DOUGLAS PLLC

David J. Romano
ROMANO LAW OFFICES

Scott S. Segal
THE SEGAL FIRM

Mark S. Staun
THE SEGAL FIRM

EQUITABLE PRODUCTION COMPANY

By: _Jhn N Jergory_

Its: _ASST TREASURER_

EQUITABLE RESOURCES, INC.

By: _Jhn N Jergory_

Its: _VP - FINANCE_

*Counsel for Defendants*:

Richard L. Gottlieb
LEWIS GLASSER CASEY & ROLLINS PLLC

W. Thomas McGough, Jr.
REED SMITH, LLP