IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

THE KAY COMPANY, et al.,

                Plaintiffs,

v.                                                       CIVIL ACTION NO. 2:06-CV-00612

EQUITABLE PRODUCTION CO.,

                Defendant.

**MEMORANDUM OPINION AND FINAL ORDER APPROVING SETTLEMENT AND CERTIFYING THE SETTLEMENT CLASS**

Pending before the court is the Joint Motion for Final Approval of Class Action Settlement [Docket 205]. This litigation arises from allegations that the defendants, Equitable Production Company and Equitable Resources, Inc. (collectively, "Equitable") improperly paid royalties by deducting post-production expenses or using flat rates. Equitable and the named plaintiffs (collectively, "the Parties") have reached an agreement to resolve the claims of the named plaintiffs and the class they represent (collectively, "Settlement Class" or "Class Members").

Having considered the entire record of submissions in this matter and the oral presentations at the final fairness hearing, I **FIND** that the Settlement Class satisfies the requirements of Federal Rules of Civil Procedures 23(a) and 23(b)(3). Moreover, I **FIND** that the settlement is fair, reasonable, and adequate. Accordingly, the motion for final approval of the class action settlement is **GRANTED**.

**I. Background**

On June 13, 2006, the plaintiffs filed a Complaint against Equitable Production Company

("EPC") in the Circuit Court of Roane County, West Virginia. The defendant removed this action to federal court on August 7, 2006 [Docket 3]. On December 1, 2006, this court designated the case a complex case [Docket 19]. On April 3, 2007, the plaintiffs filed an Amended Complaint, adding, among others, Equitable Resources, Inc. as a defendant [Docket 33]. The Amended Complaint alleged breach of contract (Count I), breach of fiduciary duty (Count II), fraud (Count III), and violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq. (Count IV). The plaintiffs also requested punitive damages (Count V) and class certification (Count VI).

On April 30, 2007, Equitable Resources, Inc. filed a motion to dismiss, arguing that "[a]t all times Equitable Production Company, an indirect subsidiary of Equitable Resources, was an entirely separate and valid corporate entity" [Docket 48, at 7]. On May 31, 2007, four other defendants filed motions to dismiss [Dockets 64 & 65].

On June 8, 2007, the plaintiffs dismissed their claims against three of the defendants without prejudice [Docket 76]; on June 29, 2007, the plaintiffs dismissed another defendant without prejudice [Docket 83]. Throughout this time, discovery continued. Magistrate Judge Mary E. Stanley adjudicated a discovery dispute at a hearing on July 11, 2007. Equitable appealed and objected to her decision [Docket 90]. I overruled this objection and affirmed the Magistrate's order on July 14, 2008 [Docket 142].

The plaintiffs also filed a motion for an order limiting Equitable's discussions with putative class members [Docket 92], and EPC later filed a motion to strike the plaintiffs' reply to Equitable's response to this motion [Docket 100]. I denied both motions on September 21, 2007 [Docket 102]. On January 15, 2008, EPC filed a motion for leave to file a third-party complaint against three of the

previously dismissed defendants, for contribution, indemnity, and declaratory judgment [Docket 103]. On February 8, 2008, Equitable Resources, Inc., citing a desire to focus on mediation, filed a motion to withdraw its motion to dismiss [Docket 104]. I granted this motion on February 11, 2008 [Docket 106].

The third-party defendants moved for dismissal of the third-party complaint on March 20, 2008 [Docket 119]. On June 30, 2008, I granted the third-party defendants' subsequent motion to stay their involvement in discovery pending resolution of their motion to dismiss [Docket 132]. On July 7, 2008, Equitable Resources, Inc. filed a motion for summary judgment [Docket 136]. After a status conference before Magistrate Judge Stanley, on July 10, 2008, Equitable Resources, Inc. moved to withdraw its motion for summary judgment without prejudice [Docket 141]. I granted this motion [Docket 143].

