# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

THE KAY COMPANY, et al.,

        Plaintiffs,

v.                             CIVIL ACTION NO.  2:06-cv-00612

EQUITABLE PRODUCTION CO.,

        Defendant.


### MEMORANDUM OPINION & ORDER

Pending before the court is Class Counsel's Motion for Award of Attorney Fees, Incentive Awards for Class Representatives, and Reimbursement of Expenses [Docket 215].  Class Counsel[1] seek a fee award equivalent to 25% of the Settlement Fund.  Class Counsel also seek $96,113.54 for out-of-pocket expenses and a $25,000 incentive award for each named Class Representative.

## I.     Introduction

The fees requested by Class Counsel in this case, if awarded, would equal $6.75 to $8.25 million.  This is the result of Class Counsel's request to award as attorneys' fees 25% of the common fund of $28 to $33 million.  As explained below, I find from the application of settled principles of law that the requested fees should be reduced to 20% of the common fund.  Although I realize that

---

[1] On May 15, 2009, this court entered an Order conditionally certifying a temporary settlement class and preliminarily approving the class action settlement in which I appointed as Class Counsel Marvin W. Masters, The Masters Law Firm, LC, Charleston, West Virginia; Michael W. Carey, Carey Scott & Douglas, PLLC, Charleston, West Virginia; Thomas W. Pettit, Thomas W. Pettit, L.C., Barboursville, West Virginia; Scott S. Segal, The Segal Law Firm, Charleston, West Virginia; and, David J. Romano, Romano Law Offices, Clarksburg, West Virginia. (May 15, 2009 Order at 6 [Docket 184]).

20% is at the low end of the range used by courts to calculate percentage of fund fee awards in class action lawsuits, the fees as reduced and awarded here remain enormous.  I am often discomfited by the award of fees of this magnitude in class action cases where the total amount of the settlement fund is very much a product of the number of plaintiffs rather than of the legal work performed.  In cases of that nature, awarding such a large percentage of the fund inevitably results in a windfall for the plaintiffs' counsel.  In this case, however, almost all of the included plaintiffs received actual notice of the terms of the settlement, including the attorneys' fee request, and failed to raise any objections to those terms.  Thus, almost all of the plaintiffs implicitly agreed to the 25% fee request.  That implicit agreement, along with the extraordinary result achieved for the class members, heavily influences my decision not to further reduce the fee, despite the other factors, outlined below, that weigh against the award of such a huge fee in a case of this nature.

## II.    Background

On April 28, 2010, I granted final approval to a Final Settlement Agreement ("Agreement") in this action [Docket 224].  Pursuant to the Agreement, all Participating Subclass Members, that is, Class Members who have not opted out of the Agreement, are entitled to claim a settlement payment.  The settlement payment owed to each Class Member is determined by a formula set out in the Agreement.  That formula includes a deduction for court approved attorneys' fees and costs. The Agreement also provides for Class Counsel to apply for a fee award "in amount not to exceed 25% of the Gross Owner's Totals for Participating Subclass Members, plus Costs of Litigation." (Second Amended Settlement Agreement [Docket 182] 27.)  The defendants agreed not to object to Class Counsel's fee application.  (*Id.*)

In accordance with the Settlement Agreement, Class Counsel have requested a fee award equivalent to 25% of the Settlement Fund, or more precisely, 25% of the Gross Owner's Totals for Participating Subclass Members.  The defendants, as agreed, have not objected to the fee application. The estimated Settlement Fund is between approximately $28 and $33 million.[2]  If approved, Class Counsel would receive 25% of that amount, which is an estimated $6.75 to $8.25 million.

### III.    Method for Determining Reasonable Attorneys' Fees Award

When a class settlement results in the creation of a common fund for the benefit of the class members, reasonable attorneys' fees may be awarded from the common fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (explaining the common fund doctrine as a "well recognized exception to the general principle that requires every litigant to bear his own attorney's fees [which] . . . rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."); *see* Fed. R. Civ. P. 23(h) (authorizing the award of reasonable attorneys' fees in class actions).  In calculating such fees, courts have generally employed two different methods:  the "lodestar" method and the "percentage

---

[2] The defendants will contribute to the Settlement Fund an amount equal to the Gross Owner's Totals for Participating Subclass Members.  By definition, the Gross Owner's Totals for Participating Subclass Members is equal to the total amount owed to every class member that did not opt out of the Agreement.  But the amount owed to each One-Eighth Subclass Member depends on the Settlement Option selected by each of those Subclass Members.  Consequently, there remains some ambiguity as to the defendants' contribution obligation for One-Eighth Subclass Members that did not opt out but also do not claim payment and select a specific Settlement Option.

The Claims Administrator has estimated the defendants' contribution obligation to the Settlement Fund.  If all One-Eighth Subclass Members elect Settlement Option A, the defendants' estimated contributions is approximately $33,101,819.00.  If all One-Eighth Subclass Members select Settlement Option B, the defendants' estimated contribution is approximately $27,793,390.00. (Mem. Supp. Mot. Attorneys' Fees 3 n.3.)