A civil jury trial was scheduled for December 10, 2008. On December 8, 2008, the Parties filed a joint motion for conditional certification of a temporary settlement class and preliminary approval of class action settlement [Docket 166]. I canceled the scheduled trial, and the Parties worked to formalize their settlement agreement. On May 15, 2009, I granted the Parties' joint motion for conditional certification of a temporary settlement class and preliminarily approved the class action settlement [Docket 184]. I granted the Parties' joint motion for appointment of claims administrator on August 21, 2009 [Docket 190].

In response to the Parties' notification to Class Members, five objections were filed.[1] Ninety-

---

[1] Objections were filed by Hunter M. Bennett, Jr. [Docket 191], Fred Muscar [Docket 193], Glennis Pauline Waldeck [Docket 194], Harriette C. Chambliss [Docket 195], and E.W. Perkins, et al. Trust and E.C. Perkins Trust U/Ind (the "E.C. Perkins Trust") [Docket 196]. Mr. Bennett and the E.W. Perkins Trust later withdrew their objections [Dockets 198, 199].

five exclusion requests were also filed.[2] The Parties filed a joint response to the objections on December 1, 2009 [Docket 197].

The Parties filed a joint motion for final approval of class action settlement on January 11, 2010 [Docket 205]. On January 20, 2010, I held a formal fairness hearing. At the hearing, the Parties requested a final order and judgment exercising personal jurisdiction over the Class Members, certifying a Settlement Class, overruling the objections to the settlement, finding that the settlement is fair, reasonable, adequate and not the product of collusion, and granting final approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e). The Parties were given an opportunity to speak in favor of the settlement. None of the objectors attended the hearing to speak in support of their objections.

**II. Summary of the Final Settlement Agreement**

I adopt the terms of the Second Amended Settlement Agreement [Docket 182], except as noted in this Order, as the Final Settlement Agreement (the "Agreement"). The Agreement calculates settlement payments based upon the type of lease the Class Members have with Equitable: One-Eighth Subclass "A"; One-Eighth Subclass "B"; or Flat Rate Subclass. The Agreement provides formulas for calculating individual settlement payments for each Class Member. The distribution to each Class Member will be determined by allocating funds on a well-by-well basis based upon the total months a lessor owned such mineral interests in proportion to the total months from February 1, 2000, to the settlement date of December 8, 2008. As explained in the Agreement, some Class Members will have the option of electing a lease modification to obtain additional consideration.

---

[2] The court includes Beverly K. Campbell's Letter-Form Motion for Late Opt-Out [Docket 222] as a request for exclusion.

Each Class Member's payment will be reduced by attorneys' fees and costs. Class Counsel may request fees in an amount up to twenty-five percent of the total settlement payment made to all participating Class Members, plus costs of litigation.

The Class Members will be paid out of a Settlement Fund established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder. Equitable will contribute to the Settlement Fund a sum equal to the Gross Owner's Totals for all Participating Combined One-Eighth Subclass Members and Participating Flat Rate Subclass Members. The principal in the Settlement Fund account will be used to make settlement payments to participating Class Members and pay fee awards. All interest accruing in the Settlement Fund account will be paid to Equitable unless necessary for payment of settlement payments. The Net Fund Account, which is the remainder of the Settlement Fund after payment of settlement payments and fee awards have been made, will be paid to Equitable after the Claims Administrator has made a final report to the Parties and the court and when approved by the court.

In addition to the settlement payments, administrative expenses up to $2 million will be paid by Equitable in accordance with the terms of the Agreement. If the administrative expenses exceed $2 million, Equitable will be responsible for the recording costs incurred by the Claims Administrator to record the lease modification to the extent such recording costs cause the total administration expenses to top the $2 million threshold. If the administration expenses other than recording costs exceed $2 million, then those excess administration expenses shall be assessed as costs of litigation. Any administrative expenses above $2 million must be approved by the court prior to the expenses being incurred.