-3-

of fund" method.  Under the "lodestar" method, a district court identifies a lodestar figure by multiplying the number of hours expended by class counsel by a reasonable hourly rate.  The court may then adjust the lodestar figure using a "multiplier" derived from a number of factors, such as the benefit achieved for the class and the complexity of the case.  *See In re Microstrategy, Inc. Sec. Litig*, 172 F. Supp. 2d 778, 786-87 (E.D. Va. 2001).  Under the "percentage of fund" method, the court awards the fee as a percentage of the common fund.  *Id*.  The percentage of fund method operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients.  Unlike contingency fees, however, the percentage fee award is determined ex post, at the end of the litigation, rather than by an ex ante arrangement. In making this ex post determination of a reasonable percentage, courts consider many of the same factors used to adjust the lodestar figure.  *Id.*

Courts have increasingly favored the percentage method for calculating attorneys' fees in common fund cases.  *See Muhammad v. Nat'l City Mortgage, Inc.*, Civil Action No. 2:07-0423, 2008 WL 5377783, at *7 (S.D. W. Va. Dec. 19, 2008) (Copenhaver, J.); *see also Strang et al. v. JHM Mortgage Sec. Ltd. P'ship et al.*, 890 F. Supp. 499, 502 (E.D. Va. 1995); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 187; Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 355 (January 15, 2002) ("A percentage fee, tailored to the realities of a particular case, remains superior to any other means of determining a reasonable fee for class counsel.").  The percentage method better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys.  *See* Task Force on Contingent Fees, 25 REV. LITIG. at 469 ("Like percentage fees for individual plaintiffs, the percentage fee for class actions ties the lawyer's fee directly to the success

of the litigation."); *see also In re Cardinal Health*, 528 F. Supp. 2d 752, 753 (S.D. Ohio 2007) (Marbley, J.).  In contrast, when the lodestar method is applied, class counsel has an incentive to "over-litigate" or draw out cases in an effort to increase the number of hours used to calculate their fees.  *In re Microstrategy*, 172 F. Supp. 2d at 787; *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 136 (S.D.N.Y. 2008).  Also, the percentage method allows district courts more flexibility to award attorneys for the efficient settlement of a case.  *See In re Cardinal Health*, 528 F. Supp. 2d at 762.

Courts applying the percentage method have not, however, completely discarded the lodestar method.  The lodestar method, when applied together with the percentage method, can neutralize the drawbacks of the percentage method.  For instance, the lodestar method can counteract the anchoring effect of a plaintiff's counsel's percentage fee request.  *Id.* at 763.  Because courts tend to deviate only slightly from the requested percentage amount, plaintiffs' counsel can effectively "manipulate the fee award they are likely to receive by simply requesting a higher percentage."  *Id.* The lodestar method, however, provides courts with an objective fee amount with which to compare the requested fee.  The lodestar method can also guard against attorney windfalls.  A court's use of the percentage method "can result in a windfall for the plaintiffs' attorneys because the size of the settlement does not necessarily reflect the skill, efficiency, and hard-work of counsel."  *Id.*  "[A] large settlement could result from the mere happenstance that the class is large, even though the liability issue would be the same regardless of whether there were 8,000 or 80,000 class members." *Id.*; *see also In re Cendant*, 243 F.3d 722, 736 (3d Cir. 2001) (explaining that the basis for reducing the percentage fee awarded as the size of the common fund increases is that "in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the

efforts of counsel." (internal quotations omitted)).  An application of the lodestar method seeks to prevent windfalls by ensuring that "the fee award is still roughly aligned with the amount of work the attorneys contributed."  *In re Cardinal Health*, 528 F. Supp. 2d at 764.

Courts incorporate the lodestar method into the percentage method in two ways.  First, as discussed above, courts often apply lodestar factors when assessing the reasonableness of attorneys' fees under the percentage method.  *See In re Microstrategy*, 172 F. Supp. 2d at 786-87 (explaining that courts using the percentage method "reference the same case-specific factors many courts use to adjust, or determine a multiplier for, a lodestar figure.").  Many courts have also incorporated a "lodestar cross-check" into their review of a percentage-based attorneys' fee.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 191; *In re Royal Ahold N.V. Securities & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 778 (S.D. Tex. 2008); *In re Cardinal Health*, 528 F. Supp. 2d at 764; *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05-CV-00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007).  By using the percentage of fund method and supplementing it with the lodestar cross-check, a court can take advantage of the benefits of both methods.  *See In re Microstrategy*, 172 F. Supp. 2d at 787.