Class Members will receive payment upon completion and submission of a claim form, and, if applicable, lease modification. The claim form will be sent to each Class Member by the Claims Administrator and will contain information including the payment amount to which the Class Member is entitled. The claim form also will contain a provision releasing Equitable from future claims by Class Members from any and all royalty claims through the settlement date of December 8, 2008 for improper royalty payments, improper deductions, improper measurement, improper accounting for natural gas liquids, improper sales prices, breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq., violation of the West Virginia Flat Rate Royalty Statute, W. Va. Code § 22-6-8, and punitive damages for failure to pay proper royalty. Class Members must return their claims form to the Claims Administrator or dispute the contents of their claim forms within ninety (90) days after the claim form is mailed to them.

### III. Personal Jurisdiction and Notice

In the context of a class action, the due process requirements of the Fifth Amendment require "[r]easonable notice combined with an opportunity to be heard and withdraw from the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005). Federal Rule of Civil Procedure 23 also requires that a class receive notice prior to settlement. Rule 23(c) specifically provides that for a class maintained under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule further provides that the notice inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and

that the class judgment will have a binding effect on class members who are not excluded. *Id.* "'[S]ilence on the part of those receiving [such] notice is construed as tacit consent to the court's jurisdiction.'" *In re Serzone*, 231 F.R.D. at 231 (internal citation omitted).

The notice plan was implemented by Arnett & Foster, PLLC ("A&F"), which was selected by the Parties, and approved by this court, to serve as the Claims Administrator. The plan included a comprehensive mailing to all reasonably identifiable Class Members, the establishment of an informational website and toll-free telephone support number, and the use of paid media print advertisements in the nineteen highest circulating daily newspapers in West Virginia.

Notice was uniquely effective in this action because Equitable's records of their leases allowed A&F to provide individual notice by mail to most Class Members. According to the testimony of the Claims Administrator and notice expert, over 91% of the total class was notified by direct mail. The Parties report that by January 4, 2010, the informational website had received over 1,600 visits or sessions, and as of January 10, 2010, the toll-free telephone support number had received over 1,700 calls. The notice expert in this case, Katherin Kinsella, testified that the notice provided was reasonable, adequate, and the best notice practicable under the circumstances and satisfied the requirement as set out in Federal Rule of Civil Procedure 23. Moreover, no notified Class Members have objected to the settlement on the basis of lack of reasonable notice and opportunity to be heard or to opt out. I **HOLD** that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out.

## IV. CAFA Requirements

The Class Action Fairness Act of 2005 ("CAFA") requires each defendant participating in

a proposed class settlement to provide appropriate state officials with information about the settlement, including, *inter alia*, a copy of the complaint, notice of any judicial hearings, any notification to class members, and any final judgments on the settlement. 28 U.S.C. § 1715. Although Equitable sent notice packets to the appropriate State and Federal officials, it did not provide such notice promptly after the Agreement was filed, as required by CAFA, 28 U.S.C. § 1715(b). The Parties therefore requested the court to proceed with hearing all matters pertaining to the approval of this settlement in the scheduled fairness hearing and to withhold entry of the Final Order approving the settlement until after the ninety (90) days expired as required for notice pursuant to 28 U.S.C. § 1715(d). (*See* Mem. Supp. J. Mot. Final Approval Class Action Settlement [Docket 206], at 3-4.) The Parties represented that neither State nor Federal Agencies' property will be affected by this class action settlement and that delaying entry of the Final Order for ninety (90) days would not adversely affect the time necessary to administer the claims. (*Id.*) Since more than 100 days have passed since service was perfected and since there have been no adverse comments from any of the aforesaid State or Federal officials, the Court **FINDS** that compliance with CAFA is satisfactory. *See Ault v. Walt Disney World Co.*, 2009 WL 3242028, at *1, n.4 (M.D. Fla. Oct. 6, 2009).