The Fourth Circuit has neither announced a preferred method for determining the reasonableness of attorneys' fees in common fund class actions nor identified factors for district

courts to apply when using the percentage method.[3]  I therefore have complete discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the [instant matter]." *In re Cardinal Health*, 528 F. Supp. 2d at 761(quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996)). In light of the prevailing view among courts that the percentage method is the superior method for calculating attorneys' fees from a common fund, and with special concern for the perverse incentives associated with the lodestar method, I find that the percentage method is the appropriate method for determining reasonable attorneys' fees in this case.  I will also apply the lodestar cross-check as an element of objectivity in my analysis.[4]  I note, however, that with regard to both the percentage of fund factors and the lodestar cross-check, "there is no specific formula for analyzing these factors. 'Each case is different, and in certain cases, one factor may outweigh the rest.'" *Muhammed*, 2008 WL 5377783, at *8 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

## IV.    Reasonableness Determination

---

[3]  Several district courts in this circuit have, however, elected to use the percentage method instead of the lodestar method.  *See Muhammad*, 2008 WL 5377783, at *7; *In re Ahold*, 461 F. Supp. 2d at 385; *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D.N.C. 2002); *Goldenberg v. Mariott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998); *Strang*, 890 F. Supp. at 502.

[4]  This court, along with several courts in this circuit, has applied the lodestar cross-check in conjunction with the percentage method.  *See Jones v. Dominion*, 601 F. Supp. 2d 756, 765-66 (S.D. W. Va. 2009); Order on Fee Petition of Class Counsel at 2*, In re Serzone Prods. Liability Litig.*, No. 2:02-01477 (S.D. W. Va. May 16, 2007); *Teague*, 213 F. Supp. 2d at 585 (conducting a general reasonableness analysis and then assessing the fee award under the lodestar method); *Goldenberg*, 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998) (applying the percentage method but finding that the fee award was reasonable even under the lodestar approach).

In order to determine a reasonable attorneys' fee for Class Counsel in this case, I have considered the following factors commonly used by courts in the application of the percentage method: (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy. *See Jones v. Dominion Resources Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009); *In re Cendant*, 243 F.3d at 733; *Goldberger*, 209 F.3d 43, 50 (2d Cir. 2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *see also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 266 (4th Cir. 1978) (adopting similar factors for consideration under the lodestar method). As discussed above, I will also apply a lodestar cross-check. I **FIND** that the following factors all weigh in favor of the reasonableness of the requested fee award: the significant benefit obtained for the class; the quality, skill and efficiency of Class Counsel; awards in similar cases; and, the low incidence of objections to the award. I **FIND** that the following factors weigh against the reasonableness of the requested fee award and in favor of a reduced fee award: the non-complex nature of the case; the low risk of non-payment; the lodestar multiplier resulting from the requested fee award; and, public policy. Balancing all of these factors, I **FIND** that a fee award in the amount of 20% of the Settlement Fund is a reasonable fee for Class Counsels work in this case.

### A.    The Results Obtained for the Class

The result achieved by the attorneys for the class is often cited as one of the most significant factors in determining the reasonableness of a fee award. *See Teague*, 213 F. Supp. 2d at 583 ("In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'") (quoting *McKnight v. Circuit City Stores, Inc.*, 14 Fed. App'x 147, 149 (4th Cir.

2001)); *see also In re Cardinal Health*, 528 F. Supp. 2d at 764; Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members"). In this case, Class Counsel's efforts have led to the creation of an estimated $28 to $33 million common fund that will be disbursed to an estimated 9,000 class members who claim compensation. The size of this fund is significant and the fund will be disbursed according to the individualized value of the settlement to each class member. Also, the minute number of objections and exclusions among a large class, almost all of whom were individually notified, suggests that the class members are overwhelmingly pleased with the settlement result. I **FIND** that Class Counsel have obtained an unusually significant and valuable benefit for the class that weighs in favor of the requested fee.

### B. Quality, Skill and Efficiency of the Attorneys Involved

The court is familiar with Class Counsel's diligent representation of the plaintiffs in this case and it is apparent that the class has benefitted from the experience, skill, and efficiency of Class Counsel. Class Counsel are particularly experienced in the area of oil and gas royalties class action litigation. In fact, several of the Class Counsel were involved in *Tawney et al. v. Columbia Natural Resources, LLC et al.*, Civil Action No. 03-C-10E (Circuit Court of Roane County). (Mem. Supp. Mot. Award Attorney Fees, Ex. B.) *Tawney* was a West Virginia state court case involving legal issues similar to the issues in this case and led to a landmark West Virginia gas and oil royalties decision by the Supreme Court of Appeals of West Virginia. Class Counsel also successfully represented plaintiffs in *Jones v. Dominion Resources*, obtaining a large settlement in a class action also concerning royalty payments to oil and gas lessors. One of the primary benefits of the percentage method over the lodestar method is its allowance for rewards to attorneys for skilled and

efficient work on behalf of their clients. *See In re Cardinal Health*, 528 F. Supp. 2d at 762. I **FIND** that Class Counsel were highly qualified, skilled, and efficient.