**V. Class Certification**

A settlement class must meet the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b). *In re Serzone*, 231 F.R.D. at 237. The Fourth Circuit reads Rule 23 liberally and applies it flexibly to "'best serve the ends of justice for affected parties and promote judicial efficiencies.'" *Id.* (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)). In this case, the Parties seek class certification under

Rule 23(b)(3). In my May 15, 2009 Order, I analyzed the proposed Settlement Class and subclasses pursuant to Rules 23(a) and 23(b)(3) and found that the requirements of those rules had been met. Nothing added to the record since that time alters my findings.[3] In addition, no Class Members have objected to the certification of a settlement class as preliminarily and conditionally certified in the May 15, 2009 Order. Finally, the high success rate of the class notification supports class treatment in this case because there is little risk that Class Members' interests were inadequately represented or were unprotected. Consequently, for the reasons set forth in the previous Order, and those discussed above, I **CERTIFY** a Settlement Class, consisting of the following three subclasses of plaintiffs:

> **Flat Rate Subclass**: All persons who have entered into Flat Rate Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period. The Flat Rate Subclass also includes all persons who have or had oil, gas, or other hydrocarbon production from Flat Rate Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period. The Flat Rate Subclass also includes all Lessors who have received royalty payments under Flat Rate Leases by virtue of pooling or unitization of their leased acreage.

---

[3] According to the Parties' statements at the fairness hearing, accurately calculating the damages of each Class Member would require an individualized inquiry into factors affecting the specific royalty deductions of each Class Member. But where common issues of liability predominate over individual issues of liability, courts find that the Rule 23(b)(3) predominance requirement is met even though an individualized inquiry into damages may be necessary. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003). Particularly in this case, the fact that an accurate assessment of the Class Members' damages would require individualized inquiries detracts little from the predominating common liability issues. Almost all of the Class Members have been notified and have tacitly agreed to a common calculation method for damages. Consequently, there will be no actual individualized inquiry into damages that would destroy the "economies of time, effort, and expense," achieved by settling this action as a class. Fed. R. Civ. P. 23 Advisory Committee's Note 1966, subdivision (b)(3).

>   **One-Eighth Subclass "A"**: All persons who have entered into Type "A" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period. Type "A" One-Eighth Leases are leases in which royalties are based on the fraction of proceeds, sales, or value of the gas stated in the lease to be the consideration the Lessor is to receive for the gas produced from wells on the lease (usually one-eighth) and that do not expressly address the deduction of Post-Production Expenses. One-Eighth Subclass "A" also includes all persons who have or had oil, gas, or other hydrocarbon production from Type "A" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period. One-Eighth Subclass "A" also includes all Lessors who have received royalty payments under Type "A" One-Eighth Leases by virtue of pooling or utilization of their leased acreage.
>
>   **One-Eighth Subclass "B":** All persons who have entered into Type "B" One-Eighth Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period. Type "B" One-Eighth Leases are those leases in which royalties are based on the fraction of proceeds, sales, or value of the gas produced from wells on the lease (usually one-eighth) and which contain language expressly permitting the deduction of Post-Production Expenses. One-Eighth Subclass "B" also includes all person who have or had oil, gas, or other hydrocarbon production from Type "B" One-Eighth Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period. One-Eighth Subclass "B" also includes all Lessors who have received royalty payments under Type "B" One-Eighth Leases by virtue of pooling or unitization of their leased acreage.

## VI. Fairness Determination

Federal Rule of Civil Procedure 23(e)(2) provides that a court may only approve the binding settlement of a certified class action after determining that the proposed settlement is fair, reasonable,

and adequate. While compromise and settlement are favored by the law, "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). In *In re MicroStrategy, Inc. Securities Litigation*, the court noted that "approval of a class action settlement is committed to 'the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)).

As a preliminary matter in this fairness determination, I note that the traditional concern for the interests of absent class members is substantially ameliorated in this case by the high percentage of known Class Members. As discussed above, the Parties have successfully sent individual notice to over 91 percent of the approximately 11,000 member class. Therefore, the majority of the Settlement Class has been directly informed of the terms of the settlement. Even more Class Members may have been informed of the settlement through exposure to the publication notice, which provided a website, phone number, email address and mailing address which members could contact to obtain the complete settlement terms. The Class Members' tacit consent to the terms of the settlement weighs heavily towards a finding of fairness.