### C.      Complexity and Duration of Litigation

In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery. *In re Cendant*, 243 F.3d at 735-36.   Where discovery is informal and does not involve conflicts over privilege or access to documents, the case is less complex and time consuming. *In re Merrill Lynch*, 249 F.R.D. at 137-38.   The case is more complex when the applicable laws are new, changing, or unclear. *See id.* at 139*; Goldenberg*, 33 F. Supp. 2d 434, 439 (D. Md. 2006) (finding that the case was "fairly complex, requiring analysis of several complicated financing arrangements and tax shelter opportunities in the context of a business and regulatory climate in flux.").   In a settlement context, courts may look to whether negotiations were "hard fought," "complex," or "arduous." *In re Merrill Lynch*, 249 F.R.D. at 138. The duration of the litigation is also compared to "the amount of time expended in most other large class actions." *In re Cendant*, 243 F.3d at 736.

The four-year duration of this litigation was fairly long, compared to that of other large class actions, *see In re Cardinal Health*, 528 F. Supp. 2d at 756 (litigation lasting three years); *Goldenberg*, 33 F. Supp. 2d at 436 (litigation lasting two years between filing and settlement), but it was also less complex than other class actions.   Duration is not necessarily indicative of complexity; indeed, in this case, the discovery was relatively straightforward—the parties had only one discovery dispute—and motions practice was not extensive.   Though oil and gas royalties law in West Virginia is complicated and has recently become unsettled, Class Counsel did not litigate

-10-

these issues nor the difficult preliminary issues involved with class certification.  On the other hand, negotiations in this case did require great attention to detail and were hard-fought and time-intensive.  Three formal mediation sessions were held with a professional mediator, and negotiations continued for several months.  The Comprehensive Settlement Agreement is no doubt a testament to Class Counsel's diligent efforts.

Overall, I **FIND** that this case was less complex than other class actions but that Class Counsel performed their duties zealously and collegially throughout the course of a relatively long case.

### D.     Risk of Non-Payment

In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis.  *See In re Cardinal Health*, 528 F. Supp. 2d at 766.  The risk undertaken by class counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled.  *See In re Merrill Lynch*, 249 F.R.D. at 139-40; *In re Cardinal Health*, 528 F. Supp. 2d at 766 (finding that class counsel faced "less risk than in other securities cases because it piggybacked on the success of a prior SEC investigation" and because the defendant had conceded some liability); *id.* (finding that class counsel faced lower risk because public events precipitated the litigation); *Strang*, 890 F. Supp. at 503 (finding that risks to plaintiffs' counsel were minimized by early settlement and reducing the percentage award from 30% to 25% of the Settlement Fund accordingly); *see also Loudermilk Servs., Inc. v. Marathon Petroleum Co., LLC*, 623 F. Supp. 2d 713, 721-23 (S.D. W. Va. May 7, 2009) (Chambers, J.) (discussing how the

-11-

parties' own evaluation of the risks and values of the case and both parties' high incentives towards settlement tend to limit the risk of litigation).

There is no evidence, however, that Class Counsel undertook greater risk in this case than in any other typical class action. Although negotiations to reaching a final settlement were fairly lengthy, formal mediation began relatively early in the case and the lack of extensive litigation over typically risky points in the case: class certification, dispositive motions, and finally, trial, largely dissipated the usual risks of nonpayment associated with class actions. *Cf. Goldenberg*, 33 F. Supp. 2d at 436 (awarding fees in an "intensely adversarial litigation" where litigation proceeded at least through class certification stage). The likelihood of settlement, though never a certainty, greatly reduced the risk of nonpayment experienced by Class Counsel in this case, and any remaining risk was eliminated by the settlement. I **FIND** that Class Counsel experienced lower risk in the pursuit of this case than the risk present in other class actions.

### E.      Awards in Similar Cases

Class Counsel asserted that "25% is a very common 'benchmark' percentage that is presumptively correct," and that "[i]t has become virtually routine for courts to use between 20% and 33% as the 'benchmark' for a percentage fee award." (Mem. Supp. Mot. Award Attorney Fees 11.) Indeed, "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 188. I am not bound, however, by benchmarks. *See* Third Circuit Task Force Report, 208 F.R.D. at 355 ("In setting a percentage fee, the court should avoid rigid adherence to a 'benchmark.'"). On the contrary, "a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant*, 243 F.3d at 736.

A recent study in the *Journal of Empirical Studies* demonstrates a strong inverse relationship between class recovery size and attorney fees.  Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements:  1993-2008*, 7 J. Emp. L. Studies 248 (June 2010).  The authors found that for class recoveries in the range of $22.8–38.3 million, the mean attorneys' fee percentage award from 1993-2008 was 22.1%, and the median was 24.9%.  *Id.* at 265, T. 7.

I **FIND** that the requested 25% fee award is similar to those granted in similar class actions and will accord this factor due weight relative to the other factors discussed above and below.