I must, however, apply the more specific analysis adopted by the Fourth Circuit for determining whether the settlement satisfies the Rule 23 requirements. The Fourth Circuit has adopted a bifurcated analysis, separating the inquiry into a settlement's "fairness" from the inquiry into a settlement's "adequacy." *MicroStrategy*, 148 F. Supp. 2d at 663 (citing *In re Jiffy Lube Sec. Litig*, 927 F.2d at 158-89); *see also Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501

(E.D. Va. 1995). In assessing the "fairness" of a proposed settlement, the court must consider the following four factors: "'(1) the posture of the case at the time the settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation.'" *MicroStrategy*, 148 F. Supp. 2d at 663-64 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159); *see also Strang*, 890 F. Supp. at 501. In determining the "adequacy" of the settlement, the court looks to the following:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*MicroStrategy*, 148 F. Supp. 2d at 665 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159); *see also Strang*, 890 F. Supp. at 501.

### A. Fairness

I **FIND** that the Final Settlement Agreement in this action meets the fairness test because it has been negotiated at arm's length over a period of months between counsel through the use of an experienced mediator and after extensive discovery. This action has been pending for approximately four years. In that time, Plaintiff Class Representatives[4] have actively pursued necessary discovery. The Parties report that Equitable has produced thousands of pages of documents, over one-hundred thousand pages of spreadsheet data relating to leases and royalties, and a complete copy of its database containing over 40 million records of royalty payment information. Class Counsel[5] have

---

[4] In my May 15, 2009 Order, I designated the named plaintiffs in this matter as Settlement Class Representatives.

[5] In my May 15, 2009 Order, I appointed as Settlement Class Counsel Marvin W. Masters, The Masters Law Firm, LC, Charleston, West Virginia; Michael W. Carey, Carey, Scott & Douglas,

taken depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Class Representatives represent that they have retained several expert witnesses in the field of gas royalty accounting. During the pendency of this action, including months of intensive settlement negotiations, Class Counsel, with the aid of their experts, have been able to determine the nature and strength of the Class Members' claims and to make reasonable damages calculations. Finally, Class Counsel are experienced in class action litigation generally and in the particular field of gas royalties class actions.

### B. Adequacy

I **FIND** that the Agreement also meets the adequacy test. Although Plaintiff Class Representatives believe they have strong claims against Equitable, there is obviously no certainty that they will prevail if the settlement is not approved and the litigation continues. Moreover, Equitable has denied liability and will continue to challenge Plaintiff Class Representatives' claims if the case should move forward. The issues in this action involving gas lease language and the permissibility of deductions from royalties are complex. Complex litigation such as this would be very costly to maintain, as the Parties represent they expected to take many additional lengthy depositions and also engage in the continued production and review of documents. Further, maintenance of this action, according to the Parties, would require extensive review by experts who would be costly to both sides.

There is no issue of the solvency of Equitable. The Parties represent that Equitable has already deposited $25 million to the Settlement Fund, as outlined in the Agreement.

---

PLLC, Charleston, West Virginia; Thomas W. Pettit, Thomas W. Pettit, L.C., Barboursville, West Virginia; Scott S. Segal, The Segal Law Firm, Charleston, West Virginia; and David J. Romano, Romano Law Offices, Clarksburg, West Virginia.

Only five members of the class have objected to the settlement, and two objections have been withdrawn, as discussed below. The small number of objections is especially significant because such a high percentage of the Class Members were successfully notified. Only a small number of Class Members (ninety-five out of approximately 11,000) asked to be excluded. *See* Exhibit A attached.

For the reasons discussed above, I **FIND** that the settlement is fair, reasonable and adequate, and not the product of collusion.

**VII. Objections**

Five Class Members have filed objections: Hunter M. Bennett, Jr.; Fred Muscar; Glennis Pauline Waldeck; Harriette Chambliss; and E.W. Perkins, et al. Trust and E.C. Perkins Trust U/IND (the "Perkins Trust") [Dockets 191, 193, 194, 195, 196]. The Parties have timely responded to these objections [Docket 197]. Following the filing of the Parties' response, Hunter M. Bennett, Jr. and the Perkins Trust withdrew their objections to the settlement [Dockets 198, 199]. None of the objectors appeared at the fairness hearing in support of their objections. I will address each objection in turn.