**F.      Objections**

As noted above, the high success of the class notification in this case, coupled with the extremely low number of objections, is the single most important factor supporting the reasonableness of the requested fee.  The notice plan approved in this case provided direct, individual notice to more than 91% of the approximately 9,000 member class.[5]  This is a high success rate, especially compared to class actions in which class members are unknown, direct notice is impossible, and notice is instead provided through public outlets.  The class members were notified directly not only of the proposed settlement, but also of its terms, in accessible language that included an explanation of the attorneys' fee  request at issue here.  Following the successful

---

[5]  "Notice was *uniquely effective* in this action because Equitable's records of their leases allowed A&F to provide *individual notice by mail to most Class Members*. According to the testimony of the Claims Administrator and notice expert, over 91% of the total class was notified by direct mail. The Parties report that by January 4, 2010, the informational website had received over 1,600 visits or sessions, and as of January 10, 2010, the toll-free telephone support number had received over 1,700 calls."   (Mem. Op. & Final Ord. Approving Settlement and Certifying Settlement Class [Docket 224] at 7 (emphasis added).)

notification of the class, only five class members objected to the Settlement Agreement.[6]  Two of

those class members eventually withdrew their objections.[7]  Only one of the objections made any

reference to the amount of attorneys' fees to be awarded, expressing displeasure with the settlement

and stating that its "real costs are placed upon the plaintiffs in absorbing the expenses and fees of

this action."  (Letter-Form Objection of Glennis Pauline Waldeck [Docket 194] at 2-3.)  Ms.

Waldeck's objection was later overruled by this court on other grounds, but her sentiment echoes

some common criticisms of the outcomes of class action lawsuits.  *See* Task Force on Contingent

Fees, 25 Rev. Litig. 459, 466 (2006) (outlining the  frequent complaint that plaintiffs' lawyers

receive too much of the funds set aside to compensate victims in class action settlements); *Deposit

Guaranty Nat'l. Bank v. Roper*, 445 U.S. 326, 339 (1980) (noting "[t]hat there is a potential for

misuse of the class action mechanism is obvious.  Its benefits to class members are often nominal

and symbolic, with persons other than class members becoming the chief beneficiaries").  Although

the courts have clearly recognized the need to compensate attorneys for their work in class action

litigation, as the court discusses below, there are significant public policy concerns that those fees

often are, or are perceived to be, excessive.

Nevertheless, in this case the very low incidence of objections, especially in light of the

success of the direct notification of class members, serves to demonstrate the bulk of the Class

Members' satisfaction with the settlement result, and also shows their implicit approval of its terms,

---

[6] Objections were filed by Hunter M. Bennett, Jr. [Docket 191], Fred Muscar [Docket 193], Glennis Pauline Waldeck [Docket 194], Harriette C. Chambliss [Docket 195], and E.W. Perkins, et al. Trust and E.C. Perkins Trust U/IND [Docket 196].

[7] Mr. Bennett withdrew his objection in a letter dated December 1, 2009 [Docket 198] and the Perkins Trust withdrew its objection in a letter dated December 2, 2009 [Docket 199].

-14-

including the attorneys' fee provision.  Had this case involved a less direct form of notice, such as mere advertisement of the proposed settlement, the lack of objection would carry much less weight. In that case, the court would act without the benefit of knowing whether the "clients" actually approved the fee, or were even aware of the settlement.  In this case, because such a high percentage of the class was directly notified of the attorneys' fee provision, and almost none of them objected to that provision, I will consider the Class Members to have demonstrated approval of the instant fee request and agreement to pay such an amount.  I **FIND** that the "clients'" approval of the attorneys' fee request supports the reasonableness of the requested fee award.

### G.   Public Policy

Two important and interrelated issues of public policy influence the propriety and wisdom of awarding the requested fee in this case.  First, the court must consider the public perception that class action plaintiffs' attorneys receive artificially high windfalls, often at the expense of the class members.  Attorneys are officers of the court, and their fees must be reasonable beyond reproach and worthy of our justice system.  Second, the court must consider whether the fees awarded in this case will promote the important public policy that attorneys should continue to take on "class actions that vindicate rights that might otherwise go unprotected."  Third Circuit Task Force Report, 208 F.R.D. at 342.  As the Supreme Court has noted, "[f]or better or for worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the 'private attorney general' for the vindication of legal rights . . . ."  *Deposit Guaranty Nat'l. Bank*, 445 U.S. at 338.