Mr. Bennett objects to the word "assigns" in the definition of "Equitable" in the Agreement and to the inclusion of the same word in the claim forms. Mr. Bennett reasons that because the definition of "Non-Affiliate Farmout Wells" in the Second Amended Settlement Agreement expressly excludes these wells from the settlement, no one should be required to release claims relating to them. The Parties agree that the term "assigns" does not include those who operate Non-Affiliate Farmout Wells, which are wells on an Equitable lease pursuant to a Farmout Agreement with Equitable. Accordingly, I **FIND** that the term "assigns" as used in this case and as used in the claim form release

required to be submitted by claimants does not include those entities which tender royalty payments on an Equitable lease pursuant to a Farmout Agreement with Equitable, and accordingly claims against operators of Non-Affiliate Farmout Wells are not released in this settlement.

I received a letter from Mr. Bennett dated November 30, 2009, in which he explained that the Parties' clarification of the word "assigns," as described by my finding above, satisfies his objection. Consequently, he formally withdraws his objection [Docket 198]. "Court approval is necessary for the withdrawal of objections to settlements binding on the class." Manual for Complex Litigation (Fourth) § 21.643 at 328 (2004). I **FIND** that Mr. Bennett seeks to withdraw his objection based on a clarification, rather than a modification of the Agreement. Accordingly, I **APPROVE** the withdrawal of Mr. Bennett's objection. *See* Fed. R. Civ. P. 23 advisory committee's note to the 2003 Amendments, Paragraph (4) (explaining that if objections are withdrawn or surrendered on terms that do not modify the settlement, then the court may approve the withdrawal "without elaborate inquiry").

The Perkins Trust also withdrew its objection without modifications being made to the Agreement. The Perkins Trust represented that additional due diligence changed its desire to opt out of the Settlement Class. Therefore, the court likewise **APPROVES** the withdrawal of the Perkins Trust's objection.

Fred Muscar objected that Equitable reported a greater volume of gas produced to the state than he was paid for. He further states that Bess Wright, who is also a royalty owner on land bordering his property, has experienced ths same under-reporting. The Parties responded to his objection by noting that they had disputed "whether the royalty provisions of the subject leases require that royalty be paid on volumes of gas sold at a sales meter or the volumes of gas produced

at the wellhead." (Resp. Objections 4.) The Parties represented that "[t]he vast majority of EQT's 1/8th leases provided that the royalt[ies] were to be paid on the volumes produced and sold or volumes produced and marketed. Accordingly, this issue was ultimately negotiated and compromised as part of the overall settlement." (*Id.*) The Parties have also represented that the differential in Mr. Muscar's reported volumes was greater than those for the Class Members generally, and that this occurred "because of metering issues." (Proposed Order [Docket 207] 19).

The court has found that the settlement is fair and reasonable. The method by which payments would be calculated was negotiated and settled between the Parties. Mr. Muscar's objection is **OVERRULED.**

Glennis Pauline Waldeck filed an objection, by letter dated October 28, 2009, asserting that the proposed settlement is not fair to the plaintiffs. She argues that "the agreement places no real punishment upon the defendant . . . as the real costs are placed upon the plaintiffs in absorbing the expense or cost and fees of this action." She asks the court to "make real efforts to equalize the reward potential for the benefit of the Plaintiffs as well as the Defendant recognizing that wrongs have been committed." She requests several specific changes to the settlement to increase the benefit to the plaintiffs.

This court possesses no power to alter the terms of a class action settlement negotiated by the parties. *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). Furthermore, the settlement reached is fair and reasonable, as explained above. Ms. Waldeck's objections reflect her personal discontent with the Agreement. She could have opted out of the settlement if she disagreed and did not wish to be bound by its terms. But she did not. The objections of Glennis Pauline Waldeck are **OVERRULED**.