"The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to

compensate victims." Task Force on Contingent Fees, 25 Rev. Litig. at 466. As the Third Circuit Task Force noted, "there is a perception among a significant part of the non-lawyer population and even among lawyers and judges that the risk premium is too high in class action cases and that class action plaintiffs' lawyers are overcompensated for the work that they do." Third Circuit Task Force Report, 208 F.R.D. at 344. Such perceptions are not only harmful to the legal profession, but undermine the integrity of the entire legal system. I have long been troubled by the routine application of contingent-fee principles, justified by the need for individuals with small or risky claims to obtain counsel, to class action lawsuits. It is not at all clear to me that the increased risk to class counsel of investing time and resources to prosecute class actions justifies the treatment of such cases as entirely analogous to individual claims for fee award purposes. Increasing the number of class action plaintiffs does not necessarily increase the amount of time class counsel spends on a case, and the connection between the amount of work involved in a claim and the size of the eventual award may be much less entangled than that of an individual contingent fee case. *See In re Cardinal Health*, 528 F. Supp. 2d at 762-63. Because of the damage caused by the perception of overcompensation of attorneys in class action suits, lawyers requesting attorneys' fees and judges reviewing those requests must exercise heightened vigilance to ensure the fees are in fact reasonable beyond reproach and worthy of our justice system.[8]

---

[8] It is clear that public perceptions of unfairness or impropriety strike at the very core of the ethics of the legal profession, and necessarily implicate the lawyer's ethical duty to safeguard the legal system, even when the lawyer's conduct may itself be unimpeachable. *See Jones v. Dominion*, 601 F. Supp. 2d at 764-65 (noting that "charged by the rules of legal ethics, lawyers and judges are guardians of the legal system and have a special duty to ensure that their conduct promotes the integrity of that system," and that those rules "demand that attorneys limit their fee to what is reasonable") (citations omitted). Indeed, as this court noted in *Jones*, several courts have recognized the connection between reasonable attorneys' fees and the strength of the legal system and have
(continued...)

Competing with the public policy against excessive fee awards, however, is the policy encouraging "counsel to accept worthy engagements." *In re Cardinal Health*, 528 F. Supp. 2d at 765 (internal quotations omitted). Attorneys' fees must be sufficient "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class . . . ." *In re Microstrategy*, 172 F. Supp. 2d at 788; *see Jones v. Dominion*, 601 F. Supp. 2d at 765 .

Attorneys' fee awards must be large enough to ensure the availability of counsel in class actions, where the plaintiffs' individual claims may not be large enough take on individually. The risks of investing time and resources in a class action cannot be discounted. It is equally important, however, to consider that fees deemed reasonable by the bar and the judiciary appear unseemly to the general public, and to ensure that those awards are not so large as to unjustly enrich attorneys simply because they have represented a large number of claimants. I will keep the implications of these competing public policies in mind as I make a final determination as to the fee awards.

## H.    Lodestar Cross-Check

When using the lodestar method only as a cross-check, the court need not apply the "exhaustive scrutiny" normally required by that method. *Goldberger*, 209 F.3d at 50 ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's

---

[8](...continued)
reduced attorneys' fees on the basis of that relationship. *See id.* at 764-65; *see, e.g., In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999) ("[I]t is the Court's duty to avoid any sense of vicarious generosity or to permit [attorneys' fees] to be enhanced without restraint above a fair and reasonable amount under all the facts and circumstances, precluding any notion that there are no decent limits to compensation for services of an attorney serving another's interests.").

familiarity with the case."); *see also In re Rite Aid Corp.*, 396 F.3d 294, 306-07 (3d Cir. 2005).

Therefore, I may use Class Counsel's estimate of the hours they have spent working on this case.

Class Counsel have expended an estimated 4,735.70 hours in this litigation, and have submitted the

rates at which they would have billed these hours.  (Plfs.' Supp. Ex. Supp. Reasonable Attorney Fee

Awards 2.)  The hourly rates are at the top of the market, but are within the range of reasonableness,

considering the quality, efficiency and skill of Class Counsel.  I will use these rates to calculate the

lodestar figure.[9]

Class Counsel also estimate that an additional 1,200 hours over the next two years will be

necessary to complete the administration of the settlement.  Class counsel did not submit information

detailing which attorneys and at what rates they expect the 1,200 projected hours to be billed, or any

significant explanation of why the administration of the settlement will require 1,200 additional

hours of attorney time.  Although projected hours were included in the lodestar calculation in *Jones*,

the court's experience with the administration of that settlement and familiarity with this case leads

to the conclusion that a more accurate result can be reached in this case by excluding projected hours

from the calculation of the lodestar figure.

Excluding the 1,200 projected hours, the resulting lodestar figure is $1,960,077.[10]  The

requested award in this case, approximately $6.75 to $8.5 million, yields a lodestar multiplier in this

case of 3.4 to 4.3  and an hourly rate of  $1,425.34 to $1,794.87.

---

[9]  Two attorneys submitted only a range of hourly rates, and did not submit information
detailing which rates should be applied to which hours.  For these counsel, I have used an average
of the rates they provided.

[10]  This lodestar figure includes all hours expended on the case, including the hours of
attorneys, paralegals and a computer analyst.  *In re Microstrategy*, 172 F. Supp. 2d at 788 n.31.

I must be cautious of placing too much weight on these numbers lest I "re-introduce[] the problems of the lodestar method." Task Force on Contingent Fees, 25 REV. LITIG. at 471. Also, the cross-check results do not "supplant the court's detailed inquiry into the attorneys' skill and efficiency in recovering the settlement . . . ." *In re Cardinal Health*, 528 F. Supp. 2d at 764. Nevertheless, the lodestar figure and multiplier reveal that the requested fee would reward Class Counsel more than generously relative to the time expended on this matter. Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee. *See Goldenberg*, 33 F. Supp. 2d at 439 n.6; *see also In re Microstrategy, Inc.*, 172 F. Supp. 2d at 789 (reducing fee award from a requested percentage, which would have resulted in an award approximately four times the lodestar figure, to a percentage that resulted in an award 2.6 times the lodestar figure); *In re Cendant*, 243 F.3d at 742 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotations and citations omitted); *but see In re Cardinal Health*, 528 F. Supp. 2d at 768 (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel."). The potential multipliers in this case are at the top of the reasonableness range. A fee potentially resulting in such a high relative multiplier is unreasonable in light of the lesser complexity and risk of this action. Further, the hourly rate is approximately four times what the attorneys would have earned on an hourly basis, suggesting that the attorneys would experience a windfall with the receipt of such an award.

This case is a textbook example of a case in which a large settlement could result from the mere presence of a very large class; the liability issue would be the same regardless of whether there were 100 or 10,000 class members. *See In re Cardinal Health*, 528 F. Supp. 2d at 763. Although

the technical and administrative details of the case were surely complicated by the large number of

plaintiffs, the legal theory underlying the case did not change. I will accord this factor due weight

relative to the other factors discussed above.

## I.      An Attorneys' Fee Award of 20% of the Common Fund is Reasonable

Having considered the factors discussed above in light of the totality of the circumstances

of this particular case, I **FIND** that a fee award of 20% of the Settlement Fund is reasonable

compensation for Class Counsel.  Class Counsel's effort, efficiency, collegial spirit, and the

achievement of a sizable benefit for the class supports the award of such a large fee.  Crucially, it

is also supported by the minimal objections of Class Members to the Settlement Agreement after

receiving actual, direct notice.  A 20% fee reflects a lodestar multiplier between 2.8 and 3.4 which

is well within the range considered reasonable by courts.

This reduction contemplates the competing public policies at play in this case.  Even

reduced, the fee compensates Class Counsel more than generously, and is undoubtedly high enough

to encourage future class action representation and efficient, collegial conduct by attorneys.  This

fee, though less than the requested amount, may still appear excessive to non-lawyers and may

perpetuate negative public perceptions about the legal profession.  A 20% fee, though perhaps not

ideal, strikes a closer balance between these public policies.

The most significant factor affecting my determination, however, is the high incidence of

actual, direct notification in this case and the resulting approval of the attorneys' fee provision by

the Class Members. Although it does not vitiate the court's responsibility to closely examine the

propriety of the requested fee, it is compelling that these class action "clients" have had actual, direct

notice of the fee, and chosen to agree to a settlement with that knowledge.  The remaining factors

alone, as relevant as they are to the determination of a reasonable attorneys' fee, are not enough to convince me that a fee of this magnitude is "reasonable," or to outweigh the considerable public policy considerations implicated by awarding it.  Even reduced, the fee that I approve in this case remains high and highlights the difficult balance courts must strike between maintaining the public trust and ensuring the availability of counsel for class action claims.  I do not award this fee without reservations.  Nevertheless, I am reluctant to deviate too greatly from a fee amount implicitly approved by Class Counsel's clients.  Such approval tends to show that, at least from the Class Members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by Class Counsel.  The  Class Members' implicit agreement to pay the requested fee, together with the other factors above, supports the conclusion that a 20% fee award is reasonable in this case.

## V.     Costs

Class Counsel have also requested reimbursement of $96,113.54 for out-of pocket expenses. Costs that are "reasonable in nature and amount, may be reimbursed from the common fund."  *In re Microstrategy*, 172 F. Supp. 2d at 791.  Costs should "reflect a reasonable amount of expenditures for a case of [its] magnitude," *Strang*, 890 F. Supp. at 503, and also "bear a reasonable relationship to the time and effort expended and the result achieved."  *In re Microstrategy*, 172 F. Supp. 2d at 791.  "[C]osts should be borne equally by the beneficiaries of the class action." *Strang*, 890 F. Supp. at 503.

Class counsel have indicated that a large component of these out-of-pocket expenses were "fees paid to experts and consultants who were instrumental in, among other things, helping plaintiffs evaluate the case and construct the settlement."  (Mem. Supp. Award Attorney Fees at 21.)

-21-

Such experts were clearly necessary to the thorough development and effective settlement of the Class Claims, especially in light of the subject matter underlying this case.  Other expenses in this case included the expenses routinely charged to legal clients paying hourly fees, such as copying charges, research costs and travel expenses.  I **FIND** that costs in the amount of $96,113.54 reflect a reasonable amount of expenditures for a case of this magnitude and bear a reasonable relationship to the time and effort expended in this matter.

## VI.    Incentive Award

Class Counsel have also requested awards in the amount of $25,000 for each of the six Class Representatives:  The Kay Company, LLC; Diana Kile Green; The H.A. Robinson Trust; H. Dotson Cather; Clyde Emerson McClung; and James E. Hamric, III.   Incentive awards are routinely approved in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Muhammed*, 2008 WL 5377783, at *9.  For example, in *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 400 (D.D.C. 2002), the court approved $25,000 to each of three class representatives.   Those representatives "provided in-house counsel, fraud investigators, and pharmacy benefits managers to aid in the prosecution of this case, whose efforts included investigating, negotiating, responding to discovery demands, attending meetings, coordinating with other in-house counsel, and directing class counsel in settling the case."  *Id.*

Incentive awards were also granted in *Cullen v. Whitman Medical Corporation*, 197 F.R.D 136 (E.D. Pa. 2000), which was a case brought by a class of students against a vocational school that fraudulently misrepresented the education they would provide to their students.   The class

representatives sought an incentive award in the amount of tuition paid, which ranged from $2,000 to $10,000. *Cullen*, 197 F.R.D. at 145, 152. In that case, two of the class representatives had initiated individual law suits which led to the filing of the class action, and one intervened on behalf of an entire subclass. Other representatives produced materials, helped prepare documents, and actively participated in discovery. *Id.* at 145-46.

In *Muhammed*, the court awarded a $5,000 incentive award to the class representative out of the settlement proceeds of $700,000. 2008 WL 5377783, at *10. The court noted that the class representative "attended numerous meetings with counsel and counsel's staff . . . . assisted in drafting discovery responses, and consulted with counsel regarding critical aspects of the settlement." *Id.* at *9.

Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing. Class Counsel have indicated that the class representatives "initiated this lawsuit, provided and analyzed their records, [and] provided records in discovery." (Mot. Award Attorney Fees, Ex. A at 9.) The record in this case does not indicate that the class representatives were deposed, nor does it indicate they were heavily involved in the prosecution of the case, attended mediation or settlement meetings or actively participated in the discovery process beyond the provision of their own records. *Cf. In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993). Class Counsel's history of the case indicates that the damages and claims were primarily developed through the efforts of Class Counsel and by experts analyzing extensive records provided by the defendants rather than with the participation of the class representatives. Accordingly, I **FIND** that the requested incentive award

-23-

overcompensates the plaintiff representatives.  An award of $15,000 is sufficient to reward the six class representatives in this case for enabling the pursuit of this matter on behalf of the class.

## VII.    Method of Payment

The parties in this case have requested that the Costs of Litigation, including the incentive awards, be assessed as a percentage rather than a lump sum amount.  A percentage assessment for this money, however, poses its own difficulties.  For instance, the precise amount in the settlement fund is not available and therefore any percentage award will also be imprecise and may result in an assessment of costs that is greater or less than the amount identified by Class Counsel.

Nevertheless, because a percentage deduction for costs will be more convenient than a lump sum, and because the parties agree that a percentage assessment is preferable, I will comply with the parties' request.  As discussed above, $96,113.54 in litigation costs and $90,000 aggregate incentive awards are reasonable and should be deducted from the Settlement Fund and Payments.  The total amount, $186,113.54, is approximately 0.67% of the low estimate of the Settlement Fund, $27,793,390.00.  I **FIND** that an assessment of 0.70% of the Settlement Fund will be a close approximation of the calculated costs.  Further, because the amount of the assessment is a percentage, and  can not  precisely reflect the Costs of Litigation, including the incentive awards, the assessment should first reimburse the attorneys' litigation expenses, and the remainder should be equally divided among the six Class Representatives.

## VIII.   Conclusion

Based on the foregoing, the Class Counsel's Motion for Award of Attorney Fees, Incentive Awards for Class Representatives, and Reimbursement of Expenses  [Docket 215] is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** insofar as attorneys' fees, costs, and

incentive awards are to be paid.  I **DENY**, however, the request for attorneys' fees in the amount of 25% of the common fund and also the request for a $25,000 incentive award for each Class Representative.  Instead, I approve the following payments and I **ORDER**:

1.  Attorneys' fees in the amount of twenty (20) percent of the Settlement Fund be paid to Class Counsel.

2.  Costs of Litigation in the amount of 0.70% of the Settlement Fund be paid as follows:

    a.  $96,113.54 to be paid to Class Counsel as reimbursement for litigation expenses;

    b.  the remainder to be distributed equally among the six Class Representatives: The Kay Company, LLC; Diana Kile Green; The H.A. Robinson Trust; H. Dotson Cather; Clyde Emerson McClung; and James E. Hamric, III

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.  The court **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:          November 5, 2010

Joseph R. Goodwin, Chief Judge

-25-