Harriete C. Chambliss, by letter dated October 30, 2009, also objected to the proposed

settlement, on behalf of herself and several members of her family. Ms. Chambliss expressed concern that the claim forms might "require an unduly burdensome amount of information in order to be accepted and processed." She also noted that "Equitable stopped paying some royalties at the end of 2008," and expressed hope that "there will be a way that we can obtain information from Equitable or the Claims Administrator if it is required to verify settlement payment calculations." Finally, she expressed concern that "family members who have common ownership interest in property subject to royalty payments from Equitable will be eligible for settlement payments . . . even if other family members with ownership interests in the same property fail to file claims or exclude themselves from the settlement."

The Parties responded that Ms. Chambliss's objection "does not address the fundamental fairness of the settlement." (Resp. Objections 6.) The Parties represent that Ms. Chambliss is incorrect to assert that Equitable stopped paying royalties under the lease as of December 2008—but, even if Ms. Chambliss had a valid claim on this issue, "unpaid or underpaid royalties accruing post-December 2008 are not part of the 'compensation period' set forth in the Settlement Agreement and thus would not be released by the settlement." (*Id.*)

The court agrees that Ms. Chambliss's concerns are not proper objections. To the extent that she is concerned about the administration of the settlement, the court will address any such problems when and if they arise. Moreover, as the Parties correctly note, any claims accruing outside of the compensation period will not be released by this settlement. Therefore, Ms. Chambliss's objection is **OVERRULED**.

## VIII. Miscellaneous Matters

Before concluding, there is one miscellaneous matter that I should address. In a letter to me

-17-

dated March 14, 2010, Beverly Campbell expressed a wish to be excluded from the Settlement Class [Docket 222]. She wrote that she "only just found . . . out" that she is a Class Member and that she and her sister, who is also an owner of the mineral rights at issue, "were not contacted about the suit or the deadline." She requested the court "please tell [her] how to get out of being a member of this class for this is not to the best interest of myself and for my sister." On March 19, 2010, I directed this letter to be docketed as Motion for Late Opt-Out of the Settlement Class, and for the Parties to file timely responses, if any, with the court. No party has filed a response. Finding good cause, the court **GRANTS** Ms. Campbell's request for a late opt-out.

**IX. Conclusion**

For the reasons discussed above, the Joint Motion for Final Approval of Class Action Settlement is **GRANTED** [Docket 182]. Accordingly, the court **CERTIFIES** the proposed class upon finding that the class satisfies Rule 23(a) and Rule 23(b)(3) and **APPROVES** the Final Settlement Agreement upon finding that the settlement is fair, reasonable, and adequate for the purposes of Rule 23(e). The court further **APPROVES** the withdrawal of Mr. Hunter M. Bennett's [Docket 198] and the Perkins Trust's objections [Docket 199] to the Agreement. The court **OVERRULES** the remaining objections [Dockets 193, 194, 195] and **GRANTS** Ms. Campbell's request for a late opt-out [Docket 222].

The Court further **FINDS** that there have been certain putative Class Members who have timely opted out of the class, as set forth in Exhibit A attached to the this Order, and, therefore, they are not bound by the Agreement and may bring their own suits. The statute of limitations is tolled for these opt outs up to and including thirty (30) days after entry of this Memorandum Opinion and Final Order Approving Settlement and Certifying the Settlement Class. It is further **ORDERED** that

the Agreement is modified to set a bar date to file claim forms ninety (90) days after mailing of the claim forms, as opposed to the forty-five (45) days provided for in the Second Amended Settlement Agreement and any previous orders, and that the claim forms are to be mailed to the Class Members within ten (10) days of entry of this court's Memorandum Opinion and Final Order Approving Settlement and Certifying the Settlement Class. It is further **ORDERED** that the Class Members' claims are hereby released for the period through the Effective Date of December 8, 2008, for which Equitable and the released Parties have paid the full and just consideration as set forth in the Agreement.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    April 28, 2010

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge